JAMES H. MOON (State Bar No. 268215)
jamesmoon@dwt.com
SANCHO ACCORSI (State Bar No. 329413)
sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendants*
*Petrosian Esthetic Enterprises, LLC and*
*SEV Laser Aesthetics Chicago, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE FIRLEJ and HANIA ROUHANI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PETROSIAN ESTHETIC ENTERPRISES, LLC, and SEV LASER AESTHETICS CHICAGO, LLC,<br><br>Defendants. | Case No. 2:26-cv-01030<br><br>**DEFENDANTS PETROSIAN ESTHETIC ENTERPRISES, LLC AND SEV LASER AESTHETICS CHICAGO, LLC'S MOTION TO DISMISS**<br><br>[*Declaration of Carrie Julier, Request for Judicial Notice, and Proposed Order Filed Concurrently*]<br><br>Assigned to the Hon. Michelle Williams Court, Courtroom 6A<br><br>Date: June 26, 2026<br>Time: 1:30 p.m.<br><br>Action Filed: February 2, 2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, June 26, 2026, at 1:30 p.m., in Courtroom 6A of the above-captioned Court, located at the First Street Courthouse, 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Defendants Petrosian Esthetic Enterprises, LLC and SEV Laser Aesthetics Chicago, LLC (together, "SEV") will move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice all claims of Plaintiff Hania Rouhani. Ms. Rouhani's claims fail because she consented to SEV's use of Google's website analytics and tracking tools, she fails to allege criminal wiretapping under § 631 of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630–637.2, or the federal Electronic Communication Privacy Act or ("ECPA"), 18 U.S.C. §§ 2510–2523, and her common law claims fail because she does not allege any sensitive health information subject to protection under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d–1320d-9, among other, claim-specific reasons.

This motion is based on this notice and motion; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and Declaration of Carrie Julier; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 23, 2026.

DATED: May 6, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/ *James H. Moon*
James H. Moon

*Attorneys for Defendants Petrosian Esthetic Enterprises, LLC and SEV Laser Aesthetics Chicago, LLC*



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

- A. Sevlaser.com, Like Most Websites, Uses Web Tools. .......... 2
- B. Ms. Rouhani Books a Laser Hair Removal Appointment. .......... 2
- C. Ms. Rouhani Sues Over SEV's Disclosed Data Practices .......... 3

III. THE COURT SHOULD DISMISS MS. ROUHANI'S CLAIMS .......... 4

- A. Ms. Rouhani's Claims Fail Because She Provided Consent. .......... 4
- B. Ms. Rouhani's CIPA Claim Fails. .......... 5
  - 1. No Contents. .......... 6
  - 2. No Reading In Transit. .......... 8
- C. Ms. Rouhani's ECPA Claim Fails. .......... 10
  - 1. No Illegal Interception. .......... 10
  - 2. No Contents. .......... 13
- D. Ms. Rouhani's Common Law Claims Fail. .......... 13
  - 1. Ms. Rouhani Does Not Allege Disclosure of Sensitive Information, Foreclosing Her Common Law Claims. .......... 14
  - 2. No Invasion of Privacy. .......... 15
  - 3. No Negligence. .......... 18
  - 4. No Breach of Implied Contract. .......... 20
  - 5. No Unjust Enrichment. .......... 21

IV. CONCLUSION .......... 22






DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 21

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 6, 9, 18, 21

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 19

*Baynard v. Derma Clinic, Inc.*,
2005 WL 2364890 (Conn. Super. Ct. Sept. 1, 2005) .......... 14

*Behnke v. State Farm Gen. Ins. Co.*,
196 Cal. App. 4th 1443 (2011) .......... 21

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 6

*Brown v. State Farm Mut. Auto. Ins. Co.*,
2025 WL 81340 (N.D. Ill. Jan. 13, 2025) .......... 16

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 11, 12

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 14, 15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 1, 5, 16, 21

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... *passim*

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) .......... 20

*Evan F. v. Hughson United Methodist Church*,
8 Cal. App. 4th 828 (1992) .......... 18



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 17

*Gardiner v. Walmart Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 19

*Gonzales v. Uber Tech., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 17

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025) .......... 13

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 4, 5, 17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15, 16

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 16, 17

*Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) .......... 20

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 8

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 12

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 7

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 19

*In re Google, Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 18



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 10, 16, 17

*In re Zerbe*,
60 Cal. 2d 666 (1964) .......... 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 7, 8

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 6, 10

*Kaar v. Wells Fargo Bank, N.A.*,
2016 WL 3068396 (N.D. Cal. June 1, 2016) .......... 20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 7

*Lakes v. Ubisoft, Inc.*,
2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .......... 4

*Lau v. Gen Digit. Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .......... 19

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) .......... 7, 9, 10, 13

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .......... 4

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 9

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 19

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023) .......... 18, 19

*Nguyen v. Abbott Lab'ys, Inc.*,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026) .......... 8



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ........ 12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 11, 15, 16

*Patriot Sci. Corp. v. Korodi*,
504 F. Supp. 2d 952 (S.D. Cal. 2007) ........ 20

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 11, 12

*Progressive W. Ins. Co. v. Super. Ct.*,
135 Cal. App. 4th 263 (2005) ........ 20

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 10

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 11

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 10

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009) ........ 18, 19

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ........ 16, 17

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 4

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 4, 5, 14, 15

*Sussman v. Am. Broad. Co.*,
186 F.3d 1200 (9th Cir. 1999) ........ 12

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ........ 8

*Tanjong v. Benefit Cosms. LLC*,
2021 WL 1016019 (D.N.J. Mar. 17, 2021) ........ 14



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ........ 6

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 9

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ........ 5, 8

*Weddington Prods., Inc. v. Flick*,
60 Cal. App. 4th 793 (1998) ........ 20

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ........ 9

*Yari v. Producers Guild of Am., Inc.*,
161 Cal. App. 4th 172 (2008) ........ 20

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 7, 8

**Statutes**

18 U.S.C.
§§ 2510–2523 ........ 2
§ 2511(2)(d) ........ 10, 11

720 Ill. Comp. Stat. 5/14-1–5/14-9 ........ 1

Cal. Civ. Code
§ 1550 ........ 20
§ 1621 ........ 20

Cal. Penal Code
§§ 630-637.2 ........ 1
§ 631 ........ *passim*
§ 631(a) ........ 1, 6, 7, 8
§ 632 ........ 10
§ 637.2 ........ 3

**Regulations**

45 C.F.R. § 160.103 ........ 14



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

**Other Authorities**

Restatement (Second) of Torts § 652B....................................................................16



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"This is another pixel case," *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024), challenging the routine use of non-party Google, LLC's advertising and analytics tools. Plaintiff Rouhani admits web tools like these are "ubiquitous," active on more than 74% of all web traffic, and "often" involve "personal and sensitive" information. Compl. ¶¶ 39–40. She even claims "[t]welve of the largest pharmacy providers in the United States send information regarding user[s'] purchases" to advertisers. *Id.* ¶ 40(c). But these are generic allegations concerning other websites. As to SEV's website, sevlaser.com, Ms. Rouhani alleges that she booked an appointment for laser hair removal. She alleges that Google collected only that she (1) browsed for cosmetic services and (2) scheduled an appointment for an unspecified procedure. *Id.* ¶ 64. These allegations cannot sustain any of Ms. Rouhani's six causes of action.[1]

As an initial matter, Ms. Rouhani consented to the alleged tracking because she is a Google account holder, and Google's terms openly disclose the data practices at issue. This bars all her claims.

In addition, Ms. Rouhani's individual causes of action suffer from numerous legal deficiencies.

*First*, she does not state a claim for criminal wiretapping under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630–637.2, because she does not allege Google collected the "contents" of any communications, nor that Google "read" any communication "while … in transit." Cal. Penal Code § 631(a).

---

[1] A second plaintiff, Nicole Firlej, also asserts claims against SEV, including a claim under the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1–5/14-9. Ms. Firlej agreed to an arbitration agreement with SEV, and her claims are subject to a concurrently filed Motion to Compel Arbitration.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Second*, SEV is not liable under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510–2523, because SEV was a party to any "communications" with its own website, and Ms. Rouhani alleges no contents.

*Third*, Ms. Rouhani's common law invasion of privacy, negligence, breach of implied contract, and unjust enrichment claims fail because, even assuming laser hair removal is "health care," neither public web browsing for health care nor booking an appointment for unspecified health care reveals personal health information ("PHI").

## II. FACTUAL BACKGROUND

### A. Sevlaser.com, Like Most Websites, Uses Web Tools.

SEV is an aesthetic services company operating through locations nationwide and sevlaser.com. Compl. ¶ 3. SEV offers a range of aesthetics treatments including Botox, dermal fillers, skin tightening, laser hair removal, and body contouring. *Id.* ¶ 4. SEV clients can browse cosmetic treatments and book appointments online at sevlaser.com. *Id.* SEV uses analytic and advertising tools from Google ("Google Code") on its website. *See id.* ¶¶ 8, 11, 46. This practice is common, and Google's web tools are prolific online—as Ms. Rouhani alleges, they "are present on 74-percent of all web traffic." *Id.* ¶ 39. Indeed, SEV openly discloses that it may share data entered on the website. SEV's Terms of Use ("TOU") and Notice of Privacy Practices ("Privacy Notice"), both publicly available on sevlaser.com, *see* Declaration of Carrie Julier ("SEV Decl."), Ex. B (TOU); *id.*, Ex. C (Privacy Notice), disclose that SEV may use information from the website to "run [SEV's] organization" and for "marketing purposes," and that SEV may "[sell] [] your information." *Id.*, Ex. C at "Our Uses and Disclosures."

### B. Ms. Rouhani Books a Laser Hair Removal Appointment.

The Complaint goes to great lengths to describe what the Google Code can, in general, do, but when it comes to Ms. Rouhani herself, it alleges very little. The Complaint alleges that, in January 2026, Ms. Rouhani visited the website to book a



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

laser hair removal appointment. Compl. ¶ 22. She alleges that the Google Code on the website transmitted two types of information: her activity browsing public information regarding the various services SEV offers, and the fact that she booked an appointment for an unspecified service. *See id.* ¶¶ 64–65 & Figs. 1–4. The general browsing data allegedly includes when users view (Figure 1) or look at availability for (Figure 2) the various services that SEV offers. For this general browsing activity, the Complaint alleges that Google collects product names. *See id.* at 23 (Fig. 1, depicting "SkinPen Microneedling" service), 24 (Fig. 2, depicting "caLaser Hair Removal" services).

But when it comes to a user actually booking an appointment (Figures 3 and 4), the screenshots in the Complaint show no specifics were transmitted to Google. Figure 3, which allegedly shows "information transmitted to Google when Website users browse appointment times" does not include the name of any cosmetic service. *Id.* at 25. Figure 4, which allegedly shows "information transmitted to Google when Website users book an appointment" likewise shows no specifics about the service being booked. *Id.* at 26. In sum, the Complaint alleges that the Google Code on sevlaser.com at most collected data about the services Ms. Rouhani browsed, and the fact that she booked an appointment. Neither is PHI. *Conta id.* ¶ 68.

### C. Ms. Rouhani Sues Over SEV's Disclosed Data Practices.

Based on the alleged use of the Google Code, Ms. Rouhani brings statutory claims under CIPA § 631 and ECPA, plus common law claims for invasion of privacy, negligence, breach of implied contract, and unjust enrichment. She says the disclosure of commercial web browsing data entitles her and a putative nationwide class to $5,000 for every "communication," and attorneys' fees. Compl. ¶¶ 29, 208; *see* Cal. Penal Code § 637.2.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

## III. THE COURT SHOULD DISMISS MS. ROUHANI'S CLAIMS

The Court should dismiss all of Ms. Rouhani's claims: (A) Ms. Rouhani consented to Google collecting her data, and she fails to state claims under (B) CIPA, (C) ECPA, or (D) any common law theory.

### A. Ms. Rouhani's Claims Fail Because She Provided Consent.

Consent forecloses all Ms. Rouhani's claims. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (consent bars CIPA, invasion of privacy, negligence, and equitable claims), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *Hammerling v. Google, LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (same for contract and misrepresentation claims). Courts routinely dismiss privacy claims based on plaintiffs' consent to the challenged practice. *See id.*; *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing CIPA claims; "privacy policies … can establish consent to the alleged conduct challenged under … wiretapping statutes"); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *7 (N.D. Cal. Sept. 26, 2024) (dismissing CIPA and privacy claims based on notice of data practices); *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *4, 8 (N.D. Cal. Apr. 2, 2025) (same; "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim" (citation omitted)), *appeal filed*, No. 25-2857 (9th Cir. May 2, 2025).

The Ninth Circuit affirmed dismissal of claims challenging Google's alleged tracking on third-party mobile applications because its Privacy Policy "explains that Google collects data about users' 'activity on third-party sites and apps that use Google's services.'" *Hammerling*, 2024 WL 937247, at *1 (citation modified) (quoting policy).

The same reasoning applies here. Ms. Rouhani agreed to Google's terms, which disclose Google's use of its code on third-party websites. Ms. Rouhani alleges that she "possessed an account with Google … and received emails related to her appointment with SEV to her Google email account." Compl. ¶ 25. Google



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

users accept Google's terms during account creation and over time as they use Google products. *See Doe I*, 741 F. Supp. 3d at 847 ("every Google account holder must agree to" "Google's Terms of Service and Privacy Policy" "as a condition of opening a Google account"). And as Ms. Rouhani herself alleges, Google's Privacy Policy "admits that it collects information from third party websites, stating that '[m]any websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google.'" Compl. ¶ 35; *see Doe I*, 741 F. Supp. 3d at 847 ("Google's Terms of Service and Privacy Policy … define Google's relationship with Google account holders … inclusive of 'products that are integrated into third-party apps and sites, like ads [and] analytics'" (citation omitted)).

Ms. Rouhani thus consented to any transmission of her data to Google by the Google Code, foreclosing her claims. *See Hammerling*, 2024 WL 937247, at *1; *Smith*, 262 F. Supp. 3d at 955 (dismissing CIPA and privacy claims on this basis).

**B. Ms. Rouhani's CIPA Claim Fails.**

Regardless of consent, Ms. Rouhani does not state a claim under CIPA. CIPA is a penal statute "enacted in 1967 to address the increasing use of wiretapping to eavesdrop on private phone conversations." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1114 (N.D. Cal. 2025). As the *Eating Recovery* court explained, considering (1) that the provisions of a different law, the California Consumer Privacy Act ("CCPA"), "more clearly speak to the practice of data sharing," (2) CIPA's "ambiguity[,] and [(3)] its imposition of criminal liability, perhaps courts should not be so quick to assume that" "the Legislature really intend[ed] to subject companies like [SEV] to criminal liability for using third-party software to track website activity." 806 F. Supp. 3d at 1119. The California Court of Appeal has also warned that "section 631 … is quite ambiguous" and that, "[s]ince we are dealing with a penal statute, language so ambiguous should be interpreted in favor of the alleged violator." *Warden v. Kahn*, 99 Cal. App. 3d 805,





**DAVIS WRIGHT TREMAINE LLP**
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

812 & n.3 (1979). This tracks the principle that '"*penal statutes* are to be construed strictly', and an individual 'is not to be subjected to a penalty unless the words of the statute plainly impose it.'" *Bittner v. United States*, 598 U.S. 85, 102 (2023) (Gorsuch, J., joined by Jackson, J.) (citation omitted); *see In re Zerbe*, 60 Cal. 2d 666, 668 (1964) ("with the construction of a criminal statute," alleged offender "must be given the benefit of every reasonable doubt as to whether the statute [is] applicable to him").

Ms. Rouhani alleges SEV violated CIPA § 631. Section 631 generally contains three clauses independently criminalizing: "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, [or 3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978). Section 631(a)'s fourth clause criminalizes aiding another in violating any one of the first three clauses. *See James v. Allstate Ins. Co.*, 2023 WL 8879246, at *2 (N.D. Cal. Dec. 22, 2023).

Ms. Rouhani sues SEV for derivative liability (fourth clause) for Google's alleged violations of the second clause, *i.e.*, Google's "eavesdrop[ping] on and intercept[ing] … communications."[2] Compl. ¶ 201. But she fails to allege that Google violated the second clause for two reasons.

**1. No Contents.**

Section 631(a)'s second clause prohibits "read[ing], or attempt[ing] to read, or to learn the contents or meaning" of a communication. Cal. Penal Code § 631(a).

---

[2] Ms. Rouhani cannot bring a direct liability claim against SEV (first three clauses) because it cannot "wiretap" or "eavesdrop" on *its own* communications. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (no § 631 claim where "[d]efendant was the party that was meant to … receive [p]laintiffs' communications"). And Google cannot violate "[t]he first clause … because nobody tapped a 'telegraph or telephone wire.'" *Eating Recovery*, 806 F. Supp. 3d at 1115 (citation omitted). Finally, any claim under the third clause fails without an underlying violation of clauses one or two. *Id.*



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

"With the caveat that it's virtually impossible to understand what Section 631(a) actually means," *Eating Recovery*, 806 F. Supp. 3d at 1118, this clause, applied to online advertising and analytics tools, "protects only the internal, user-generated material of a message," *i.e.*, '"contents' of an online communication." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (citations omitted). It "does not include record information regard[ing] the characteristics of the message that is generated in the course of the communication," *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *11 (C.D. Cal. Dec. 4, 2025) (Court, J.) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)), like "keystrokes, mouse clicks, pages viewed, and shipping and billing information … [p]laintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." *Yoon*, 549 F. Supp. 3d at 1082 (citation omitted). Even where the "information … include[s] the user's [unique] ID and the address of the webpage from which the user's HTTP request to view another webpage was sent," it "does not meet the definition of 'contents,' because these pieces of information are not the 'substance, purport, or meaning' of a communication." *In re Zynga*, 750 F.3d at 1107, 1108. Ms. Rouhani does not allege any communications' contents.

*First*, the data that Ms. Rouhani says Google used to link her communications with her Google account—the cid cookie, her IP address, and computer and browser settings, Compl. ¶¶ 65, 67—is record information, not contents. S*ee In re Zynga*, 750 F.3d at 1106; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (cookies associating users' browsing history with their unique Facebook identifiers were not "contents").

*Second*, routine browsing data, such as the names of the services viewed, *see* Compl. ¶¶ 62–65 & Figs. 1–2, is not the content of Ms. Rouhani's communications because it merely reflects her clicks on the website or static information displayed on a webpage. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

(N.D. Cal. 2023) ("page visits, purchase intent signals, and add-to-cart actions" plus "referrer URLs" not contents); *Yoon*, 549 F. Supp. 3d at 1082 (same).

*Third*, the fact that Ms. Rouhani clicked a link to schedule an appointment is record information, not contents, because the only thing communicated to Google was, allegedly, that Ms. Rouhani clicked a button linking to a webpage and the URL of that webpage. *See* Compl. ¶¶ 62–65 & Fig. 4. This is not the "meaning" or "substance" of any communication. *See In re Zynga*, 750 F.3d at 1109 (URL that discloses "referer header information … includ[ing] only basic identification and address information, not a search term or similar communication made by the user, … does not constitute the contents of a communication"). As shown in Figure 4, which is incorporated in the Complaint, SEV did not disclose Ms. Rouhani's entries in form fields. Moreover, even if it did, not all form entries are the "contents" of a communication, such as when entering contact information to sign up for a service, or entering a password to log into a service. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) ("name, email address," and other contact information entered to sign up for account not "contents"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("user name or password" entered to sign in not "contents"); *Nguyen v. Abbott Lab'ys, Inc.*, 2026 WL 579206, at *6 (N.D. Ill. Mar. 2, 2026) (no "contents" where screenshots showed information transmitted was only "that a form was completed, a button to subscribe was clicked, the user was a particular gender, and the user's Facebook ID").

In short, none of the data alleged in the Complaint is "contents."

**2. No Reading In Transit.**

Ms. Rouhani's § 631 claim also fails because, even if she had alleged that Google captured anything more than "record information," she does not allege that Google "read" the communications "while … in transit." Cal. Penal Code § 631(a).

Again acknowledging that "section 631 … is quite ambiguous" and "badly in need of simplification," *Warden*, 99 Cal. App. 3d at 811, 812 & n.3 (quotation



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

omitted), the reading-in-transit element requires that the third parties "attempted to understand or decipher the contents of [p]laintiffs' communications … while the communications were in transit." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025). To the extent any of the data collected by the Google Code are "communications," Ms. Rouhani does not allege Google attempted to read any communication. Ms. Rouhani alleges her "communications were intercepted by Google during the communications" and "in real time," Compl. ¶¶ 202, 206, but making a communication available to Google does not mean Google attempted "understand[] the substantive meaning of the message." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (defining "read" under CIPA; dismissing on summary judgment); *see Lewis*, 2025 WL 3687546, at *12 ("allegation [] that Defendant collects Plaintiffs' information … says nothing regarding Defendant's attempt 'to read, or attempts to read, or to learn the contents or meaning' of Plaintiffs' communications while … in transit" (citation omitted)); *Torres*, 2025 WL 1135088, at *7 ("'categorizing and analyzing' information" not "reading" under CIPA" (citation omitted)); *Eating Recovery*, 806 F. Supp. 3d at 1117 ("filtering process that simply sorts out certain data" not "reading"); *Eisenhower Med.*, 721 F. Supp. 3d at 1064 (allegation that service '"intercepted, viewed analyzed, and used"' health information too "vague" to establish anyone actually viewed data (citation omitted)).

Moreover, Ms. Rouhani must allege not only that Google attempted to read the communications, but also that it did so *while they were in transit* to Google. *See Lewis*, 2025 WL 3687546 at *12 ("This Court agrees with others that 'you have to do something more than just intercept the contents of the communication' to state a claim" (quoting *Eating Recovery*, 806 F. Supp. 3d at 1116)). This is so because CIPA distinguishes between "what the third party does *during* the conversation and … what [it] … does with the recorded transcripts *after* the conversation." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1108 (C.D. Cal. 2023) (dismissing § 631



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

claim); *see Rodriguez v. Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (CIPA § 632, not § 631, "covers improper recordings"); *Eating Recovery*, 806 F. Supp. 3d at 1118 (same). Here, Ms. Rouhani alleges Google receives communications from the website "in real time," Compl. ¶ 206, but even if true, that allegation still fails because it does not show that Google "attempted to *read or learn the contents* of the communication" in real time. *James*, 2023 WL 8879246, at *3 (emphasis added) (dismissing § 631 claim; allegation that '"data is stored or can be accessed by'" software vendor was "insufficient to support a plausible interference [vendor] attempted to read or learn the contents of the communication while in transit" (citation omitted)).

The Court should dismiss Ms. Rouhani's CIPA claim because she fails to allege that Google read the contents of any communications while they were in transit.

**C. Ms. Rouhani's ECPA Claim Fails.**

To state an ECPA claim, a plaintiff must allege the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Lewis*, 2025 WL 3687546, at *11 (quoting *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024)). Ms. Rouhani does not allege elements two or three.

**1. No Illegal Interception.**

ECPA permits someone to "intercept … a[n] electronic communication where such person is a party to the communication," or "where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). That is, ECPA does not apply if any party to a communication consents to the interception or recording. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (discussing one-party consent rule); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (same). Ms. Rouhani



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

alleges SEV was a party to her interactions with its website and consented to Google's alleged involvement. *E.g.*, Compl. ¶¶ 24 (discussing "*her communications with SEV* through the Website"), 174 ("transmissions of Plaintiffs' Sensitive Health Information *to [SEV's] Website* qualify as 'communications' under the ECPA") (emphasis added).[3] This means SEV's consent to the Google Code bars any ECPA claim as a matter of law. *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing analogous ECPA claim based on one-party consent rule), *aff'd*, 572 F. App'x 494 (9th Cir. 2014); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (same); *Nienaber v. Overlake Hosp. Med. Ctr.* ("*Nienaber I*"), 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) (same).

To try to get around the one-party consent rule, Ms. Rouhani argues that SEV used the Google Code "for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States." Compl. ¶ 187. ECPA contains a narrow exception to one-party consent, but it is applicable only where a party to a communication records or permits the interception of the communication "for the purpose of committing a[] criminal or tortious act." 18 U.S.C. § 2511(2)(d). The Complaint does not successfully invoke the crime-tort exception because it does not allege facts supporting the inference that (i) SEV used the Google Code for a separate criminal or tortious purpose, let alone that (ii) SEV's primary motivation for using the Google tools was that separate purpose.

***Separate Act.*** The crime-tort exception is "limited" to where "one party to the conversation deliberately seeks to harm the other participant through the information intercepted." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). The "criminal or tortious purpose must be separate and independent from the act of the recording." *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136

[3] The Court should disregard Ms. Rouhani's conclusory allegation that "[SEV was] not part[y] to the communication," Compl. ¶ 186, because it directly conflicts with her other factual allegations.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

(9th Cir. 2022). It must be "done for the purpose of facilitating some further impropriety, such as blackmail." *Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *see Caro*, 618 F.3d at 100 ("Had Congress intended for … recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception … *resulting in* a tortious or criminal act.").

Ms. Rouhani alleges SEV's tortious purpose was "invasion of privacy." Compl. ¶¶ 184, 187, 194. She elaborates that the crime-tort exception applies "because [SEV] used its participation in these communications to improperly share [Ms. Rouhani's] … Private Information with Google." *Id.* ¶ 189. This position, however, "runs afoul of [the separate act] requirement," *Planned Parenthood*, 51 F.4th at 1136, as Ms. Rouhani's "own argument demonstrates that the alleged tortious or criminal use of the acquired communications is the disclosure itself." *Nienaber v. Overlake Hosp. Med. Ctr.* ("*Nienaber II*"), 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025). Ms. Rouhani also alleges SEV used the Google Code to violate CIPA and HIPAA, Compl. ¶¶ 187–88, 198–208, but each of these alleged violations is still based on the act of intercepting and simultaneously disclosing Ms. Rouhani's alleged communications. Put differently, Ms. Rouhani argues that the Google Code improperly transmitted her data which facilitated violations of CIPA and HIPAA, via the improper transmission of her data, by the Google Code. The Ninth Circuit declined to endorse such "circular" logic in *Planned Parenthood*, *see* 51 F.4th at 1136, and this Court should follow suit.

***Primary Motivation.*** This tortious or criminal purpose must also be the '"primary motivation or a determining factor in [the interceptor's] actions."' *In re Google, Inc. Gmail Litig.*, 2014 WL 1102660, at *1, 18 n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)). It "cannot apply where the interceptor's 'purpose has plainly not



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

been to perpetuate torts on millions of Internet users, but to make money.'" *Id.* (quoting *In re DoubleClick*, 154 F. Supp. 2d at 518).

Ms. Rouhani alleges SEV "receive[s] access to advertising and marketing analytics services in exchange for installing Google's Tracking Tools on [its] website" and "received compensation in the form of advanced advertising services and cost-effective marketing." Compl. ¶¶ 76–77; *see id.* ¶ 147 (alleging SEV "use[d] … Sensitive Health Information for marketing purposes"). Because SEV's alleged primary motivation for using the Google tools was to improve its marketing, the crime-tort exception does not apply. *See Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732 (D. Mass. June 24, 2025) (dismissing ECPA claim where complaint "[f]ail[ed] to plausibly allege that [defendant's] 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology … was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience"), *appeal filed*, No. 25-1672 (1st Cir. July 23, 2025).

**2. No Contents.**

Even if SEV could be liable for intercepting Ms. Rouhani's communications with SEV's website, Ms. Rouhani still does not state an ECPA claim because she does not allege the contents of any communication. This analysis is the same as under CIPA § 631. *Lewis*, 2025 WL 3687546, at *11 (citation omitted).

In sum, Ms. Rouhani has no ECPA claims because SEV was a party to any "communications," and Google did not intercept their "contents."

**D. Ms. Rouhani's Common Law Claims Fail.**

Unlike her CIPA and ECPA claims, which are agnostic to the sensitivity of the information at issue, Ms. Rouhani's claims for common law invasion of privacy, negligence, breach of implied contract, and unjust enrichment all depend on her theory that Google intercepted sensitive health information. Because Google did not, these claims fail. They also fail for other, claim-specific reasons.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

**1. Ms. Rouhani Does Not Allege Disclosure of Sensitive Information, Foreclosing Her Common Law Claims.**

Ms. Rouhani's common law claims rest on the theory that SEV disclosed her "personally identifiable, sensitive health information." Compl. ¶¶ 5, 84–85. But HIPAA does not protect the type of information at issue in the Complaint.

HIPAA requires patient consent before a health care provider can disclose patients' "protected health information," or "PHI." *See* 45 C.F.R. § 160.103. PHI is "'individually identifiable' information … that '[r]elates to the past, present, or future physical or mental health or condition of an individual' or the 'provision of health care to an individual.'" *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) (quoting 45 C.F.R. § 160.103). HIPAA permits disclosing most web browsing data, even related to health care, because browsing "general health information that is accessible to the public at large" does not "relate[] specifically to [p]laintiffs' health," that is, to "an individual." *Smith*, 262 F. Supp. 3d at 954–55. Therefore, when plaintiffs challenge the disclosure of web browsing data from "unauthenticated" webpages (web pages accessible to the public without logging in), they must allege data that plausibly relates to the '"physical or mental health or condition of an individual."' *Id.* (citation omitted).

Here, Ms. Rouhani alleges only unauthenticated web browsing because she does not allege that she signed in to any secure part of SEV's website. She alleges that SEV disclosed (1) the cosmetic services that users viewed and (2) that users booked an appointment for an unspecified treatment. Neither plausibly relates to a user's physical health or condition.

*First*, viewing cosmetic treatments does not reveal anything about a user's physical health or condition because in general cosmetic treatments are not "health care." *See Tanjong v. Benefit Cosms. LLC*, 2021 WL 1016019, at *4 n.7 (D.N.J. Mar. 17, 2021) ("cosmetic services such as waxes and eyebrow threading" not health care for purposes of professional negligence); *Baynard v. Derma Clinic, Inc.*,



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

2005 WL 2364890, at *2 (Conn. Super. Ct. Sept. 1, 2005) ("Brazilian Bikini Wax … is a cosmetic service, which does not require diagnosis or treatment by a physician"). Even assuming laser hair removal is health care, browsing for information about laser hair removal does not reveal anything about a user's health status because laser hair removal is not used to treat any specific health condition. To the contrary, the purpose for laser hair removal is purely cosmetic. In any event, "where nothing but browsing activity on a publicly available website is transmitted, courts within this circuit have held that 'the URLs, or the content of the pages located at those URLs, [do not relate] to the past, present, or future physical or mental health or condition of an individual.'" *Nienaber I*, 733 F. Supp. 3d at 1082 (quoting *Smith*, 262 F. Supp. 3d at 955). In *Nienaber I*, therefore, the court dismissed where the plaintiff alleged she searched for specific medical conditions because she "d[id] not allege that the text and phrases [were] transmitted in addition to any information identifying the user as a patient." *Id.* at 1084.

*Second*, the fact that a user scheduled an appointment for an unspecified service does not plausibly relate to physical health or conditions because SEV offers many services that are purely cosmetic.

*Finally*, the purely hypothetical allegations having nothing to do with Ms. Rouhani do not suffice to state a claim. *See Nienaber I*, 733 F. Supp. 3d at 1083 ("discuss[ing] a hypothetical example" insufficient to allege HIPAA violation); *Cousin*, 681 F. Supp. 3d at 1123 (same where "[p]laintiffs fail[ed] to factually explain their personal participation in any of th[e]" alleged data sharing). Ms. Rouhani does not allege SEV disclosed any health information *about her*, so her common law claims fail.

**2. No Invasion of Privacy.**

Common law invasion of privacy requires (1) "a reasonable expectation of privacy" and (2) a "highly offensive" intrusion. *Hammerling v. Google LLC*, 615 F.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

Supp. 3d 1069, 1088 (N.D. Cal. 2022) (citation omitted). Ms. Rouhani does not clear this "high bar." *Doe I*, 741 F. Supp. 3d at 844.

***No Intrusion.*** The genesis of Ms. Rouhani's invasion of privacy claim is her voluntary entry of information into SEV's website. And that is also the end of her claim. Courts reject invasion of privacy claims premised on a plaintiff's voluntary sharing of information with an entity that then shares that information with a third party. *See Nienaber I*, 733 F. Supp. 3d at 1088–89 ("Because Plaintiff voluntarily shared her information with Defendant, there was no *intrusion* upon Plaintiff's solitude, seclusion, or private affairs"); *Brown v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 81340, at *8 (N.D. Ill. Jan. 13, 2025) ("voluntary disclosure of their protected health information" foreclosed plaintiff's intrusion upon seclusion claim where plaintiffs "alleged that (1) they provided State Farm with PHI, … and (2) State Farm submitted reports to [a third party] containing individual PHI" (citations omitted)); *see also Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231–32 (1998) (no liability for examining information plaintiff exposed to public (citing Restatement (Second) of Torts § 652B)).

***Not Highly Offensive.*** Even if SEV "intruded" into a private sphere, that intrusion was not "highly offensive." Not every disturbance constitutes a "highly offensive" intrusion; a privacy tort only lies against an '"egregious breach of the social norms.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (citation omitted). "Even disclosure of very personal information has not been deemed an 'egregious breach of social norms.'" *In re Yahoo Mail*, 7 F. Supp. 3d at 1038 (citation omitted).

The type of data at issue in the Complaint is not sufficiently sensitive. Because she does not allege sensitive health information, Ms. Rouhani's theory is merely that SEV used the Google Code to monitor its website and improve marketing. This "routine commercial behavior" does not constitute a "highly offensive" intrusion. *See Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases);



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Gonzales v. Uber Tech., Inc.*, 305 F. Supp. 3d 1078, 1092–93 (N.D. Cal. 2018) (same where defendant disclosed home addresses and geolocation data); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (same where defendant obtained emails addresses for marketing purposes; not "an egregious breach of social norms, but routine commercial behavior"). Even if information related to laser hair removal *were* PHI, disclosing that information is *still* not highly offensive. Even disclosing "highly personal information" is not highly offensive, and the fact that Ms. Rouhani received laser hair removal is not sufficiently sensitive to find an egregious breach of the social norms, even if it technically qualifies as PHI under HIPAA (which it does not). *Hammerling*, 615 F. Supp. 3d at 1090–91(dismissing privacy claims based on the dissemination of data that could potentially disclose "a user's sleep cycle, menstrual cycle, sexual preferences, religion, and political affiliations"); *In re Yahoo Mail*, 7 F. Supp. 3d at 1038 (not highly offensive where email service provider intercepted, scanned, and stored emails). SEV's tracking of non-sensitive, publicly shared information is not "highly offensive."

Nor are the circumstances highly offensive. SEV disclosed its use of marketing and analytic tools, and Google disclosed its code's operation on third-party websites. Ms. Rouhani makes no allegations that SEV acted with any of the socially repugnant motives ("harassment, blackmail[,] or prurient curiosity") that characterize a highly offensive intrusion. *See Shulman*, 18 Cal. 4th at 237; *Hernandez*, 47 Cal. 4th at 297 (same). Ms. Rouhani alleges the Google Code was "invisible" to her, *see* Compl. ¶¶ 72–75, but, as discussed above, SEV disclosed that it collected and could share customer data, so its use of the Google Code was not "blatantly deceitful" or "surreptitious" and was not "highly offensive." *See Hammerling*, 615 F. Supp. 3d at 1090–91. In any event, "[e]ven negligent conduct that leads to theft of highly personal information … does not 'approach [the]



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

standard' of [an] actionable … violation of [p]laintiffs' right to privacy." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

The Court should dismiss Ms. Rouhani's invasion of privacy claim because SEV did not intrude into any private sphere and there was nothing "highly offensive" about SEV's disclosed use of routine commercial website analytics tools.

**3. No Negligence.**

Negligence requires "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate* … *cause* of the resulting injury." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992) (citation omitted).

***No Duty or Breach.*** Ms. Rouhani has not adequately identified a legal duty that SEV is alleged to have breached. She alleges that SEV "had a duty of care to use reasonable means to secure and safeguard [Sensitive Health Information] from unauthorized disclosure to third parties." Compl. ¶ 145. But as discussed above, any information disclosed to third parties was not subject to HIPAA's protections or other duties limiting SEV's use of that data. Moreover, Ms. Rouhani consented to Google collecting her data when she created her Google account. SEV did not breach any duty owed to Ms. Rouhani. *See Eisenhower Med.*, 721 F. Supp. 3d at 1069 (dismissing negligence claim).

***No Damages.*** Appreciable, nonspeculative, present harm is an essential element of a negligence cause of action. *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010). Ms. Rouhani generally alleges that SEV's actions "caused [her] … to suffer damages by having [her] highly personal, personally identifiable Sensitive Health Information accessed, stored, and disseminated without [her] knowledge or consent." Compl. ¶ 149. But as discussed above, SEV did not disclose sensitive health information.

Ms. Rouhani also alleged she suffered emotional distress, *id.* ¶ 191.a, but this is not cognizable. *See Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

(C.D. Cal. May 8, 2023) (dismissing negligence where alleged injury was increased stress and anxiety caused by leaking of confidential information).

Ms. Rouhani alleges she is at an ongoing future risk, Compl. ¶ 151, but that, too, is inadequate. *See Medoff*, 2023 WL 4291973, at *9 (dismissing negligence claim premised on "lost time" and "continued expectation" of mitigating potential harm from data breach); *Ruiz*, 622 F. Supp. 2d at 915 (dismissing negligence claim based on unsupported monitoring costs).

Ms. Rouhani's alleged benefit-of-the-bargain damages, Compl. ¶ 191.d, fails because she does not adequately allege SEV committed not to use the Google Code as part of any bargain. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (benefit-of-the-bargain losses require that plaintiff "do more than allege that she 'did not receive the benefit she *thought* she was obtaining.' The plaintiff must show that she did not receive a benefit for which she actually *bargained*" (citation omitted)).

And her theory that her personal information lost value, Compl. ¶ 191.e, goes nowhere because she does not allege she '"attempted or intended to participate'" in a market for the data allegedly disclosed to Google. *Lau v. Gen Digit. Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023) (citation omitted), *aff'd*, 2025 WL 3002610 (9th Cir. Oct. 27, 2025). To the contrary, she says she considers this information private. And even if the data had value to SEV (or Google), "claiming that a defendant 'may have gained money through its sharing or use of the plaintiffs' information' is 'different from saying the plaintiffs lost money.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 840 (N.D. Cal. 2020) (citation omitted); *see Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (same principle).

In short, courts routinely dismiss negligence claims based on conclusory allegations of damages like Ms. Rouhani's here. *See Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *6–7 (N.D. Cal. Mar. 5, 2021) (dismissing negligence, UCL,



**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

and contract claims based on conclusory allegations of diminution in value of PII, risk of future harm, and out-of-pocket expenses); *Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020) (dismissing contract and negligence claims premised on damages from emotional harm, increased risk of identity theft, mitigation efforts, and decreased value of PII).

Ms. Rouhani fails to plead both that SEV breached any duty it owed to her as well as cognizable damages and the Court should dismiss her negligence claim.

**4. No Breach of Implied Contract.**

"An implied contract is one, the existence and terms of which are manifested by conduct," Cal. Civ. Code § 1621, and therefore the elements of a breach of implied contract are the same as those for a breach of written contract, except that an implied contract is implied through conduct, not words. *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (stating rule for implied contract). Ms. Rouhani does not allege mutual assent or contract damages.

***No Mutual Assent.*** A breach of contract claim requires the existence of a contract, which in turn requires, among other things, the parties' mutual consent. Cal. Civ. Code § 1550; *see Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (consent requires "objective" and "outward manifestations" that the parties intended to be bound). To state a claim for breach of contract, therefore, a plaintiff "must identify the specific provision of the contract allegedly breached by the defendant." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930–31 (N.D. Cal. 2012) (citing *Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 281 (2005)); *see Kaar v. Wells Fargo Bank, N.A.*, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (same). Moreover, "an agreement lacking an essential term is not enforceable." *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 959 (S.D. Cal. 2007). Ms. Rouhani's breach of implied contract claim fails both because she does not allege that her purported data privacy requirements were part of any contract between her and SEV and because she did not suffer any damages.


DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

Ms. Rouhani alleges that when she entered her information into SEV's website, "they entered into an implied contract pursuant to which Defendants agreed to safeguard and not disclose the Sensitive Health Information without consent." Compl. ¶ 153. But she has not alleged any term outlining how SEV agreed to safeguard and not disclose her data. Nor has she alleged how SEV's conduct implied a promise not to use tools like the Google Code. To the contrary, SEV *explicitly discloses* that it may "use or share [customer's] health information … [for] marketing purposes [or the] sale of [customers'] information." *See* SEV Decl., Ex. C (Privacy Notice).

***No Damages.*** Even if she had alleged the existence of a contract to not disclose her data, Ms. Rouhani's breach of implied contract claim should be dismissed because she has not alleged any contract damages. "Damages are an essential element of a breach of contract claim[,]" and '"are generally limited to those within the contemplation of the parties when the contract was entered into or at least *reasonably foreseeable* by them at that time; consequential damages beyond the expectations of the parties are not recoverable.'" *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1468 (2011) (citation omitted). As noted above, Ms. Rouhani fails to allege cognizable damages. *See Eisenhower Med.*, 721 F. Supp. 3d at 1068 (dismissing implied contract claim for lack of damages).

**5. No Unjust Enrichment.**

Although Ms. Rouhani alleges a claim for unjust enrichment, "there is not a standalone cause of action for 'unjust enrichment'" in California. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). Even if there were, the claim falls with Ms. Rouhani's other claims. Absent any unlawful conduct by SEV, Ms. Rouhani has not stated a claim that SEV has unjustly obtained any benefit. *See Doe I,* 741 F. Supp. 3d at 848–49 (dismissing unjust enrichment claim along with privacy claims); *Eisenhower Med.*, 721 F. Supp. 3d at 1069–70 (same). And to the extent the Court construes Ms. Rouhani's unjust enrichment


DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

claim as a quasi-contract claim for restitution, Ms. Rouhani has not established cognizable damages, as discussed above.

## IV. CONCLUSION

For the foregoing reasons, SEV respectfully requests that the Court dismiss all of Ms. Rouhani's claims with prejudice.

DATED: May 6, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/ *James H. Moon*
James H. Moon

*Attorneys for Defendants Petrosian Esthetic Enterprises, LLC and SEV Laser Aesthetics Chicago, LLC*



**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899