Alyssa Tolentino (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
E: *atolentino@sirillp.com*

Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street, 8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: *ssingh@sirillp.com*

Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
Fax: (213) 471-4160
E: *daniel@slfla.com*

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NICOLE FIRLEJ** and **HANIA ROUHANI**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PETROSIAN ESTHETIC ENTERPRISES, LLC,** and **SEV LASER AESTHETICS CHICAGO, LLC**,<br><br>Defendants. | Case No. 2:26-cv-01030-MWC-AGR<br><br>[Assigned to the Hon. Michelle Williams Court, Courtroom 6A]<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[*Declaration of Alyssa Tolentino Filed Concurrently*]<br><br>Date: June 12, 2026<br>Time: 1:30 p.m.<br>Filed: February 2, 2026 |

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. Defendants Failed to Authenticate the EXHIBITS TO THE JULIER DECLARATION .......... 3

B. DEFENDANTS FAIL TO ESTABLISH THE EXISTENCE OF AN AGREEMENT TO ARBITRATE DUE TO DEFECTIVE NOTICE .......... 5

i. A Website Agreement is Not Binding Unless the User is Given Conspicuous Notice of its Terms. .......... 5

ii. The Premises Consent Form Does Not Provide Adequate Notice of the Arbitration Clause. .......... 6

C. EVEN ASSUMING *ARGUENDO* THAT PLAINTIFF AGREED TO THE TERMS OF USE, PLAINTIFF'S CLAIMS ARE OUTSIDE OF THE SCOPE OF THE ARBITRATION CLAUSE 9

i. Plaintiff did not delegate the gateway question of arbitrability to the arbitrator. .......... 10

ii. The Arbitration Clause Does Not Apply Retroactively. .......... 12

iii. The Scope of the Arbitration Clause Does Not Encompass Plaintiff's Privacy Claims. .......... 13

D. THE ARBITRATION CLAUSE IS UNCONSCIONABLE .......... 14

i. The Arbitration Clause is Procedurally Unconscionable. .......... 14

ii. The Arbitration Clause is Substantively Unconscionable Because it is Harsh and One-Sided. .......... 17

iii. Severing the Unconscionable Provisions Cannot Cure the Defects. .......... 20

IV. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACORN v. Household Int'l, Inc.*,
211 F. Supp. 2d 1160 (N.D. Cal. 2002) ........ 16

*Aiken v. World Fin. Corp.*,
373 S.C. 144 (2007) ........ 13

*Armendariz v. Found Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ........ 20

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986) ........ 9

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 3, 5, 7, 9

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
226 Cal. App. 4th 74 (2014) ........ 17

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ 5

*Chin v. Thumbtack Inc.*,
2026 U.S. Dist. LEXIS 62622 (N.D. Cal. 2026) ........ 9

*Circuit City Stores v. Adams*,
279 F.3d 889 (9th Cir. 2002) ........ 17, 18

*Ellis v. Wallet Buddha LLC*,
2025 U.S. Dist. LEXIS 266800 (C.D. Cal. 2025) ........ 3, 4

*First Options of Chi. Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 1, 10, 11, 12

*Fitz v. NCR Corp.*,
118 Cal. App. 4th 702 (2004) ........ 19

*Flores v. Transamerica HomeFirst, Inc.*,
93 Cal. App. 4th 846 (2001) ........ 15

*Gerlach v. Tickmark Inc.*,
2021 U.S. Dist. LEXIS 141105 (N.D. Cal. 2021) .......... 10

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 5

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) .......... 12, 14, 15, 19

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 13

*Kilgore v. KeyBank, Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) .......... 14, 20

*Kohler v. WhaleCo, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024) .......... 9

*Latman v. Burdette*,
366 F.3d 774 (9th Cir. 2004) .......... 3, 4

*Lhotka v. Geographic Expeditions, Inc.*,
181 Cal. App. 4th 816 (2010) .......... 19, 20

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) .......... 11, 16, 18, 20

*Long v. Fid. Water Sys.*,
2000 U.S. Dist. LEXIS 7827 (N.D. Cal. 2000) .......... 13

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) .......... 19

*Mohebbi v. Khazen*,
2014 U.S. Dist. LEXIS 168351 (N.D. Cal. 2014) .......... 12

*Morrison v. Yippee Ent., Inc.*,
2025 U.S. Dist. LEXIS 21024 (9th Cir. 2025) .......... 7, 8, 9

*Morse v. Servicemaster Global Holdings, Inc.*,
2012 U.S. Dist. LEXIS 144691 (N.D. Cal. 2012) .......... 12

*Munoz v. Earthgrains Distribution, Ltd. Liab. Co.*, 2024 U.S. App. LEXIS 23099 (9th Cir. 2024) .......... 19

*Namisnak v. Uber Techs.*, 971 F.3d 1088 (9th Cir. 2020) .......... 10

*NLRB v. First Termite Control Co.*, 646 F.2d 424 (9th Cir. 1981) .......... 4

*Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004) .......... 19

*Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505 (9th Cir. 2023) .......... 5, 9

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019) .......... 15

*Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227 (2015) .......... 11

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) .......... 17

*Rios v. HRB Digit. LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025) .......... 17

*Ruiz v. Kelly Servs. Glob., LLC*, 2026 U.S. App. LEXIS 421 (9th Cir. 2026) .......... 11

*Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836 (Cal. App. 2014) .......... 4

*Sanchez v. Valencia Holding Co.*, LLC, 61 Cal.4th 899 (2015) .......... 17

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .......... 3

*In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 U.S. Dist. LEXIS 176556 (N.D. Cal. 2023) .......... 11

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) ........................................................ 17, 18

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ........................................................ 18

*Vaughn v. Tesla, Inc.*,
87 Cal. App. 5th 208 (2023) ........................................................ 12

*Young v. Solana Labs, Inc.*,
2025 U.S. App. LEXIS 27194 (9th Cir. 2025) ........................................ 11

**Statutes**

9 U.S.C. § 3 ........................................................ 2

Cal. Civ. Code § 1670.15(d) ........................................................ 14

**Other Authorities**

S. Judiciary Comm., Analysis of S.B. 82, 2025–2026 Reg. Sess. (2025) ............... 14

S.B. 2025–2026 Reg. Sess. (Cal. 2025) ........................................................ 13

## I. PRELIMINARY STATEMENT

Healthcare information is among the most sensitive and private information about a person. It is also some of the most valuable. Defendants Petrosian Esthetic Enterprises, LLC and SEV Laser Aesthetics Chicago, LLC (collectively, "SEV" or "Defendants") knew this when, without prior authorization from Plaintiff Firlej ("Plaintiff"), they collected and shared Plaintiff's sensitive personal and healthcare information with third parties, including Google, one of the largest advertising companies in the world.

Defendants operate over 70 clinics nationwide that provide medical aesthetic services. On Defendants' website, www.sevlaser.com (the "Website"), patients can search for and schedule appointments for SEV's medical services. However, unbeknownst to Plaintiff, SEV installed advertising surveillance software, including third-party tracking pixels produced by Google (the "Tracking Tools"), on the Website and the webpages therein relating to booking patient appointments (the "Booking Pages") and, in exchange for advanced marketing and advertising services, allowed Google to collect sensitive personally identifiable and protected health information from users of the Website (the "Sensitive Health Information") for the purpose of targeted advertising.

Defendants do not challenge the fact that they collected and disclosed Plaintiff's Sensitive Health Information. Rather, Defendants seek to have this dispute compelled to arbitration because Plaintiff purportedly agreed to its "[IL] Premises Consent Form – Club" (the "Premises Consent Form") that referenced their Terms of Use ("Terms") that, in section 20, contain arbitration provisions requiring users to arbitrate any claims against SEV (the "Arbitration Clause"). For the reasons set forth herein, Defendants are incorrect.

***First***, Defendants fail to authenticate the Premises Consent Form and the Terms. *See* Declaration of Carrie Julier in Support of Defendants' Motion to Compel

Arbitration and Motion to Dismiss (hereinafter, the "Julier Declaration" or "Julier Decl."), ECF No. 27-1, Exs. A-C. Without these exhibits, Defendants' arguments fail.

***Second***, even if the exhibits to the Julier Declaration were properly authenticated (and they were not), Defendants wrongly claim that Plaintiff agreed to the Arbitration Clause by agreeing to their Premises Consent Form. *See* Defendants' Motion to Compel Arbitration, ECF No. 27, at 2:27-28 (the "Motion" or "Mot."); Julier Decl., Ex. A. The Premises Consent Form discusses only terms relating to the patient's use of the SEV premises and medical services. It makes no reference to the Website, nor does it provide any notice that by completing the Premises Consent Form, patients' claims unrelated to their on-premises services would be forced into arbitration. Under controlling law, the Court should not find a valid agreement to arbitrate under these circumstances.

***Third***, even if Plaintiff did have notice of the Arbitration Clause, Plaintiff's claims fall outside the scope of the Arbitration Clause for at least two reasons: (1) Plaintiff's claims accrued nearly two weeks prior to her purported agreement to the Premises Consent Form and the Arbitration Clause does not apply retroactively; and (2) Plaintiff's claims do not arise out of the subject matter of the Premises Consent Agreement.

***Fourth***, the Arbitration Clause imposes one-sided, costly terms on Defendants' patients through a contract of adhesion that a reasonable consumer would not even realize that they had entered. As a result, the Arbitration Clause is unconscionable, and thus unenforceable in any instance.

For these reasons, and as explained further herein, Defendants' Motion must be denied.

## II. LEGAL STANDARD

The Federal Arbitration Act requires courts to compel the arbitration claims covered by an ***enforceable*** arbitration agreement. *See* 9 U.S.C. § 3 (emphasis added). Defendants, seeking to compel arbitration, "bear[] the burden of proving the existence

of an agreement to arbitrate by the preponderance of the evidence." . "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938 (1995)). "The principle of knowing consent applies with particular force to provisions for arbitration, including arbitration provisions contained in contracts purportedly formed over the internet." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 445 (2021).

## III. ARGUMENT

### A. DEFENDANTS FAILED TO AUTHENTICATE THE EXHIBITS TO THE JULIER DECLARATION

"[D]istrict courts 'ruling on a motion to compel arbitration must apply a standard similar to the summary judgment standard of [Rule] 56.'" *Ellis v. Wallet Buddha LLC*, 2025 U.S. Dist. LEXIS 266800, at *9 (C.D. Cal. Dec. 29, 2025) (citing *S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. Oct. 7, 2021)). "[U]nauthenticated documents cannot be considered." *Id*. (quoting *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)). When "documents are authenticated through personal knowledge, 'the affiant must be a person through whom the exhibits could be admitted into evidence.'" *Id*. at *10 (quoting *Orr*, 285 F.3d at 774).

Here, Defendants seek to authenticate Exhibits A, B, and C to the Declaration of Carrie Julier, SEV's CEO: a purported "Premises Consent" agreement between Plaintiff and Defendants (Ex. A); Defendants' purported Terms (Ex. B); and Defendants' purported Privacy Notice (Ex. C). To authenticate such business records, the declarant must at least "have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business. *Latman v. Burdette*, 366 F.3d 774, 787 n.9 (9th Cir. 2004),

abrogated on other grounds by *Law v. Siegel*, 571 U.S. 415 (2014). Ms. Julier fails this test. The Declaration does not evince familiarity with the preparation of the documents, does not identify how the records came into being, and does not suggest that Ms. Julier had any regular connection to the records or knowledge of them "except that gained by hearsay." *Latman*, 366 F.3d at 787 n.9. Without knowledge "as to the manner in which the records are made and kept, [Ms. Julier] cannot be subjected to meaningful cross-examination" and "the trier of fact would have no rational basis on which to evaluate the accuracy of the record." *NLRB v. First Termite Control Co.*, 646 F.2d 424, 427 (9th Cir. 1981). As a result, the Julier Declaration is insufficient to authenticate Exhibits A-C. *See Ellis*, 2025 U.S. Dist. LEXIS 266800 at *13-14 (refusing to consider a CEO declaration attesting to actions taken by the plaintiff on the defendant's website where the declaration did not establish that the CEO was "responsible for developing or updating" the website "such that he would know what content appeared on the webpage").

Moreover, Ms. Julier's lack of familiarity with these records renders her declaration factually deficient as well. The Julier Declaration does not identify how the document in Exhibit A was presented to the Plaintiff, nor establish how Defendants know "the electronic signature was made by the plaintiff." *See Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 843-44 (Cal. App. 2014). Indeed, Exhibit A, which purports to be the Premises Consent Form completed by Plaintiff, lacks a signature in the signature box closest to the hyperlinked Terms that Defendants claim incorporate the Arbitration Clause by reference. *See* Julier Decl., Ex. A, at 1. Yet, the Declaration does not even attempt to explain why this signature is missing.

As a result of these deficiencies, Exhibits A-C are not properly authenticated and cannot be considered. Absent those exhibits, the instant motion fails.

### B. DEFENDANTS FAIL TO ESTABLISH THE EXISTENCE OF AN AGREEMENT TO ARBITRATE DUE TO DEFECTIVE NOTICE

#### i. A Website Agreement is Not Binding Unless the User is Given Conspicuous Notice of its Terms.

The Internet and consumers' use of it "has not fundamentally changed the principles of contract." *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman,* 30 F.4th at 857. "[R]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Berman*, 30 F.4th at 856 (quoting *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002)).[1] To determine whether notice is conspicuous, courts analyze "the visual design of the webpages and the context of the transaction." *Godun*, 135 F.4th at 709 (quoting *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025)). "To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)). This "fact-intensive" inquiry is informed by the "totality of the circumstances." *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 514 (9th Cir. 2023). "[T]he onus [is] on website owners to put users on notice of the terms to which they wish to bind consumers." *Id*.

/ / /

/ / /

/ / /

[1] "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman*, 30 F.4th at 855 (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 73 (2d Cir. 2017)).

### ii. The Premises Consent Form Does Not Provide Adequate Notice of the Arbitration Clause.

Plaintiff booked a medical appointment with SEV on July 21, 2025, using the Booking Pages. *See* Mot. at 2:23-25. Defendants do not argue that Plaintiff agreed to the Terms at this time. Nor could they. The Terms are not referenced anywhere on the Booking Pages. *See* Declaration of Alyssa Tolentino in Support of Plaintiffs' Response in Opposition to Defendants' Motion to Compel Arbitration, ¶ 3, Exs. 1-3. Rather, Defendants argue that after Plaintiff booked her appointment, Defendants sent Plaintiff the Premises Consent Form and Plaintiff agreed to the Terms by completing it on August 3, 2025—nearly two weeks after she used the Booking Pages and had her Sensitive Health Information disclosed to unauthorized third parties. *See* Mot. at 2:23-25. In their Motion, Defendants inaccurately assert that the Premises Consent Form was hosted on SEV's Website. *Id*. at 2:25-26. In reality, as Defendants' own exhibits clearly show, the Premises Consent Form was hosted on www.zenoti.com, not the SEV Website located at www.sevlaser.com. *Compare* Julier Decl., Ex. A, *with* Julier Decl., Ex. B.

Throughout the Premises Consent Form, SEV gives every indication that the terms relate solely to the subject matter established by the document's title: use of SEV's premises to receive medical care. At the outset, the Premises Consent Form states that: "[b]y signing this agreement, you give up your right to bring a court action to recover compensation or obtain any other remedy **for any personal injury or property damage** however caused arising out of your utilization of Sev Laser Aesthetics, and David Robert Kang, M.D.'s **services and premises**[.]" Julier Decl., Ex. A at 1 (emphasis added).[2] The term "services" as used in the Premises Consent Form can only be interpreted to refer to the medical services rendered on the SEV

[2] Plaintiff's signature ***only*** appears in connection with this notice on the first page, despite there being signature fields throughout the rest of the Pre-Appointment Forms. *See* Julier Decl., Ex. A.

premises because the next section of the Premises Consent Form warns that patients assume the risk that they may be exposed to COVID-19 through using Defendants' services. *Id*. After these COVID-19 disclosures, the Premises Consent Form relays an indemnification provision relating again to the patient's use of SEV's "services and premises" and elicits a signature. *Id*. Then, the second page further reinforces the scope of the Premises Consent Form by informing patients that SEV's consent forms are used to "conduct, plan, and direct [the patient's] treatment and follow-up care." *Id*. at 2. Finally, on its third page, the Premises Consent Form asks the patient to affirm specific terms by checking a series of boxes, including agreement that SEV may use video surveillance on its premises; that SEV is not responsible for damage to personal property while on premises; and that SEV is not responsible for the supervision of the patient's children or pets while the patient is on the premises. *Id*. at 3. Buried in this list is the statement relied upon by Defendants, which reads:

> I represent that I am 18+ years of age and/or have a parent/legal guardian to represent me. I have read, agree and understood this Premises Consent Form and Terms of Use available to me at the links provided below: • https://sevlaser.com/privacy-notice/ • https://sevlaser.com/terms

*Id*. SEV makes no effort to highlight the Terms by offsetting the notice text from the rest of the Premises Consent Form in a different color, font size, or font weight, such as by underlining or bolding the font to draw attention to them. *Cf. Morrison v. Yippee Ent., Inc.*, 2025 U.S. Dist. LEXIS 21024, at *2 (9th Cir. Aug. 18, 2025) (finding reasonable notice where "the hyperlink appeared in bright blue font against a clean white background that stood out from the surrounding text to indicate it was clickable"); *see also Berman*, 30 F.4th at 837 ("the fact that a hyperlink is present must be readily apparent").

In sum, there is nothing in the Premises Consent Form that alerts SEV's patients that it relates to anything other than the patient's use of SEV's premises to receive medical care and SEV made it as hard as possible for Plaintiff to even read the Terms.

Every provision in the Premises Consent Form relates to SEV's medical services and premises. Indeed, the Premises Consent Form even explicitly represents that its purpose is to "conduct, plan, and direct [the patient's] treatment and follow-up care." *Id*. at 2. At no point does the Premises Consent Form even ***mention*** SEV's Booking Pages or Website, let alone disclose that by completing the Premises Consent Form, the patient will be barred from pursuing any claim relating to the Website in Court, including claims that have already accrued. Plaintiff thus could have had no reason to believe that the language pertaining to a "Premises Consent Form and Terms of Use" that Defendants rely upon referred to anything other than the Premises Consent Form and terms that she had just reviewed.

California courts have found lack of notice under these exact circumstances. In *Doe v. Massage Envy Franchising, LLC*, the California 1st District Court of Appeal examined a similar clickwrap notice in a "General Consent" agreement provided to the plaintiff to check-in for a previously scheduled massage appointment. 87 Cal. App. 5th 23, 32 (2022). Like here, the defendant in *Massage Envy* argued that the "General Consent" incorporated a Terms of Use Agreement, including an arbitration clause, by reference via clickwrap. *Id*. The Court of Appeal disagreed, finding:

> [w]hen she was presented with the checkbox next to 'I agree and assent to the Terms of Use Agreement,' [the plaintiff] had just finished scrolling through the General Consent, a contract with repeated instructions to read and review it in full and to sign it, as well as repeated statements that she was agreeing, consenting to, acknowledging, and accepting the terms of the 'Assumption of Risk, Release, Waiver of Liability, and Indemnification.' Everything about the checkbox next to the words 'I agree and assent to the Terms of Use Agreement' made it appear to be simply a part of the General Consent…
>
> In short, we have no difficulty concluding that the contractual terms of the Terms and Conditions—including the arbitration provision—were not presented to plaintiff 'in a manner that made it apparent [she] was assenting to those very terms when … clicking on a button' next to the sentence 'I agree and assent to the Terms of Use Agreement.' To the contrary, the entire check-in experience made it appear that by clicking that button and then signing her name plaintiff was agreeing to the General Consent[.]

*Id*. at 32. Moreover, the court additionally distinguished authority offered by the defendant, noting that unlike in the usual context of a clickwrap agreement, the plaintiff was not downloading a software program, registering for an online service, or placing an order but rather "already had an account with the [defendant]" and "was not informed that she was signing up for a new service" by agreeing to the "General Consent." *Id.* at 35. As a result, the court found there was no contract formation due to lack of notice. *Id*.

The same reasoning that led the Court of Appeal to find lack of contract formation in *Massage Envy* applies in equal force here. Like in *Massage Envy*, "[e]verything about the checkbox next to" the statement 'I have read, agree and understood this Premises Consent Form and Terms of Use,' "made it appear to be simply a part of" the Premises Consent Form. *Id*. at 32. Moreover, like in *Massage Envy*, Plaintiff had already created a patient account with Defendant through the Booking Pages and was given no notice that, by completing the Premises Consent Form, she was forming an agreement pertaining to anything other than use of the premises for her appointment.[3]

Put simply, the "onus must be on [Defendants] to put users on notice of the terms to which they wish to bind consumers." *Berman,* 30 F.4th at 857. Defendants failed to meet this burden and thus cannot establish the existence of an agreement to arbitrate.

### C. EVEN ASSUMING *ARGUENDO* THAT PLAINTIFF AGREED TO THE TERMS OF USE, PLAINTIFF'S CLAIMS ARE OUTSIDE OF THE SCOPE OF THE ARBITRATION CLAUSE

"[A]rbitrators derive their authority to resolve disputes only because the parties have agreed ***in advance*** to submit such grievances to arbitration." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648-49 (1986) (emphasis added). Here,

---

[3] The cases cited by Defendants do not compel a different result as all involve standard Internet consent agreements like those distinguished by the court in *Massage Envy*. *Compare id*., *with Oberstein*, 60 F.4th at 515-16 (9th Cir. 2023) (Terms of Use consent on check-out page for online ticket purchase); *Kohler v. WhaleCo, Inc.*, 757 F. Supp. 3d 1112, 1124 (S.D. Cal. 2024) (same as to account creation process); *Chin v. Thumbtack Inc.*, 2026 U.S. Dist. LEXIS 62622 (N.D. Cal. Mar. 24, 2026) (same).

Plaintiff cannot be compelled to arbitrate her claims against SEV, both because she never consented to SEV's Terms of Use containing the purported Arbitration Clause, and because her claims regarding the unlawful disclosure of her Sensitive Health Information arose prior to being presented with any arbitration agreement. However, even assuming that Plaintiff did consent to the Terms of Use, SEV is incorrect that her claims fall within the scope of the Arbitration Clause.

**i. Plaintiff did not delegate the gateway question of arbitrability to the arbitrator.**

As an initial matter, the Court may properly determine the arbitrability of Plaintiff's claims. '"[G]ateway' questions of arbitrability, such as 'whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy[,]'" are presumptively reserved for the court. *Gerlach v. Tickmark Inc.*, 2021 U.S. Dist. LEXIS 141105, at *10-11 (N.D. Cal. July 28, 2021) (quoting *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)). While parties may delegate gateway questions of arbitrability to arbitration, there must be "clear and unmistakable" evidence that they intend to do so. *First Options*, 514 U.S. at, 944. Here, all evidence points to the contrary—that Plaintiff never agreed to delegate gateway issues of arbitrability.

***First***, as explained above, Plaintiff never accepted the Terms due to Defendants' defective notice. *See* Section § III(B), *supra*. "Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Namisnak v. Uber Techs.*, 971 F.3d 1088, 1094 (9th Cir. 2020).

***Second***, Defendants' argument for delegation of arbitrability relies solely on the assertion that the Arbitration Clause incorporates the JAMS rules. Any purported delegation provision in the JAMS Rules is unconscionable as presented in this Arbitration Clause in and of itself. The Arbitration Clause and purported delegation provision therein is unconscionable for the same reasons discussed in § III(D), *infra*; *see*

*also Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 243 (2015) (finding a delegation clause procedurally unconscionable where it is part of a contract of adhesion); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (finding procedural unconscionability where nothing in the text of the agreement called the plaintiff's attention to the delegation clause). Therefore, even assuming that the Arbitration Clause includes a delegation provision, such a provision is unenforceable.

***Third***, even assuming Plaintiff had agreed to the Terms, and the Arbitration Clause is not unconscionable, the Arbitration Clause says nothing about determination of gateway issues and thus does not evidence a "clear and unmistakable" intent to delegate threshold issues of arbitrability. *First Options*, 514 U.S. at 944. Rules. Mot. at 6-7. "[D]espite 'the law's permissive policies in respect to arbitration…a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration,' and courts should 'hesitate to interpret silence or ambiguity on the [delegation question] as giving the arbitrators that power.'" *Young v. Solana Labs, Inc.*, 2025 U.S. App. LEXIS 27194, at *5-6 (9th Cir. Oct. 20, 2025) (quoting *First Options of Chi., Inc.*, 514 U.S. at 945). Here, the Arbitration Clause includes no language delegating threshold issues to the arbitrator, nor does it contemplate any method for determining the arbitrability of a given claim. At the very least, it is "unclear whether the [JAMS] rules would apply to…issues such as arbitrability, as the Agreement[Arbitration Clause] does not contemplate them in the first place." *Ruiz v. Kelly Servs. Glob., LLC*, 2026 U.S. App. LEXIS 421, at *2-3 (9th Cir. Jan. 8, 2026). Instead, the Arbitration Clause's plain language indicates that a claim must be filed "with JAMS **or a permitted court**" and further allows the prevailing party "in any action or proceeding to enforce rights under these Terms" to recover, *inter alia*, court costs. Julier Decl., Ex. B at 6 (emphasis added). Accordingly, "the arbitration agreement [] leaves open the possibility that a court could decide such issues too." *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 U.S. Dist. LEXIS 176556, at *17 (N.D. Cal. Sep. 30, 2023) (finding no delegation where

arbitration clause allowed claims to be brought in court if arbitration agreement was found unenforceable). The Court should not find a "clear and unmistakable" intent to delegate arbitrability under such circumstances. *First Options*, 514 U.S. at 944.

**ii. The Arbitration Clause Does Not Apply Retroactively.**

In determining whether an arbitration agreement applies to claims accruing prior to its effective date, courts examine the breadth of the arbitration agreement's language and only enforce retroactive application where that language demonstrates that the parties intended to arbitrate disputes predating the contract. When the agreement uses present-tense verbs to describe disputes, it "suggests that the contract governs only disputes that begin —that arise—in the present or future. The present tense usually does not refer to the past." *Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208, 223 (2023) (quoting *Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014)).

Here, the Arbitration Clause only applies to a "dispute, claim or controversy **arising out of** or relating to [the patient's] use of or access to our Site, Services, or SEV Content, these Terms or the breach, termination, enforcement, interpretation, or validity of these Terms[.]" Julier Decl., Ex. B, at 6 (emphasis added). "The use of the present participle 'arising' makes it clear that [the arbitration clause] applies to claims that may arise going forward, not claims that have already accrued." *Morse v. Servicemaster Global Holdings, Inc.*, 2012 U.S. Dist. LEXIS 144691, at *15 (N.D. Cal. Oct. 4, 2012); *cf. Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683-84 (9th Cir. 2024) (arbitration clause applied retroactively because it explicitly stated that it applied "irrespective of when that dispute, claim, or controversy arose"). Accordingly, the language of the Arbitration Clause does not evince a mutual intention to arbitrate disputes predating execution of the agreement. *See, e.g., Mohebbi v. Khazen*, 2014 U.S. Dist. LEXIS 168351, at *31 (N.D. Cal. Dec. 4, 2014) (finding arbitration clause did not cover claims arising prior to its formation because "the arbitration clause does not explicitly

encompass claims that predate the signing of the Engagement Agreement"); *Long v. Fid. Water Sys.*, 2000 U.S. Dist. LEXIS 7827, at *10 (N.D. Cal. May 24, 2000) (same).

**iii. The Scope of the Arbitration Clause Does Not Encompass Plaintiff's Privacy Claims.**

"In determining if a dispute falls within the scope of an arbitration clause, [courts] examine the factual allegations raised in the complaint." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023). "[E]ven under broad arbitration clauses[,]" the "factual allegations must at least 'touch matters' covered by the contract containing the arbitration clause." *Id.* (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)). Accordingly, for even a "broadly-worded arbitration agreement" to apply, "a significant relationship" must "exist[] between the asserted claims and the contract in which the arbitration clause is contained." *Aiken v. World Fin. Corp.*, 373 S.C. 144, 149 (2007) (quotations omitted).

As explained in § III(B)(ii), *supra*, every provision of the Premises Consent Form pertains only to the medical services offered at SEV's office locations, not its Website or Booking Pages. Plaintiff's claims relating to use of Defendant's Booking Pages almost two weeks prior to signing the Premises Consent Form are thus not related to the subject matter of the Premises Consent Form. To the extent Defendants argue to the contrary, the Arbitration Clause in the Terms is rendered invalid under California law. Last year, the California legislature passed California Senate Bill 82 ("S.B. 82"), which added Section 1670.15 to the California Civil Code. *See* S.B. 82, 2025–2026 Reg. Sess. (Cal. 2025); Cal. Civ. Code § 1670.15. Section 1670.15 mandates that "[d]ispute resolution terms and conditions of a consumer use agreement shall be limited to the use, payment, or provision of the good, service, money, or credit provided by that consumer use agreement," and further provides that any waiver of this requirement is "contrary to public policy and void and unenforceable." Cal. Civ. Code § 1670.15(b), (c). As the Senate Judiciary Committee explained, S.B. 82 was passed in response to "[a] troubling

trend…where companies are attempting to argue that clauses in consumer contracts require consumers to resolve *all claims* against that company, regardless if the claim the consumer is pursuing arises from the specific transaction of the original contract." S. Judiciary Comm., Analysis of S.B. 82, 2025–2026 Reg. Sess., at 3 (Apr. 22, 2025). This exact concern is implicated here. Plaintiff's claims do not arise from SEV's provision of medical or aesthetic services. Rather, they arise from SEV's independent and unlawful disclosure of Plaintiff's Sensitive Health Information to third parties prior to both receipt of those services and Plaintiff's completion of the Premises Consent Form. Construing SEV's Arbitration Clause to sweep in unrelated privacy claims would therefore contravene both the plain language and express public-policy purpose of Section 1670.15, which must "be liberally construed for the purpose of protecting consumers." *See* Cal. Civ. Code § 1670.15(d).

**D. THE ARBITRATION CLAUSE IS UNCONSCIONABLE**

Even if Plaintiff assented to the Arbitration Clause (she did not), this Court should decline to enforce it because it is unconscionable. "Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 89 (2000)). "California courts employ a sliding scale to determine unconscionability, the more" procedurally oppressive the contract terms, the less substantive unconscionability is required "to conclude the terms are unenforceable, and vice versa." *Id.*

**i. The Arbitration Clause is Procedurally Unconscionable.**

In determining whether an arbitration agreement is procedurally unconscionable, courts consider "whether the contract is one of adhesion," and "the factors of oppression and surprise." *Heckman*, 120 F.4th at 681 (quoting *Armendariz*, 24 Cal. 4th at 99 and *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659 (Cal. Ct. App. 1993)).

California courts hold that "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Id.* (quoting cases). Similarly, "oppression and surprise are 'satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.''" *Id.* (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc)).

***1) The Arbitration Clause is a Contract of Adhesion.***

A contract of adhesion is "'a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms.'" *Heckman*, 120 F.4th at 681 (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Defendants describe the Premises Consent Form as "paperwork" that SEV clients "must complete." Notice of Mot., ECF No. 27, at 2:13; Mot. at 1:20, 2:25-27. Plaintiff had the option to either accept the Premises Consent Form as written or go elsewhere (i.e., take-it-or-leave-it). This is a paradigmatic contract of adhesion.

***2) The Arbitration Clause Is Oppressive.***

"Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores*, 93 Cal. App. 4th at 853. "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126-27 (2019) (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332, 1348 (2015), fn. omitted). All of these factors weigh in favor of finding unconscionability here: Defendants are sophisticated corporations that

presented a lengthy, complex agreement on a take-it-or-leave-it basis to Plaintiff, a lay consumer without any bargaining power.

***3) The Arbitration Clause is the Product of Surprise.***

As discussed in § III(B)(ii), *supra*, the Terms were not presented by the Premises Consent Form "in a manner that made it apparent [to Plaintiff that she] was assenting to those very terms [by] clicking on a button" referencing the "Premises Consent Form and Terms of Use." *Massage Envy*, 87 Cal. App. 5th at 32; Julier Decl., Ex. A. "To the contrary, the entire check-in experience made it appear that by clicking that button and then signing her name plaintiff was agreeing to the [Premises Consent Form]." *Massage Envy*, 87 Cal. App. 5th at 32. A reasonable consumer would understand the agreement to refer to the use of SEV's medical services and premises discussed by the Premises Consent Form, not actions taken on a website two weeks prior. Defendants' contrary argument that the Premises Consent Form alerts users to the Arbitration Clause by stating that they "give up [their] right to bring a court action" must therefore fail because nothing in that document even mentions arbitration. Mot. at 3:3-4. If anything, a reasonable person would think that "give up [their] right to bring a court action" was referring to the "ASSUMPTION OF RISK and RELEASE", "WAIVER OF LAWSUIT/LIABILITY" or "INDEMNIFICATION" sections on that same page, not to an arbitration provision in a separate agreement. *See* Julier Decl., Ex. A, at 1; *see also ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1173 (N.D. Cal. 2002) (in a contract of adhesion "the doctrine of contra proferentem dictates that all ambiguities in the agreement be construed against Defendants").

Further, the Arbitration Clause is referred to in section 20 our of 23, on the sixth page of the Terms, in dense font and not set apart or highlighted in any manner that would draw Plaintiff's attention. *See* Julier Decl., Ex. B at 6; *Lim*, 8 F.4th at 1001 (finding procedural unconscionability where an arbitration clause was presented in the middle of 31 numbered paragraphs, in single-spaced, 10-point font). Lastly, the Terms'

"[f]ailure to provide [a link to or copy of] the applicable [JAMS] arbitration rules is another factor that supports procedural unconscionability." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 84 (2014).

For these reasons, the Arbitration Clause is procedurally unconscionable.

**ii. The Arbitration Clause is Substantively Unconscionable Because it is Harsh and One-Sided.**

A contract provision is substantively unconscionable if it is "overly harsh," "unduly oppressive," or "unreasonably favorable." *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal.4th 899, 911 (2015). The primary concern is "whether the contract will create unfair or one-sided results that 'reallocate risks in an objectively unreasonable or unexpected manner.'" *Rios v. HRB Digit. LLC*, 807 F. Supp. 3d 975, 985 (N.D. Cal. 2025) (quoting *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 493 (2024)). The Arbitration Clause is highly one-sided and places a significant burden on the Plaintiff.

***1) The "Loser Pays" Fee-Shifting Provision Puts an Unconscionable Burden on Plaintiff.***

The Arbitration Clause allows the arbitrator to award to the prevailing party "any part of the legal fees, arbitrator's fees and costs and other costs incurred by that party with respect to the arbitration." Julier Decl., Ex. B, at 6. In *Sanchez*, the California Supreme Court held that arbitration agreements imposing "fees and costs [that] in fact would be unaffordable or would have a substantial deterrent effect" are unconscionable. 61 Cal. 4th at 920. SEV's "loser pays" fee-shifting clause "puts [plaintiffs] who demand arbitration at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court[.]" *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) (affirming finding that fee-shifting clause was substantively unconscionable); *see also Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (finding fee-splitting scheme in arbitration provision unconscionable "because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court."); *Circuit City Stores v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) ("fee

allocation scheme alone would render an arbitration agreement unenforceable").[4] Most reasonable consumers, like Plaintiff, would not be able to afford thousands of dollars in arbitration fees, and many would likely forego seeking redress for their claims rather than run the risk of incurring those fees.

Further, the clause requires Plaintiff to pay Defendants' "attorney's fees, court costs, and disbursements" if Plaintiff brings a dispute "other than in accordance" with the clause, but contains no reciprocal provision if Defendants bring a dispute "other than in accordance" with the clause. The Ninth Circuit has found that arbitration clauses that "would allow [the defendant] to seek to recover all of its attorney's fees…creates a chilling effect on [the plaintiff] enforcing his rights…." *Lim*, 8 F.4th at 1003. This is especially true when applied to the purported delegation provision, because "the prevailing-party provision does not preclude eventual recovery for attorney's fees arising from the arbitrator's initial decision on arbitrability." *Id.* Because the Arbitration Clause's fee-shifting provision renders arbitration "'fees and costs…unaffordable or would have a substantial deterrent effect'" on consumers' ability to seek redress for their claims against SEV, the Arbitration Agreement is unconscionable. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1026 (9th Cir. 2016) (quoting *Sanchez*, 61 Cal. 4th at 920).

***2) The Arbitration Clause is One-Sided.***

The Arbitration Clause contains multiple provisions which only bind Plaintiff, including a one-year limitation which applies only to Plaintiff. *See* Julier Decl., Ex. B, at 6 ("YOU MUST FILE A CLAIM … WITHIN ONE YEAR … OR YOU WAIVE" the claim). The Arbitration Clause additionally requires Plaintiff to first informally negotiate with Defendants as "a precondition to **you** initiating an arbitration" but does

[4] Both *Ting* and *Circuit City* dealt with fee-splitting provisions, in which the parties shared the costs of arbitration. This is *more* generous than the arrangement at issue here, where the losing party may be entirely responsible for the costs of arbitration.

not require such a precondition for Defendants. *See* Julier Decl., Ex. B, at 6 (emphasis added). It also requires the arbitration to occur in Los Angeles, California, a much more convenient forum for SEV, who resides in Los Angeles County. *See* Complaint, ECF No. 1, at ¶ 27. These one-sided provisions are especially problematic when only the weaker party is bound. *See Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004) ("Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to [a defendant]-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration."); *see also Munoz v. Earthgrains Distribution, Ltd. Liab. Co*., 2024 U.S. App. LEXIS 23099, at *5 (9th Cir. Sept. 11, 2024) (finding substantive unconscionability where defendants included a carve-out provision allowing them to pursue claims related to intellectual property in federal court); *Meyer v. T-Mobile USA Inc*., 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (same where "the agreement would compel the customer, the weaker party, to arbitration while exempting [defendant], the stronger party, from arbitration."); *Fitz v. NCR Corp*., 118 Cal. App. 4th 702, 725 (2004) (same). Moreover, the Arbitration Clause is further one-sided because the Terms "permit unilateral modification" by Defendants "without prior notice." *Heckman*, 120 F.4th at 682; *see also* Julier Decl., Ex. B, at 2.

#### ***3) The Arbitration Clause Requires Individuals Arbitrate in a Distant Forum.***

The Arbitration Clause requires individuals to arbitrate their claims exclusively "in Los Angeles, California." Julier Decl., Ex. B, at 6. This requirement is unconscionable as applied to Plaintiff, an Illinois resident who would have to travel 1,000 miles to arbitrate under the terms of the Arbitration Clause. *See Lhotka v. Geographic Expeditions, Inc.,* 181 Cal. App. 4th 816, 825 (2010) (finding substantive unconscionability when "plaintiffs, residents of Colorado, were required to mediate and

arbitrate in San Francisco"); *Lim*, 8 F.4th at 1003 (provision requiring the plaintiff, a Southern California resident, to arbitrate claims in Dallas, Texas was substantively unconscionable).

**iii. Severing the Unconscionable Provisions Cannot Cure the Defects.**

While California Cal. Civ. Code § 1670.5 gives courts discretion to determine whether to sever or restrict an unconscionable provision, severance is inappropriate if "the agreement is 'permeated' by unconscionability." *Lhotka*, 181 Cal. App. 4th at 826 (citations omitted). "Severance is not permitted if the court would be required to augment the contract with additional terms[.]" *Lim*, 8 F.4th at 1005. Arbitration agreements are permeated by unconscionability if they "contain[] more than one unlawful provision," indicating "a systematic effort to impose arbitration…as an inferior forum that works to the [stronger party's] advantage." *Id.* (quoting *Armendariz*, 24 Cal. 4th at 124). Courts should also consider whether "there is [a] single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz,* 24 Cal. 4th at 124-25. Here, the Arbitration Clause is permeated by unconscionability: it significantly impairs an individual's ability to bring claims, potentially shifts enormous arbitration costs onto the consumer, and includes multiple one-sided provisions. Realistically, the only way this Court could salvage the Arbitration Clause is by rewriting it, which courts cannot do.

In sum, the Arbitration Clause rates high in both procedural and substantive unconscionability, and therefore should not be enforced. *See Kilgore*, 718 F.3d at 1058 (discussing California's "sliding scale").

## IV. <u>CONCLUSION</u>

For these reasons, this Honorable Court should deny Defendants' Motion and decline to enforce the Arbitration Clause.

Dated: May 22, 2026

Respectfully submitted,


/s/ Alyssa Toelntino
Alyssa Tolentino (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
E: atolentino@sirillp.com

Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

*Attorneys for Plaintiffs and the Putative Class*


## Local Rule 11-6.2 Certificate of Compliance

The undersigned counsel of record for Plaintiffs hereby certifies that this brief contains 6,643 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 22, 2026

/s/ Alyssa Toelntino
Alyssa Tolentino (*pro hac vice*)

## **Certificate of Service**

The undersigned counsel of record for Plaintiffs hereby certifies that on May 22, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

Dated: May 22, 2026

*/s/ Alyssa Toelntino*
Alyssa Tolentino (*pro hac vice*)