Alyssa Tolentino (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
E: *atolentino@sirillp.com*

Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street, 8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: *ssingh@sirillp.com*

Daniel Srourian, Esq. SBN 285678
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
Fax: (213) 471-4160
E: *daniel@slfla.com*

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NICOLE FIRLEJ** and **HANIA ROUHANI**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PETROSIAN ESTHETIC ENTERPRISES, LLC,** and **SEV LASER AESTHETICS CHICAGO, LLC**,<br><br>Defendants. | Case No. 2:26-cv-01030-MWC-AGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Assigned to the Hon. Michelle Williams Court, Courtroom 6A<br><br>Date: June 26, 2026<br>Time: 1:30 p.m.<br><br>Action Filed: February 2, 2026 |

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 2

A. PLAINTIFF DID NOT CONSENT TO DEFENDANTS' DISCLOSURE OF HER SENSITIVE HEALTH INFORMATION. ........ 2

B. DEFENDANTS DISCLOSED PLAINTIFF'S HIPAA-PROTECTED MEDICAL INFORMATION. ........ 4

i. Defendants Disclosed Plaintiff's Sensitive Health Information to Unauthorized Third Parties. ........ 4

ii. Plaintiff's Sensitive Health Information is PHI under HIPAA. ........ 4

C. PLAINTIFF'S ECPA CLAIM IS SOUND. ........ 6

i. Plaintiff Alleges a Tortious Purpose. ........ 7

ii. The Interception Occurred In-Transit. ........ 9

iii. Defendants Disclosed the Contents of Plaintiff's Communications Through the Website. ........ 10

D. PLAINTIFF'S CIPA CLAIM IS WELL-PLED. ........ 12

i. Defendants are both directly and derivatively liable for violating the CIPA. ........ 12

ii. Plaintiff has alleged that the "contents" of her communications were intercepted. ........ 13

iii. Plaintiff has alleged that the interceptions occurred "in transit." ........ 14

E. PLAINTIFF'S INVASION OF PRIVACY CLAIMS ARE WELL-PLED. ........ 14

i. Defendants' use of surreptitious Tracking Tools constitutes an "intrusion." ........ 14

ii. Defendants' unauthorized disclosures of Plaintiff's Sensitive Health Information are "highly offensive." ........ 16

F. PLAINTIFF'S NEGLIGENCE CLAIM IS WELL-PLED. ........ 17

i. Defendants had a Duty to Protect Plaintiff's Sensitive Health Information. ........ 17

ii. Defendants' Breach of Their Duty Caused Plaintiff Cognizable Injuries. .......... 18

G. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM IS WELL-PLED. .......... 19

H. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS WELL-PLED. .......... 20

IV. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**


*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 20

*Anderson v. NCAA*,
2026 U.S. Dist. LEXIS 75991 (C.D. Cal. 2026) .......... 4

*Andraos v. Travelers Indem. Co.*,
2026 U.S. Dist. LEXIS 95619 (C.D. Cal. 2026) .......... 6

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 18

*In re Anthem, Inc. Data Breach Litig.*,
2016 U.S. Dist. LEXIS 70594 (N.D. Cal. 2016) .......... 19

*Archambault v. Riverside Resort & Casino, Inc.*,
2025 U.S. Dist. LEXIS 176564 .......... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. 2024) .......... 7, 16, 19

*B.N. v. Or. Reprod. Med., LLC*,
2025 U.S. Dist. LEXIS 222638 (D. Or. 2025) .......... 8

*Baynard v. Derma Clinic, Inc.*,
2005 Conn. Super. LEXIS 2394 (Super. Ct. 2005) .......... 6

*Bioderm Skin Care, LLC v. Sok*,
426 S.W.3d 753 (Tex. 2014) .......... 5

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .......... 2

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 3

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. 2024) .................................... 7, 10

*Castillo v. Seagate Tech., LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. 2016)............................................ 20

*D'Antonio v. Smith & Wesson Inc.*,
2026 U.S. Dist. LEXIS 32257 (N.D. Cal. 2026)......................................... 15, 17

*Danforth v. Placentia-Linda Hosp.*,
2023 Cal. Super. LEXIS 67193 (Cal. Super. Ct. 2023) .................................... 12

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018)........................................................................ 17

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)............................................................... 3

*Doe v. Call-On Doc, Inc.*,
2025 U.S. Dist. LEXIS 113269 (S.D. Cal. 2025) ............................................ 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)............................................................. 9

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 U.S. Dist. LEXIS 12175 (E.D. Cal. 2024) .............................................. 16

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)............................................................. 16

*Doe v. Tenet Healthcare*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ............................................................... 8

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...........................................................9, 10, 12, 21

*Folgestrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011)......................................................................... 16

*Gaige v. Exer Holding Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. 2025) ................................................. 7

*Gilligan v. Experian Data Corp.*,
2026 U.S. Dist. LEXIS 1907 (N.D. Cal. 2026)................................................. 13

*Gonzalez v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)........................................................16

*Gray v. Luxottica of Am., Inc.*,
2024 U.S. Dist. LEXIS 243633 (C.D. Cal. 2024)........................................9, 10

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ............................................................9

*Hammerling v. Google LLC*,
2024 U.S. App. LEXIS 5253 (9th Cir. 2024)................................................2, 3

*Heerde v. Learfield Commc'ns, LLC*,
2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024)...............................................9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)....................................................................................14

*Hubbard v. Google LLC*,
2025 U.S. Dist. LEXIS 6588 (N.D. Cal. 2025)..................................................3

*I.T. v. ChoicePoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. 2025) ....................................7, 10

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
2022 U.S. Dist. LEXIS 206552 (C.D. Cal. 2022)............................................20

*Knappenberger v. City of Phoenix*,
566 F.3d 936 (9th Cir. 2009).............................................................................2

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002).............................................................................9

*Krzyzek v. Openx Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)...........................................................13

*Lewis v. Magnite, Inc.*,
2025 U.S. Dist. LEXIS 263675 (C.D. Cal. 2025)..................................4, 10, 21

*Lundbom v. Schwan's Home Serv.*,
020 U.S. Dist. LEXIS 91577 (D. Or. 2020) .....................................................3

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. 2024)............................................13

*M.H. v. Done Glob. Inc.*,
2025 U.S. Dist. LEXIS 38456 (N.D. Cal. Feb. 26, 2025)............................ 15, 16

*Marden v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 132292 (N.D. Cal. 2024)...................................... 12, 13

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. 2024) ................................................ 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)............................................................ 16

*In re Meta Pixel Tax Filing Cases*,
747 F. Supp. 3d 987 (N.D. Cal. 2024)............................................................ 17

*People v. Silberman*,
2013 Cal. App. Unpub. LEXIS 7863 (Cal. App. 6th 2013)................................. 5

*Plaintiffs v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) ............................................................ 20

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024).....................................................*passim*

*R.S. v. Prime Healthcare Servs. Inc.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. 2025) .......................................... 7, 8, 9

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025).............................................................. 8

*Semien v. Pubmatic Inc.*,
2026 U.S. Dist. LEXIS 15196 (N.D. Cal. 2026) ............................................... 14

*Smith v. Findlay Auto., Inc.*,
2025 U.S. Dist. LEXIS 60934 (D. Nev. 2025)................................................... 18

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. 2024)............................................. 13

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) .......................................................................... 8

*Svenson v. Google Inc.*,
2015 U.S. Dist. LEXIS 43902 (N.D. Cal. 2015) ............................................... 18

*Tanjong v. Ben. Cosmetics LLC*,
2021 U.S. Dist. LEXIS 49976 (D.N.J. 2021) .................................................. 5, 6

*Tria Beauty, Inc. v. Radiancy, Inc.*,
2011 U.S. Dist. LEXIS 164259 (N.D. Cal. 2011) .................................................. 6

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................. 9

*Williams v. Petrosian*,
2021 Cal. App. Unpub. LEXIS 3160 (Cal. App. 2d Dist. 2021) .................................................. 4

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................. 10, 11

**Statutes**

18 U.S.C. § 2511(1)(c)-(d) .................................................. 6

18 U.S.C. § 2511(2)(d) .................................................. 7

California Civil Code Section 1714 .................................................. 17

**Other Authorities**

45 C.F.R. § 160.103 .................................................. 5

L.R. 11-6.1 .................................................. 22

Rule 12(b)(6) .................................................. 2, 17

## I. PRELIMINARY STATEMENT

"Medical spa. It sounds so soothing. It evokes images of candles, beautiful music, warmth and pampering. Spahhhh! The words alone can make one relax." *Medical Spas – What You Need to Know*, 100 MED. BOARD OF CALIF. NEWSLETTER 10 (Jan. 2007).[1] But "[m]edical spas are marketing vehicles for medical procedures." *Id*. "[I]t is illegal for" anyone other than "qualified medical personnel" to "inject the skin [or] use lasers." *Id*. "There is no harm in seeking pampering or wanting to look better." *Id*. No harm, that is, unless you book your treatments through Defendants' Website. [2] If, like Plaintiff Hania Rouhani ("Plaintiff"), you book treatments through Defendants' Website, Defendants will share your HIPAA-protected medical information with Google without your consent.

Plaintiff booked laser treatment using Defendants' Website. ECF 1, ¶ 22 (the "Complaint" or "Compl."). When she did so, she reasonably expected Defendants to safeguard her Sensitive Health Information, adhering to the standard of confidentiality expected for such sensitive data. *Id*. ¶ 69. Unfortunately, it was not. Unbeknownst to Plaintiff, Defendants installed Tracking Tools produced by Google onto the Website and traded their patients' health information for advanced analytical and marketing tools. *Id*. ¶¶ 8-12. The information collected and disclosed by the Tracking Tools included the fact that Plaintiff used Defendants' Website to view appointment options for laser hair removal, and that Plaintiff then proceeded to book an appointment. *Id*. ¶¶ 22, 62-68. Plaintiff's Sensitive Health Information was transmitted to Google along with Google identifiers, which uniquely identified Plaintiff through her Google account. *Id*. ¶¶ 65-67. While Defendants contend they did not specifically inform Google of the purpose of Plaintiff's appointment, Google is adept at making advanced

---

[1] *Available online at*: www.mbc.ca.gov/Resources/Medical-Resources/Medical-Spas.aspx (last accessed June 2, 2026) (hereinafter, "*Med. Spas*").

[2] Capitalized terms herein are given the same meaning as the defined terms in Plaintiffs' Complaint.

inferences with limited data. *Id*. ¶¶ 36-41. The scenario Defendants disclosed – that Plaintiff browsed appointment options for laser hair removal and then booked an appointment – does not test Google's powers of deduction.

In their Motion to Dismiss, ECF No. 28 (the "Motion" or "Mot."), Defendants do not deny that they installed the Tracking Tools and configured them to transmit detailed information about Plaintiff's use of the Website. Instead, Defendants attempt to evade liability for these disclosures by mischaracterizing the nature of the information they collected and disclosed, citing to Google's irrelevant policies, and by minimizing the privacy harms at stake. For these reasons, and as further explained herein, Defendants' Motion to Dismiss should be DENIED in its entirety.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. ARGUMENT

### A. PLAINTIFF DID NOT CONSENT TO DEFENDANTS' DISCLOSURE OF HER SENSITIVE HEALTH INFORMATION.

As a preliminary matter, Defendants argue that Plaintiff consented to their disclosures of her Sensitive Health Information due to her purported acceptance of Google's privacy policies. This argument fails for at least two independent reasons:

***First,*** Defendants artfully skirt around the fact that **Google itself** was the defendant in both of the cases that they rely upon. *See Hammerling v. Google LLC*,

2024 U.S. App. LEXIS 5253 (9th Cir. Mar. 5, 2024); *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024). It is no great wonder that the Ninth Circuit found Google's privacy policies capable of providing notice of Google's own data collection practices. But, as Plaintiff explains in her Complaint, Google does "not provide, nor could it provide a publicly available list of every webpage on which its Tracking Tools are installed," and Defendants themselves likewise "do not disclose their use of Google's Tracking Tools." Compl. ¶ 37. Thus, unlike in *Hammerling*, Defendants can point to no policy that "disclosed the challenged data collection efforts." 2024 U.S. App. LEXIS 5253, at *5.

***Second***, "consent is 'an affirmative defense for which defendant bears the burden of proof.'" *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)). "In the context of web-based agreements, courts examine the design and content of the website to determine whether an offeree had sufficient notice of the terms such that the terms may be considered part of the agreement." *Lundbom v. Schwan's Home Serv.*, 020 U.S. Dist. LEXIS 91577, at *9 (D. Or. May 26, 2020). Yet, Defendants fail to even provide a copy of the relevant policy, let alone explain when and how Plaintiff supposedly agreed to it. *See* Mot. at § III(A). Where, like here, a defendant fails to "explain whether [purported consent] terms would have been conspicuously presented to Plaintiff[] or provide any reason for the Court to accept at the pleading stage that Plaintiff[] w[as] on notice of these terms[,]" Ninth Circuit courts have declined to consider the terms of Google's privacy policies **even where Google itself** was the defendant. *Hubbard v. Google LLC*, 2025 U.S. Dist. LEXIS 6588, at *17 (N.D. Cal. Jan. 13, 2025).

In sum, Defendants fail to demonstrate that Google's privacy policies disclosed the conduct alleged by Plaintiff, nor even that Plaintiff was placed on notice of those privacy policies. Defendants' consent argument thus fails on both substantive and procedural grounds.

### B. DEFENDANTS DISCLOSED PLAINTIFF'S HIPAA-PROTECTED MEDICAL INFORMATION.

#### i. Defendants Disclosed Plaintiff's Sensitive Health Information to Unauthorized Third Parties.

Plaintiff alleges that when she booked an appointment for laser hair removal treatment through the Website, Defendants disclosed information that reveals the fact that she had booked an appointment and the reason for that appointment to Google. *See* Compl. ¶¶ 64-66 (depicting network traffic from Defendants' Website showing transmissions made to Google when a Website user books an appointment). Defendants unavailingly challenge these allegations as "purely hypothetical." Mot. at 15:18. Not so. The figures included in the Complaint show how the Tracking Tools on the Website operate with regard to every user who books an appointment, including Plaintiff. Courts generally accept this type of exemplar pleading. *See, e.g., Anderson v. NCAA*, 2026 U.S. Dist. LEXIS 75991, at *7 (C.D. Cal. Mar. 25, 2026) (Williams Court, J.) (accepting the plaintiffs' description of how "tracking technology on the [NCAA] website" generally operated); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *6-10 (C.D. Cal. Dec. 4, 2025) (Williams Court, J.) (accepting the plaintiffs' descriptions of how the Rubicon "tracking pixel" operates generally).[3]

#### ii. Plaintiff's Sensitive Health Information is PHI under HIPAA.

Defendants operate a medical practice. Compl. ¶ 3. "[L]aser hair removal is a medical procedure subject to California regulations that require a medical practice to be directed by a licensed physician." *Williams v. Petrosian*, 2021 Cal. App. Unpub. LEXIS 3160, at *2-3 (Cal. App. 2d Dist. May 14, 2021) (examining Defendants' corporate structure in business tort action brought against SEV's founder and operator). As a medical practice, SEV Laser is "led by [a] medical director … who oversees [its] operations," and it is "staffed by … registered nurses and laser

[3] This Court criticized the plaintiffs in *Lewis* for the use of exemplary URLs they did not claim to have visited. 2025 U.S. Dist. LEXIS 263675, at *36-37. But here, Plaintiff indeed used the exemplar laser procedure booking process to book her laser treatment appointment.

technicians with specialized aesthetic training."[4] By operating this medical practice, Defendants engage in the provision of healthcare to their patients, including Plaintiff. *See Med. Spas*, at 10; *see also People v. Silberman*, 2013 Cal. App. Unpub. LEXIS 7863, at *26 (Cal. App. 6th Oct. 29, 2013) (affirming criminal conviction for "laser treatment" as "practicing medicine without a license"); *Bioderm Skin Care, LLC v. Sok,* 426 S.W.3d 753, 761 (Tex. 2014) (laser hair removal constitutes the practice of medicine). Indeed, Defendants themselves describe their patients' information as "medical information."[5]

Individually identifiable information that relates to Defendants' provision of healthcare is PHI under HIPAA. Defendants' definition of PHI as "individually identifiable information that relates to" (1) "the past, present, or future physical or mental health or condition of an individual or" (2) "the provision of health care to an individual" is essentially correct. Mot. at 14:7-10 (citing 45 C.F.R. § 160.103) (cleaned up).[6] However, Defendants' application of that definition is erroneous. As explained above, Defendants' laser hair removal treatments are medical procedures performed by medical professionals. Thus, regardless of whether Plaintiff's Sensitive Health Information relates to her "physical or mental health or condition," it still qualifies as PHI because it relates to the "provision of health care to an individual," which Defendants admit is PHI. *See id*.

To argue that their disclosure of "cosmetic services" is not prohibited by HIPAA, Defendants cite *Tanjong v. Ben. Cosmetics LLC*, 2021 U.S. Dist. LEXIS

---

[4] *About Us*, SEV LASER, https://sevlaser.com/about/ (last visited May 28, 2026).

[5] *Notice of Privacy Rights*, SEV LASER, https://sevlaser.com/privacy/ (last visited May 28, 2026).

[6] More precisely, the definition Defendants give for PHI is actually the definition given by HIPAA for Individually Identifiable Health Information ("IIHI"). *See* 45 C.F.R. § 160.103. PHI is IIHI that is stored in an electronic format. *Id*. Plaintiff's Sensitive Health Information is both PHI and IIHI, and Plaintiff uses the term PHI herein for the sake of consistency with Defendants' briefing.

49976 (D.N.J. Mar. 17, 2021) and *Baynard v. Derma Clinic, Inc.*, 2005 Conn. Super. LEXIS 2394 (Super. Ct. Sep. 1, 2005). But both cases involve cosmetic providers that only offered services that do "not require diagnosis or treatment by a physician," Mot. at 15:2-3 (quoting *Baynard*, 2005 Conn. Super. LEXIS 2394, at *7); *see also Tanjong*, 2021 U.S. Dist. LEXIS 49976 at *11 n.7 (salon was owned by "estheticians" who have different licensing requirements from physicians). Defendants' Website lists its services as laser hair removal, laser facial, skinpen microneedling, and cosmetic injections. These treatments all "inject the skin [or] use lasers" and are medical treatments which "must be performed by qualified medical personnel" meaning "a physician, or a registered nurse or physician assistant under the supervision of a physician." *Med. Spas* at 10. Neither *Tanjong* nor *Baynard* involved *medical* cosmetic services, and neither held that information related to medical cosmetic services is not PHI.

Moreover, even assuming Defendants' argument had any merit, it is improperly raised through a Motion to Dismiss. Whether a procedure is a medical procedure is a question of fact. *See Tria Beauty, Inc. v. Radiancy, Inc.*, 2011 U.S. Dist. LEXIS 164259, at *15 (N.D. Cal. Sept. 23, 2011) (allowing fact discovery to analyze "whether or not" patented laser device for hair removal "is a medical device"). Plaintiff alleges that "SEV is a medical provider offering aesthetic services." Compl. ¶ 3. "Disputes of fact are not appropriately resolved on a motion to dismiss, in which [Plaintiff's] well-pleaded allegations must be taken as true." *Andraos v. Travelers Indem. Co.*, 2026 U.S. Dist. LEXIS 95619, at *10 (C.D. Cal. Apr. 29, 2026).

**C. PLAINTIFF'S ECPA CLAIM IS SOUND.**

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution

or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiff's well-pled allegations fall under this exception.

**i. Plaintiff Alleges a Tortious Purpose.**

The crime-tort exception requires a plaintiff to allege that their communications were "**intercepted** for the **purpose** of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.§ 2511(2)(d) (emphasis added). As one Court in this Circuit explains:

> In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.

*Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024). "[A]lleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception." *Id.* at *18. Here, "the violation stems from [Defendants'] *intentional* disclosure of the collected Private Information, which constitutes a 'further impropriety' independent and separate from [Defendants'] *interception*." *R.S. v. Prime Healthcare Servs. Inc.*, 2025 U.S. Dist. LEXIS 6338, at *16 (C.D. Cal. Jan. 13, 2025) (quoting *Weston v. Lefiti*, 2024 U.S. App. LEXIS 27181, at *5 (9th Cir. Oct. 25, 2024)).[7] Plaintiff's allegations thus satisfy the crime-tort exception by showing that Defendants intercepted her Sensitive Health Information with the purpose of disclosing it to unauthorized third

---

[7] *See also R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (denying motion to dismiss ECPA claim where plaintiffs' invasion of privacy claim was sufficiently pled); *Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *15 (C.D. Cal. Jan. 30, 2025) (finding the complaint sufficiently alleged an "illegitimate purpose that was at least a determining factor for defendant's actions" where plaintiff alleged violations of invasion of privacy"); *B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *16 (C.D. Cal. Feb. 1, 2024) (finding the ECPA's one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws" including common law invasion of privacy); *I.T. v. ChoicePoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *22 (W.D. Wash. Aug. 29, 2025) (same as to HIPAA).

parties in violation of HIPAA and the other causes of action asserted in the Complaint.

Defendants' argument that their motivation was primarily financial does not save them. As the Ninth Circuit has held, "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). Finding otherwise would fully defeat the purpose of the crime-tort exception by excluding "'otherwise criminal or tortious act[s] solely because [they are] also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) (quoting *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *6 (N.D. Ill. Feb. 21, 2025)). Indeed, "[c]rimes and torts often have financial motivations, and the statutory text broadly covers '*any* criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *B.N. v. Or. Reprod. Med., LLC*, 2025 U.S. Dist. LEXIS 222638, at *11 (D. Or. Nov. 12, 2025) (quoting 18 U.S.C. § 2511(2)(d)) (emphasis in original).[8] Defendants' contrary position would necessarily imply, for example, that "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money." *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *10. With blackmail, "[o]f course, [making money] is often the end goal, so under Defendants' reading, "blackmail would rarely, if ever, violate the ECPA…. This cannot be the

[8] *See also Walgreen*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Riganian*, 2025 U.S. Dist. LEXIS 138122, at *29 ("Accordingly, the Court declines to adopt any 'bright-line rule insulating financial motives from the crime-tort exception'") (quoting *Costco*, 2024 U.S. Dist. LEXIS 207197, at *6); *Doe v. Tenet Healthcare*, 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025) ("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

case." *Id.* at *20. The Court should likewise reject Defendants' argument here.[9]

**ii. The Interception Occurred In-Transit.**

For a communication with a website to be "intercepted" without authorization, it "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). A plaintiff must allege that the defendant "read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Gray v. Luxottica of Am., Inc.*, 2024 U.S. Dist. LEXIS 243633, at *19 (C.D. Cal. Dec. 16, 2024) (collecting cases). On a motion to dismiss, a plaintiff "need not prove their theory of interception," but rather "must provide fair notice to [d]efendants of when they believe [the defendant] intercepts their communications." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).

Plaintiff alleges throughout the Complaint that Defendants' transmissions of Sensitive Health Information occur "contemporaneously" as Plaintiff navigates the Website. Compl. ¶¶ 55, 64, 67; *see also* ¶ 186 (noting "Defendants' simultaneous, unknown duplication, forwarding, and interception of Plaintiffs' and Class Members' Sensitive Health Information"). The Ninth Circuit has held that the "simultaneous, unknown duplication and communication of GET requests" by Tracking Tools, like Plaintiff alleges here, "do not exempt a defendant from liability under the party exception." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("*Facebook Tracking*"). Indeed, courts examining identical allegations to Plaintiff have concluded the same. *See Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *21-22 (C.D. Cal. July 19, 2024) (finding plaintiffs plausibly

[9] Additionally, whether Defendants had criminal or tortious intent when intercepting Plaintiff's communications is a factual issue that cannot be resolved at this stage. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("determination of [defendant]'s actual purpose for…using the Pixel Code requires a factual undertaking").

alleged that their communications were intercepted in transit where they alleged they were "replicated and sent in parallel"); *Gray*, 2024 U.S. Dist. LEXIS 243633, at *14-15 ("*Facebook Tracking* squarely controls" where pixels directed users' browsers to "contemporaneously send a separate message to Facebook's servers"). Thus, Plaintiff has alleged interception in-transit under controlling law.

**iii. Defendants Disclosed the Contents of Plaintiff's Communications Through the Website.**

Under the ECPA, "contents" is a broad term which includes "any information concerning the substance, purport, or meaning of that communication." *Lewis*, 2025 U.S. Dist. LEXIS 263675, at *34 (quoting 18 U.S.C. § 2510(8)). "[T]he term contents refers to the intended message conveyed by the communication, and does not include record information regard[ing] the characteristics of the message that is generated in the course of the communication." *Id*. at *35 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). Here, Plaintiff alleges that Defendants disclosed information that disclosed the fact that she booked an appointment through the Website and the reason for that appointment. These are precisely the contents of Plaintiff's communications with Defendants: that she visited Defendants' Website to book an appointment for a laser hair removal treatment with one of Defendants' clinics. Courts have repeatedly found that the use of tracking tools in analogous circumstances disclosed the contents of users' medical communications. *See, e.g., ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *22 (refusing to dismiss ECPA claim regarding appointment request form for medical provider); *Costco*, 2024 U.S. Dist. LEXIS 207197, at *23-23 (refusing to dismiss ECPA claim for tracking of prescription medication storefront); *Walgreen*, 733 F. Supp. 3d 876, 893 (same).

Defendants' attempt at opposing this well-settled law relies on a misreading of the Ninth Circuit's decision in *Zynga*. *See* Mot. at 7 (citing *Zynga*, 750 F.3d at 1098). In *Zynga*, the Ninth Circuit distinguished between Tracking Tool disclosures showing only "the webpage address … of a webpage a user is viewing on the internet"—

referred to by the Ninth Circuit as "record information"—and other Tracking Tool transmissions which are actionable under the ECPA because they evince the "contents" of the user's communication through the webpage. *Zynga*, 750 F.3d at 1106. Here, Plaintiff alleges not merely disclosure of the URLs that she visited but, as shown below, the fact that she clicked a specific button to make an appointment, selected between the specific laser hair removal options offered by SEV, and then actually completed her booking. *See* Compl. ¶¶ 64-66, Fig. 2. This specific event data is far different than the mere URL information considered in *Zynga*.

| | |
|---|---|
| pr1 | id77c9619e-fb38-456a-8fb0-3a191c9934e1~nmBrazilian (Medium)~caLaser Hair Removal~qt1~pr<br>3bb-9375-86a919494271~k3dimension4~v3popular |
| pr2 | idc5f28c8f-d4cf-4d6e-b751-5b5b431f36b2~nmFull Legs (Extra-Large)~caLaser Hair Removal~qt1~<br>0-43bb-9375-86a919494271~k3dimension4~v3popular |
| pr3 | id1b1ada6a-3681-4ae8-a366-317810f62556~nmUnderarms (Medium)~caLaser Hair Removal~qt1<br>0-43bb-9375-86a919494271~k3dimension4~v3popular |
| pr4 | idb85ba491-5bf8-4bf8-9f87-f61f32e24158~nmUpper Lip (Extra-Small)~caLaser Hair Removal~qt1<br>0-43bb-9375-86a919494271~k3dimension4~v3popular |

Defendants further argue that any "contents" must be "user-generated[.]" Mot. at 7:3 (quoting *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021)). Plaintiff alleges just that. Defendants' disclosures were initiated by Plaintiff's "user-generated" actions and show the specific nature of those action: accessing the website to make an appointment for laser hair removal, and then completing that booking. *Nguyen v. Abbott Labs., Inc.* is even less instructive. 2026 U.S. Dist. LEXIS 42082, at *11-13 (N.D. Ill. Mar. 2, 2026). In *Nguyen*, the court found that the plaintiffs (1) failed to allege that the actual contents of the form they completed on the defendant's website was disclosed, and (2) failed to show the disclosure of "*individually* identifiable" information. *Id*. Unlike the *Nguyen* plaintiffs, Plaintiff alleges disclosure of her specific treatment selections on the scheduling form, as well as the reason why her Sensitive Health Information is individually identifying: Google's 'cid' identifier. *See* Compl. ¶¶ 65-67.

### D. PLAINTIFF'S CIPA CLAIM IS WELL-PLED.

Defendants argue that Plaintiff's CIPA claim must be dismissed because Plaintiff fails to allege that Defendants intercepted the "contents" of her communications, or that her communications were intercepted while "in-transit." For the reasons below, both arguments are unavailing.

#### i. Defendants are both directly and derivatively liable for violating the CIPA.

1. <u>Direct Liability</u>

As an initial matter, Defendants are incorrect that Plaintiff cannot bring a direct liability claim against Defendants under CIPA. Mot. at fn. 2. "Courts perform the same analysis for both the [ECPA] and CIPA regarding the party exemption." *Facebook Tracking*, 956 F.3d at 607. "Under both the ECPA and CIPA, '[i]t shall not be unlawful … for a person … to intercept a[n] electronic communication where such person is a party to the communication,' so long as such interception is not 'for the purpose of committing any criminal or tortious act[.]'" *Walgreen.*, 733 F. Supp. 3d at 901 (citations omitted); *see also Marden v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 132292 at *4 (N.D. Cal. July 3, 2024) (where ECPA claim survives due to application of crime-tort exception, CIPA claim survives for the same reasons). Accordingly, the party exception does not apply to Plaintiff's CIPA claim for the reasons stated in § III(C), *supra*.

2. <u>Derivative Liability</u>

To assert a violation of the CIPA based on derivative liability, "[i]t is sufficient for a [p]laintiff to allege [a d]efendant[] intentionally procured [] Pixel or other tracking apps and installed it on [its] website…." *Danforth v. Placentia-Linda Hosp.*, 2023 Cal. Super. LEXIS 67193, *6 (Cal. Super. Ct. Aug. 31, 2023). Here, Plaintiff alleges that Defendants "intentionally configured the Tracking Tools installed on the Website to capture and transmit the Sensitive Health Information communicated through the Website to third parties, including Google." Compl. ¶ 63. Plaintiff also

alleges that Defendants "received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms" in exchange for disclosing Sensitive Health Information to Google, and that Google, in turn, aggregates such information into "advertising profiles" that it uses to "sell hyper-precise advertising services…." *Id.* ¶¶ 38, 77. These allegations are sufficient to establish that Defendants aided and abetted Google's unlawful interception and use of Plaintiff's and Class Members' Sensitive Health Information for their advertising enterprise. *See, e.g., M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *14-15 (N.D. Cal. Sept. 16, 2024) (allegations that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant's website] users' private medical information" sufficient to allege aiding and abetting under the CIPA); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *21-22 (N.D. Cal. Oct. 1, 2024) (same as to Facebook pixel).

**ii. Plaintiff has alleged that the "contents" of her communications were intercepted.**

"Courts have determined that the 'contents' of a communication under the ECPA and CIPA § 631(a) are the same." *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 866 fn. 9 (N.D. Cal. 2026) (quotations omitted). Therefore, Plaintiff has alleged that Defendants disclosed the "contents" of her communications for the same reasons as stated in § III(C)(iii), *supra*. *See also Gilligan v. Experian Data Corp.*, 2026 U.S. Dist. LEXIS 1907, at *7 (N.D. Cal. Jan. 6, 2026) ("'[F]ull-string URLs' that reflect not only the website visited, but also, for example, search queries or specific pages Plaintiffs viewed" constitute contents of communications); *Marden*, 2024 U.S. Dist. LEXIS 132292, at *10 ("[I]nformation about [] queries as to treatment for sensitive health issues, prescription orders, and medical appointments" are "substantive content.").

/ / /

#### iii. Plaintiff has alleged that the interceptions occurred "in transit."

"The 'in transit' element [under CIPA] has the same meaning under the ECPA." *Semien v. Pubmatic Inc.*, 2026 U.S. Dist. LEXIS 15196, at *21 (N.D. Cal. Jan. 27, 2026). Accordingly, Plaintiff has met this requirement for the same reasons as stated in § III(C)(ii), *supra*.

### E. PLAINTIFF'S INVASION OF PRIVACY CLAIMS ARE WELL-PLED.

To state a claim for intrusion upon seclusion under California law, a plaintiff must allege that the defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and that the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Plaintiff has sufficiently pled these elements.

#### i. Defendants' use of surreptitious Tracking Tools constitutes an "intrusion."

Defendants assert that an intrusion upon seclusion claim cannot exist where a plaintiff voluntarily shares the information at issue. Mot. at 16:3-16. Defendants are incorrect.

***First***, in similar website-tracking cases, courts have determined that "the voluntariness of [a] [p]laintiffs' actions is immaterial to the intrusion upon seclusion claim." *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *30 (D. Ariz. May 10, 2024). For example, in *Lau v. Gen. Digit. Inc.*, the court found that although the plaintiffs provided the defendant with access to their internet browsing data by downloading its software program, the defendant could not "escape liability [for invasion of privacy] by arguing that there is no 'intrusion'" because the plaintiffs "did not expect for [the program] to collect and store extensive dossiers of their browsing data that could later be sold to third-party advertisers." 2024 U.S. Dist. LEXIS 81310, at *8 (N.D. Cal. Apr. 3, 2024). Likewise, in *Opperman v. Path, Inc.*, the plaintiffs downloaded the defendant's mobile phone application and granted it access to their

cellular address book. 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014). The defendant subsequently collected information from plaintiffs' address books and used it for commercial purposes without plaintiffs' knowledge. *Id.* Accordingly, the court found that plaintiffs had pled a claim for intrusion upon seclusion because "[p]laintiffs['] alleg[ations] that their consent was obtained by fraud, and that their consent was therefore invalid" supported a finding that plaintiffs had "a reasonable expectation of privacy with respect to the address books copied by each app at issue." *Id*. In short, Plaintiff alleges that she provided her Sensitive Health Information to Defendants to schedule an appointment, ***not*** so that Defendants could transmit her Information to Google for advertising purposes through invisible Tracking Tools on the Website.[10]

***Second***, Ninth Circuit courts have routinely found that allegations like Plaintiff's that a defendant "permitted unauthorized third parties to intrude on [the] [p]laintiff's affairs by purposefully embedding tracking tools on [its website] facilitating such intrusion" sufficient to sustain an intrusion claim. *M.H. v. Done Glob. Inc.*, 2025 U.S. Dist. LEXIS 38456, at *6 (N.D. Cal. Feb. 26, 2025) (quotations omitted); *see also D'Antonio v. Smith & Wesson Inc.*, 2026 U.S. Dist. LEXIS 32257, at *6-7 (N.D. Cal. Feb. 17, 2026) (finding allegations that the defendant "voluntarily 'chose,' 'caused,' and 'allowed' third-party tracking tools to integrate into its website…sufficient to plead that [the defendant] facilitated third parties' intrusions into [the plaintiffs'] privacy and seclusion."); *Doe v. Call-On Doc, Inc.*, 2025 U.S. Dist. LEXIS 113269, at 48-49 (S.D. Cal. June 13, 2025) (finding plaintiff plausibly alleged intrusion upon seclusion because "[w]hile [p]laintiff voluntarily shared her personal and medical information with [d]efendant, she alleges [d]efendant

[10] The authority relied upon by Defendants are inapposite. In *Schulman v. Group W Productions, Inc.*, for example, the plaintiffs were filmed by journalists at the scene of an accident. *See* 18 Cal. 4th at 232. While being captured at the accident scene was undoubtedly public, the California Supreme Court went on to hold that one plaintiff's "conversations conveying medical information" that "defendants may have listened in on" implicated a reasonable expectation of privacy to sustain an intrusion upon seclusion claim. *Id.* at 233-34. *Schulman*, therefore, supports Plaintiff's position, not Defendant's.

intentionally disclosed her medical information with Google and TikTok by intercepting it").

Thus, Plaintiff has pled an intrusion under governing law.

**ii. Defendants' unauthorized disclosures of Plaintiff's Sensitive Health Information are "highly offensive."**

"Personal medical information is understood to be among the most sensitive information that could be collected about a person[.]" *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *see also Desert Care*, 2024 U.S. Dist. LEXIS 18970, at *25 ("Patients' right to privacy in their medical records is well-settled."). Accordingly, district courts routinely refuse to dismiss invasion of privacy claims stemming from the unauthorized disclosure of medical information.[11] Defendants seemingly understand this principle as their entire argument to the contrary rests upon the erroneous assertion that Plaintiff's Sensitive Health Information is not medical information. *See* Mot. at 16:24-17:16. Further, the cases Defendants cite in support concerned the defendants' collection of user data for ***the defendants' own use***. *See Gonzalez v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092-93 (N.D. Cal. 2018) ("[T]here is no allegation as to what Uber did, if anything, with [plaintiff's name and address]."); *Folgestrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (The "supposed invasion of privacy essentially consisted of [defendant] obtaining plaintiff's address…and using it to mail him coupons and other advertisements."). Here, Plaintiff alleges the disclosure of her Sensitive Health Information for **Google's use** in its mass advertising network. *See* Compl. ¶¶ 6, 36, 38, 71.

"Moreover, this issue is generally not suitable for determination on the pleadings." *Done Glob.*, 2025 U.S. Dist. LEXIS 38456, at *6 (citing *Facebook*

[11] *See Doe v. N. Cal. Fertility Med. Ctr.*, 2024 U.S. Dist. LEXIS 12175, at *16 (E.D. Cal. Jan. 22, 2024) (differentiating medical information from other sensitive information like Social Security numbers and collecting cases); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022) (finding that the defendant could not identify a single case wherein a court found that the disclosure of protected health information was not highly offensive).

*Tracking*, 956 F.3d at 606 ("whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.")). "Whether a particular invasion or intrusion was highly offensive presents a mixed question of law and fact and requires considering the degree and setting of the intrusion and the intruder's motives and objectives." *D'Antonio*, 2026 U.S. Dist. LEXIS 32257, at *7-8 (quotations and citations omitted). "As a result, dismissal under Rule 12(b)(6) is appropriate only if the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests." *Id*. (quotations omitted). Dismissal of Plaintiff's invasion of privacy claim is thus inappropriate.

### F. PLAINTIFF'S NEGLIGENCE CLAIM IS WELL-PLED.

To state a claim for negligence under California law, a plaintiff must establish: (1) the existence of a duty of care, (2) breach of that duty, (3) causation, and (4) damages. *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018). Plaintiff sufficiently alleges that: (1) Defendants have a duty to protect the Sensitive Health Information they collect through their Website, Compl. ¶¶ 112, 145; (2) Defendants breached their duty by employing the Tracking Tools to collect and disseminate Plaintiff's Sensitive Health Information to third parties without Plaintiff's consent, *id*. ¶¶ 5, 11, 63-68; and (3) Defendants' breach caused Plaintiff's Sensitive Health Information to diminish in value, caused Plaintiff to lose the benefit of their bargain with Defendants, and caused an invasion of Plaintiff's privacy, *id*. ¶ 13.

#### i. Defendants had a Duty to Protect Plaintiff's Sensitive Health Information.

"There is a 'statutory presumption of duty' in California." *In re Meta Pixel Tax Filing Cases*, 747 F. Supp. 3d 987, 1016 (N.D. Cal. 2024) (quoting *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 144 (2018)). The general rule, codified in Section 1714 of the California Civil Code, is that "'each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances.'" *Id.* (quoting *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771

(2011). As discussed in greater detail in § III(B)(ii), *supra*, Defendants had obligations under HIPAA to protect the privacy of protected health information. Moreover, website operators also have a general duty to protect Sensitive Health Information they collect from website users. *See, e.g., Facebook Profile*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (holding that a website operator has "a responsibility to handle its users' Sensitive Health Information with care").

**ii. Defendants' Breach of Their Duty Caused Plaintiff Cognizable Injuries.**

Plaintiff adequately alleges that she suffered numerous injuries as a result of Defendants' surreptitious use of Tracking Tools to disclose her Sensitive Health Information to Google including (i) benefit of the bargain damages, (ii) diminution of value damages, and (iii) invasion of privacy. Compl. ¶ 13.

1. <u>Loss of Benefit of the Bargain</u>

"A significant body of case law in the Ninth Circuit supports a benefit-of-the-bargain theory based on an implied contract that a defendant will safeguard PII when it is provided by a customer in exchange for goods and services." *Smith v. Findlay Auto., Inc.*, 2025 U.S. Dist. LEXIS 60934, at *12 (D. Nev. Mar. 31, 2025) (internal quotation marks and citation omitted). Plaintiff alleges the existence of such an implied contract under which they expected reasonable data security. *See* § III(G), *infra*. Plaintiff further alleges that she would not have used the Website, or would have paid substantially less for those services, had she known that her Sensitive Health Information would be disclosed. Compl. ¶ 158. These allegations suffice to plead that Plaintiff lost the benefit of her bargain with Defendants. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 992, 995 (N.D. Cal. 2016) (adopting "loss of benefit of the bargain" theory of "actual harm" for plaintiffs who alleged they had contracted for "reasonable and adequate security measures" that Anthem failed to deliver, causing plaintiffs to overpay for their health insurance); *Svenson v. Google Inc.*, 2015 U.S. Dist. LEXIS 43902, at *14-15 (N.D. Cal. Apr. 1, 2015) (same where

plaintiffs alleged they paid Google for services and they would not have purchased the services had they known that they'd receive insufficient data protection).

2. Diminution of Value

"'Diminution in value of personal information can be a viable theory of damages.'" *Archambault v. Riverside Resort & Casino, Inc.*, 2025 U.S. Dist. LEXIS 176564, at *16 (quoting *Pruchnicki v. Envision Healthcare Corp.*, 430 F. Supp. 3d 1226, 1234 (D. Nev. 2020), *aff'd*, 845 Fed. App'x 613 (9th Cir. 2021)). Plaintiff alleges that her Sensitive Health Information has financial value and that there exists a market for her Sensitive Health Information. Compl. ¶¶ 78-83. Plaintiff alleges that Defendants' unauthorized disclosure of her Sensitive Health Information resulted in the diminution of value of her Information. *Id.* ¶ 83. This is sufficient to allege cognizable harm. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594, at *131 (N.D. Cal. May 27, 2016) (diminution of value requires "that there was either an economic market for their PII *or* that it would be harder to sell their own PII, not both") (emphasis in original).

3. Invasion of Privacy

Lastly, Plaintiff alleges that Defendants' breach of duty inflicted a privacy injury. Compl. ¶ 13. "[I]n the context of negligence damages," invasion of privacy is a cognizable harm. *Archambault*, 2025 U.S. Dist. LEXIS 176564, at *18; *see also Desert Care*, 2024 U.S. Dist. LEXIS 18970, at *28 (finding plaintiffs' allegations that certain categories of medical information were "improperly accessed, disclosed, and otherwise compromised" were sufficient to establish harm); *Facebook Profile*, 402 F. Supp. 3d at 799 (finding plaintiffs "alleged present and non-speculative privacy injuries sufficient to state negligence claim predicated on defendant's alleged collection and dissemination of user information to third parties").

### G. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM IS WELL-PLED.

The elements of a breach of implied contract claim are primarily the same as

those for breach of an express contract—mutual assent, consideration, legal capacity, and lawful subject matter—except that the terms of an express contract are stated in words while those of an implied contract are manifested by conduct. *See Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sept. 14, 2016). By booking appointments through the Website, Plaintiff exchanged her Sensitive Health Information with the understanding that Defendants would safeguard the information and not disclose it without consent.

The mandatory receipt of Plaintiff's Sensitive Health Information when she booked appointments on the Website suffices as the basis of Defendants' implied promise to protect Plaintiff's Sensitive Health Information. Indeed, "'it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of … sensitive personal information would not imply the recipient's assent to protect [the] information sufficiently.'" *Plaintiffs v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1195 (D. Nev. 2022) (*quoting Seagate*, 2016 U.S. Dist. LEXIS 187428, at *29). Numerous courts have found allegations similar to Plaintiff's to adequately allege the existence of an implied contract. *See, e.g., Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 U.S. Dist. LEXIS 206552, at *13 (C.D. Cal. July 29, 2022) ("Other courts in this district have held, and the Court agrees, that the mandatory receipt of PII implies the recipient's assent to protect the PII sufficiently."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143-44 (C.D. Cal. Oct. 18, 2021) (implied contract found where "[p]laintiffs allege[d] that they gave their [PII] to [d]efendants for purposes of obtaining genetic testing, with the understanding that [d]efendants would take adequate measures to protect the information"). And as noted in Section III(F)(ii), *supra*, Plaintiff adequately alleges damages.

### H. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS WELL-PLED.

Plaintiff's unjust enrichment claim is pled in the alternative to her breach of implied contract claim. Compl. ¶ 161. Contrary to Defendants' assertion, the Ninth Circuit's decision in *Astiana v. Hain Celestian Grp., Inc.* does not bar Plaintiff's unjust

enrichment claim, but rather, instructs that "a court may construe the cause of action as a quasi-contract claim seeking restitution." 783 F.3d 753, 762 (9th Cir. 2015) (quotations and citation omitted). Accordingly, courts in this District have rejected the argument that an "unjust enrichment claim must be dismissed merely because it is not a standalone claim under California law." *Walgreen*, 733 F. Supp. 3d at 899.

Here, Plaintiff alleges that her data has financial value, that Defendants received a financial benefit from the disclosure of Plaintiff's data without her consent, and that Defendants used the Tracking Tools to enhance advertising services and utilize cost-effective marketing. Compl. ¶¶ 77-81, 162. These allegations suffice to plead unjust enrichment at the motion to dismiss stage. *See Walgreen*, 733 F. Supp. 3d at 900; *Lewis*, 2025 U.S. Dist. LEXIS 263675, at *44 (finding that the plaintiffs "plausibly alleged unjust enrichment because [the d]efendant surreptitiously retained and profited off [their] data.").

Additionally, while Defendants contend Plaintiff has not established cognizable damages, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Tracking*, 956 F.3d at 599. Here, Plaintiff has "adequately pleaded an entitlement to [Defendants'] profits from [the disclosure of her] personal data[.]" *Id.* at 600. Therefore, Defendants' Motion must be denied as to Plaintiff's unjust enrichment claim.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff asks that Defendants' Motion be DENIED.

Dated: June 5, 2026

Respectfully submitted,

*<u>/s/ Alyssa Tolentino</u>*
Alyssa Tolentino (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
E: atolentino@sirillp.com

Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Daniel Srourian, Esq. SBN 285678
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
Fax: (213) 471-4160
E: daniel@slfla.com

*Attorneys for Plaintiffs and the Putative Class*

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Plaintiffs hereby certifies that this brief contains 6,953 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 5, 2026

Respectfully submitted,

*<u>/s/ Alyssa Tolentino</u>*
Alyssa Tolentino (*pro hac vice*)

**CERTIFICATE OF SERVICE**

The undersigned counsel of record for Plaintiffs hereby certifies that on June 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

Dated: June 5, 2026

Respectfully submitted,

*/s/ Alyssa Tolentino*
Alyssa Tolentino (*pro hac vice*)