JAMES H. MOON (State Bar No. 268215)
jamesmoon@dwt.com
SANCHO ACCORSI (State Bar No. 329413)
sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendants*
*Petrosian Esthetic Enterprises, LLC and*
*SEV Laser Aesthetics Chicago, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE FIRLEJ and HANIA ROUHANI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PETROSIAN ESTHETIC ENTERPRISES, LLC, and SEV LASER AESTHETICS CHICAGO, LLC,<br><br>Defendants. | Case No. 2:26-cv-01030<br><br>**DEFENDANTS PETROSIAN ESTHETIC ENTERPRISES, LLC AND SEV LASER AESTHETICS CHICAGO, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Assigned to the Hon. Michelle Williams Court, Courtroom 6A<br><br>Date: June 26, 2026<br>Time: 1:30 p.m.<br><br>Action Filed: February 2, 2026 |

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Ms. Rouhani's Claims Fail Because She Provided Consent. .......... 2

B. Ms. Rouhani's CIPA Claim Fails. .......... 3

1. No Contents. .......... 4

2. No Reading In Transit. .......... 6

C. Ms. Rouhani's ECPA Claim Fails. .......... 6

1. No Illegal Interception. .......... 7

2. No Contents. .......... 8

D. Ms. Rouhani's Common Law Claims Fail. .......... 8

1. Ms. Rouhani Does Not Allege Disclosure of Sensitive Information, Foreclosing Her Common Law Claims. .......... 8

2. No Invasion of Privacy. .......... 9

3. No Negligence. .......... 10

4. No Breach of Implied Contract. .......... 12

5. No Unjust Enrichment. .......... 12

III. CONCLUSION .......... 12




DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Archambault v. Riverside Resort & Casino, Inc.*,
2025 WL 2614044 (D. Nev. Sept. 9, 2025) ........ 11

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 12

*Borden v. United States*,
593 U.S. 420 (2021) ........ 8

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 2

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 2

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 3, 12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 3

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 7

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 5

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 5

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ........ 6

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 2





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....10

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)....10

*Hubbard v. Google LLC ("Hubbard I")*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....10

*Hubbard v. Google LLC ("Hubbard II")*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025)....3

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)....12

*In re Anthem, Inc. Data Breach Litig.*,
2016 U.S. Dist. LEXIS 70594 (N.D. Cal. May 27, 2016)....11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....5

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011)....7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....4, 5

*I.T. v. ChoicePoint LLC*,
2025 WL 2495079 (W.D. Wash. Aug. 29, 2025)....6

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
2022 WL 16894503 (C.D. Cal. July 29, 2022)....12

*Lau v. Gen Digit. Inc. ("Lau I")*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023)....11

*Lau v. Gen Digit. Inc. ("Lau II")*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024)....10

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)....1, 6

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)....6



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 5

*McCulley v. Banner Health*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .......... 10

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 7, 9

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) .......... 10

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 7

*Ramos v. Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. July 29, 2025) .......... 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 5

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 7

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
97 Cal. App. 5th 192 (2023) .......... 12

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 2

*Smallman v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) .......... 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 8

*Sussman v. Am. Broad. Co.*,
186 F.3d 1200 (9th Cir. 1999) .......... 8

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 3



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024)....................6

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................5

**STATUTES**

18 U.S.C.
§ 2511(1)(d)....................8
§ 2511(2)(d)....................4

Cal. Penal Code
§ 631 ....................*passim*
§ 631(a)....................1, 3, 5, 6



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Ms. Rouhani says Google's advertising and analytics tools—allegedly active on more than 74% of all web traffic, Compl. ¶ 39—are criminal wiretaps under California and federal law. But no law criminalizes these "ubiquitous" tools, *id.*, and indeed Ms. Rouhani's claims under the California Invasion of Privacy Act ("CIPA") and Electronic Communications Privacy Act ("ECPA") run headlong into on-point privacy laws that *permit* the use of these tools. *See* Mot. at 5–6. Ms. Rouhani's Opposition makes no effort to grapple with the sweeping implications of her theory—a theory which applies equally regardless of the nature of the data allegedly "intercepted." This global flaw in her Complaint aside, Ms. Rouhani fails to plead the elements of any of her claims.

As an initial matter, Ms. Rouhani consented to Google's use of the Google Code she challenges here because she is a Google user. She ineffectually nit-picks SEV's authorities for this common-sense argument, but she does not actually dispute that she assented to Google's terms. This is enough to dismiss.

Her claims also fail for additional claim-specific reasons.

*First*, Ms. Rouhani does not state a claim under CIPA § 631 because she does not allege Google "read" the "contents" of any communications "in transit." Cal. Penal Code § 631(a). Her Opposition fails to deal with these arguments, and ultimately ignores that this Court has already correctly concluded that merely "collect[ing] [p]laintiffs' information[] … says nothing regarding [d]efendant's attempt 'to read … or to learn the contents or meaning' of [p]laintiffs' communications." *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) (Court, J.) (citation omitted).

*Second*, the ECPA claim fails because SEV participated in, and consented to Google's involvement in, any "communications." Ms. Rouhani fails to invoke the narrow exception to this one-party consent rule.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Third*, Ms. Rouhani's common law claims fail for various reasons, the most prominent being that browsing for cosmetic treatments and booking an unspecified treatment is not protected health information.

## II. ARGUMENT

### A. Ms. Rouhani's Claims Fail Because She Provided Consent.

Ms. Rouhani fails to plead lack of consent because she alleges she is a Google user, Compl. ¶ 25, and courts recognize that Google users assent to Google's cross-site tracking by agreeing to Google's terms.[1] *See* Mot. at 4–5.

Ms. Rouhani says "consent is 'an affirmative defense,'" Opp. at 3, but actually lack of consent is an element of her wiretapping and privacy claims—an element that she must plausibly allege. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *2, *5 (N.D. Cal. July 28, 2021) ("[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim"); Mot. at 4 (collecting cases). She only pleads conclusions and does not address the consent users provide Google. *Calhoun v. Google, LLC*, which Ms. Rouhani cites, Opp. at 3, assumed, without directly addressing, that the defendant had to establish consent on the CIPA and non-CIPA claims there. 113 F.4th 1141, 1147 (9th Cir. 2024).

Ms. Rouhani argues that SEV did not provide a copy of the Google terms or explain how she assented to them, Opp. at 3, but she does not actually dispute that she assented to Google's terms, and she does not try to plead around the simple implications of her allegations. SEV cites cases holding that Google users—which Ms. Rouhani says she is, Compl. ¶ 25—necessarily assent to terms that disclose Google's cross-site tracking of its users. *See* Mot. at 4–5 (citing *Hammerling v.*

[1] Google's Privacy Policy, which is judicially noticeable, *see Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (taking judicial notice of Google Privacy Policy available online), explains that Google collects information about "[a]ctivity on third-party sites and apps that use [its] services." Google, *Google Privacy Policy*, at "Categories of information we collect," https://policies.google.com/privacy?hl=en (last visited June 11, 2026).



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024), and *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024)). Ms. Rouhani points out that Google was the defendant in those cases, Opp. at 2–3, but their findings apply equally to all Google users. Ms. Rouhani also says the court in *Hubbard v. Google LLC ("Hubbard II")* declined to consider Google's terms even with Google as a defendant, Opp. at 3, but she omits the distinction: the plaintiffs there "d[id] not allege that they created YouTube or Google accounts through which they presumably would have, upon creation, agreed to comply with Google's terms." 2025 WL 82211, at *5 n.7 (N.D. Cal. Jan. 13, 2025).

Finally, Ms. Rouhani adds that "Google does 'not provide … [a] list of every webpage on which its Tracking Tools are installed,'" Opp. at 3, but that is unnecessary because, as she alleges, Google's terms disclose widespread use of the Google Code on third-party websites, Compl. ¶ 35, which means she consented to its tracking wherever it occurred.

**B. Ms. Rouhani's CIPA Claim Fails.**

Regardless of consent, Ms. Rouhani does not state a CIPA claim. For starters, Ms. Rouhani's CIPA theory runs headlong into the California Consumer Privacy Act's ("CCPA") opt-out regime. *See* Mot. at 5–6. Yet her Opposition makes no effort whatsoever to explain why her claim under a 1967 criminal statute should supplant the 2018 CCPA, and she gives the Court no reason to "assume" that "the Legislature really intend[ed] to subject companies like [SEV] to criminal liability for using third-party software to track website activity." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025). In any event, Ms. Rouhani agrees she seeks to hold SEV derivatively liable for Google's alleged violation of § 631(a)'s second clause, Opp. at 12–13, but she fails to defend that claim.[2]

[2] Ms. Rouhani says SEV can be directly liable for violating § 631, Opp. at 12, but the law is settled: § 631 "appl[ies] only to eavesdropping by a third party and not … a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811

**1. No Contents.**

Ms. Rouhani does not allege a communication's "contents." *See* Mot. at 6–8.

*First*, she concedes non-user-generated record information, like the data she says Google used to link her communications with her Google account, is not contents. Opp. at 10–11; *see* Mot. at 7.

*Second*, she concedes that routine browsing data, like the names of services viewed, are not contents. *See* Mot. at 7–8. Indeed, this information is not user-generated in any sense—SEV generated it in response to Ms. Rouhani's clicking a link. Nor is that click the "substance" or "meaning" of a message, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014), any more than stopping to view products on display in a store aisle is the "substance" or "meaning" of a communication. Ms. Rouhani does not distinguish SEV's cases. *See* Mot. at 7–8.

*Third*, Ms. Rouhani concedes she did not enter any information into a form or conduct any searches on sevlaser.com. *See id.* at 8. And the fact that she scheduled an appointment is not contents. *See id.* Nothing in Figure 4—which Ms. Rouhani says shows the information transmitted to Google when users book appointments—is "user-generated." *See id.* Same for Figure 3. *See id.* The only data in these Figures even plausibly indicative of booking an appointment are URLs (the "dl" and "dr" entries) and the tag labeled "sevlaser – Online Booking – Services" (the "dt" entry), Compl. ¶ 65, Figs. 3, 4—neither of which Ms. Rouhani communicated to SEV. These may *reflect* certain clicks on the website, but SEV generated them, not Ms. Rouhani. *See In re Zynga*, 750 F.3d at 1107 ("information … automatically generated," including URLs, not "contents"). CIPA has generally drawn "a critical distinction between eavesdropping upon or recording a conversation and later

---

(1979). Ms. Rouhani reasons that the test for determining whether a defendant is a "party" to a communication is the same under CIPA and ECPA, Opp. at 12, but that does not mean ECPA's crime-tort exception, *see* 18 U.S.C. § 2511(2)(d), applies to CIPA. Section 631 contains no similar exception.





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

disseminating its contents." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002). This "secondhand repetition," or paraphrasing, is not actionable. *Id.*

Ms. Rouhani says these data are contents because they "were initiated by Plaintiff's 'user-generated' actions," *i.e.*, "accessing the website to make an appointment," Opp. at 11, but that they were "initiated" in response to her actions does not mean they are themselves the contents of any communication. She insists a click "that disclosed the fact that she booked an appointment … and the reason for that appointment" constitutes contents, Opp. at 10, but, again, a click is an action—not a communication susceptible to being "read." Cal. Penal Code § 631(a). That is why "keystrokes, mouse clicks, [and] pages viewed" are not contents of communications. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021); *see Ramos v. Gap, Inc.*, 2025 WL 2144837, at *4 (N.D. Cal. July 29, 2025) (rejecting theory, like Ms. Rouhani's, "[u]nder [which] … any 'click' on a URL would be a communication that the user is interested in the information linked in the URL"). Even the Ninth Circuit's most plaintiff-friendly rulings distinguish between disclosures that "reveal[] only that a … user ha[s] clicked on a link" versus "search terms inputted" by the user. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). It is "*[t]hese terms* and the resulting URLs" that can constitute actionable contents of communications. *Id.* (emphasis added).

Ms. Rouhani's cases do not support her. *In re Zynga* did not say that disclosures "evinc[ing] the 'contents'" of a communication themselves constituted contents, *see* Opp. at 11; rather, it left open the possibility that a URL actually *containing* "search terms the user had communicated to Google" could disclose contents. 750 F.3d at 1108. Ms. Rouhani's other cases, *see* Opp. at 10, 13, involved *bona fide* user-generated content, such as searches, *see R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885 (C.D. Cal. 2024); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *4 (N.D. Cal. July 3, 2024); *Castillo v. Costco Wholesale Corp.*, 2024





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

WL 4785136, at *4 (W.D. Wash. Nov. 14, 2024), or survey results. *See I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *7 (W.D. Wash. Aug. 29, 2025).

**2. No Reading In Transit.**

The § 631 claim also fails because, though Ms. Rouhani alleges that Google "intercepted" communications "in real time," Compl. ¶¶ 202, 205, that does not mean Google tried to "understand[] the substantive meaning of the message," *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024), let alone in real time. *See* Mot. at 8–10 (collecting cases).

Ms. Rouhani basically ignores this argument, addressing none of SEV's cases. *See* Opp. at 9–10. She says "simultaneous … communication of GET requests" to a third party does not qualify *the third party* for "the party exception," Opp. at 9, but that is not the same as alleging in-transit reading. And to the extent Ms. Rouhani's cases conflate these inquiries, *see* Opp. at 9–10, they underappreciate the "reading" "while … in transit" requirement. Cal. Penal Code § 631(a). Reading in transit matters because CIPA distinguishes between "what the third party does *during* the conversation and … what [it] … does with the recorded transcripts *after*," *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1108 (C.D. Cal. 2023) (emphasis in original), and the Ninth Circuit has interpreted § 631 as requiring more than "that [a third party] *could* read messages"—*access* to messages is not the same as reading them. *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025). Finally, Ms. Rouhani says she does not have to "prove … interception" at the pleading stage, Opp. at 9 (quotation omitted), but she has not alleged plausible, as opposed to merely possible, reading in transit. As in *Lewis*: that "[d]efendant collects [p]laintiffs' information[] … says nothing regarding [d]efendant's attempt 'to read …'" any communication. 2025 WL 3687546, at *12.

**C. Ms. Rouhani's ECPA Claim Fails.**

Ms. Rouhani's ECPA claim fails because she does not allege an illegal interception or any contents of communications.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

**1. No Illegal Interception.**

Ms. Rouhani concedes that ECPA does not apply if any party to a communication consents to the interception or recording, as SEV did. *See* Mot. at 10. She fails to plead the narrow crime-tort exception to this one-party consent rule.

***Separate Act.*** First, Ms. Rouhani does not allege that SEV undertook any tortious act separate and apart from the alleged interception itself. *See* Mot. at 11–12. Ms. Rouhani does not address any of SEV's cited authority, including binding Ninth Circuit case law describing her logic as "circular," *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022), and directly on-point district court cases dismissing on this basis. *See* Mot. at 11 (citing *In re Facebook Priv. Litig.*, *Rodriguez v. Google LLC*, and *Nienaber v. Overlake Hosp. Med. Ctr.*).

Instead, Ms. Rouhani recasts her theory. She says "Defendants intercepted her Sensitive Health Information with the purpose of disclosing it to unauthorized third parties," Opp. at 7–9, but her theory is actually that SEV "allowed … *Google* to intercept" her communications. Compl. ¶ 71 (emphasis added); *see id.* ¶¶ 201–202, 204–205 (same theory). SEV's alleged use of the Google Code therefore was both the interception *and* the disclosure, *see* Mot. at 11–12 (citing cases)—the disclosure was not a "further impropriety independent … from [the] interception." Opp. at 7 (emphasis & quotation omitted). Ms. Rouhani again ignores the cases SEV cites, and her authorities, *see* Opp. at 7 & n.7, miss that "the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024). Put another way, because the alleged act of intercepting and disclosing was the same, the purpose of both the alleged interception and disclosure was also the same. *See Planned Parenthood*, 51 F.4th at 1136.

***Primary Motivation.*** Second, Ms. Rouhani does not allege that SEV's primary motivation was tortious or criminal; rather, it was to improve marketing.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*See, e.g.*, Compl. ¶¶ 76–77; Mot. at 12–13 (citing cases). Ms. Rouhani ignores SEV's authorities, instead pressing a policy argument: inquiring into a defendant's primary motivation would "exclud[e] 'otherwise criminal or tortious act[s] solely because [they are] also motivated by financial gain.'" Opp. at 8 (citation omitted). But while SEV allegedly collected user information for the lawful purpose of marketing, which Ms. Rouhani says *happened* to invade her privacy, a bank robber (*see id.*) does not *happen* to commit robbery—he holds up a bank with the *purpose* of robbing it. That is precisely the distinction the crime-tort exception draws: "whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (quotation omitted); *see* 18 U.S.C. § 2511(1)(d). And it is precisely the distinction Ms. Rouhani elides: "[a] person acts purposefully when he 'consciously desires' a particular result," *Borden v. United States*, 593 U.S. 420, 426 (2021) (cleaned up), but Ms. Rouhani does not allege SEV "consciously desire[d]" to invade her privacy. *Id.* Her cases, Opp. at 12–14, are unpersuasive for these reasons.

**2. No Contents.**

The parties agree "contents" are the same under ECPA and § 631. Opp. at 13.

**D. Ms. Rouhani's Common Law Claims Fail.**

Ms. Rouhani's common law claims all fail because Google did not receive any sensitive health information, as well as for reasons specific to each claim.

**1. Ms. Rouhani Does Not Allege Disclosure of Sensitive Information, Foreclosing Her Common Law Claims.**

Because Ms. Rouhani alleges only unauthenticated web browsing (she does not allege that she signed in to any secure part of SEV's website), she must allege data that plausibly relates to the '"physical or mental health or condition of an individual."' Mot. at 14 (quoting *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)). But neither the





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

alleged disclosure of (1) the cosmetic services that users viewed nor (2) that users booked an appointment for an unspecified treatment meet that bar. *See id.*

*First*, browsing for cosmetic treatments—even laser hair removal—does not relate to a health condition and, even if it did, unauthenticated browsing does not relate to a user's health condition or provision of healthcare *to that individual*. *See id.* at 14–15. Ms. Rouhani argues that, because laser hair removal is supervised by a medical professional, any information related to it is PHI. Opp. at 4–5. But this is still just browsing activity on a public website, which is not enough. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024).

*Second*, scheduling an appointment for an unspecified service says nothing about a user's specific procedure. *See* Mot. at 15. Ms. Rouhani responds that any procedure that requires physician oversight is a medical procedure, Opp. at 6, but misses that booking an unspecified procedure still does not reveal anything about the individual's health. Ms. Rouhani says that her browsing of laser hair removal appointments and booking of an appointment "does not test Google's powers of deduction," Opp. at 2, but Ms. Rouhani does not allege that she browsed for laser hair appointments before booking one, nor that she did *not* browse for other services before booking an appointment. *See* Compl. ¶¶ 21–26.

*Third*, and relatedly, Ms. Rouhani cannot rely on generalized allegations about what *could* have happened on the website. *See* Mot. at 15. Ms. Rouhani does not distinguish SEV's authorities. Instead, she argues that Figures in the Complaint show how the Google Code "operate[s] with regard to every user," Opp. at 4, but showing what would have happened had Ms. Rouhani browsed for certain products is different than alleging she browsed for those products.

### 2. No Invasion of Privacy.

Ms. Rouhani's invasion of privacy claim fails because she voluntarily provided her information to SEV, and because nothing SEV did was "highly offensive." *See* Mot. at 15–16. Her inapposite case law does not save this claim.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

***No Intrusion.*** Ms. Rouhani voluntarily provided her information to SEV so there was no "intrusion." *See* Mot. at 16. Ms. Rouhani argues that voluntary disclosure can still support a privacy claim, Opp. at 14–15, but her cases are distinguishable because they involved affirmative misrepresentations that induced the "voluntary" disclosures. *See Lau v. Gen Digit. Inc. ("Lau II")*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (browser extension marketed to block third-party tracking instead collected and sold data it promised to keep private), *aff'd sub nom.*, 2025 WL 3002610 (9th Cir. Oct. 27, 2025); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014) (app developer "scan[ned] [users'] address books … then upload[ed] the address books to the app developer"). Ms. Rouhani, though, does not allege she relied on any representation by SEV. In fact, SEV discloses that it may transmit user data to third parties. *See* Mot. at 2. Finally, *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024), is against the weight of authority. *See* Mot. at 16.

***Not Highly Offensive.*** Even if there were an intrusion, it was not highly offensive. *See* Mot. at 16–18. Ms. Rouhani does not dispute that any disclosure of non-PHI is not an "egregious breach of the social norms" sufficient to state a claim. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (quotation omitted). And she does not address SEV's authorities holding that disclosure of data more sensitive than webpage views or clicks was not highly offensive. *See* Mot. at 17.

Instead, Ms. Rouhani argues that any intrusion was highly offensive because SEV disclosed her PHI, Opp. at 16, but, as discussed, it did not. And she hedges, arguing the highly offensive inquiry is premature on a motion to dismiss, Opp. at 16–17, but this is incorrect. *See Hubbard v. Google LLC ("Hubbard I")*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (dismissing on this issue); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (same).

**3. No Negligence.**

Ms. Rouhani's negligence claim fails. *See* Mot. at 18–20.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

***No Duty or Breach.*** SEV did not breach any duty to safeguard sensitive health information because Ms. Rouhani does not allege any sensitive health information. *See* Mot. at 18. Ms. Rouhani concedes her only basis for a negligence claim is the alleged disclosure of sensitive health information. *See* Opp. at 17–18.

***No Damages.*** Each of Ms. Rouhani's damages theories is insufficient to state a negligence claim. Mot. at 18–20. Ms. Rouhani concedes that emotional distress and risk of future harm are not cognizable negligence damages. *See id.* at 18–19.

As to her benefit-of-the-bargain theory, *see id.* at 19, Ms. Rouhani admits it depends on her implied contract claim. *See* Opp. at 18. Indeed, she does not allege SEV breached any express commitments, yet "[she] must show that she did not receive a benefit for which she *actually bargained*." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (emphasis added). Her reliance on non-binding district court cases, *see* Opp. at 18, does not save this damages theory.

Similarly, Ms. Rouhani cannot revive her diminution in value theory. *See* Opp. at 19. First, she does not dispute that she must show not only a benefit to SEV or Google, but also a *loss* to herself. *See* Mot. at 19. Yet she does not allege a loss because she does not allege she '"attempted or intended to participate'" in a market for the data at issue. *Lau v. Gen Digit. Inc. ("Lau I")*, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023) (citation omitted). Ms. Rouhani turns to the minority of cases that do not require plaintiffs to allege they intended to participate in a market for their data, *see Archambault v. Riverside Resort & Casino, Inc.*, 2025 WL 2614044 (D. Nev. Sept. 9, 2025); *In re Anthem, Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594 (N.D. Cal. May 27, 2016), but these cases miss that a plaintiff does not "lose" value in data from which she could not have extracted any value in the first place. In any event, this damages theory is fundamentally inconsistent with Ms. Rouhani's overall theory of the case, which is that she considered this information private and therefore presumably would not sell it.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

Finally, invasion of privacy damages, Opp. at 19, do not save her claims because, as discussed above, SEV did not invade Ms. Rouhani's privacy.

**4. No Breach of Implied Contract.**

Ms. Rouhani's implied contract claim fails without assent or damages.

***No Mutual Assent.*** Ms. Rouhani fails to allege that she and SEV agreed SEV would not use tools like the Google Code in the way it did. *See* Mot. at 20–21. Ms. Rouhani concedes that this claim, too, depends on the Court finding SEV disclosed PHI. She goes on to argue that SEV's receipt of sensitive health information during the booking process implied a promise from SEV to not disclose this information, Opp. at 20, but this expectation was objectively unreasonable because SEV explicitly discloses these practices in its Privacy Policy. *See* Mot. at 21. Ms. Rouhani's cited cases are distinguishable for this reason and because each involved a data breach due to inadequate cybersecurity, not data disclosed by routine website analytics and advertising tools. *See Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 WL 16894503, at *1 (C.D. Cal. July 29, 2022) (data breach); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1185 (D. Nev. 2022) (same); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1138 (C.D. Cal. 2021) (same).

***No Damages.*** The implied contract claim fails for the additional reason that Ms. Rouhani alleges no damages.

**5. No Unjust Enrichment.**

"There is no cause of action in California labeled 'unjust enrichment.'" *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 206–07 (2023) (citation omitted). Even if there were, Ms. Rouhani does not dispute that it rises or falls with her other claims. *See Doe I*, 741 F. Supp. 3d at 848–49; *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1069–70 (C.D. Cal. 2024).

## III. CONCLUSION

For the foregoing reasons, SEV respectfully requests that the Court dismiss all of Ms. Rouhani's claims with prejudice.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

DATED: June 12, 2026

DAVIS WRIGHT TREMAINE LLP
JAMES H. MOON
SANCHO ACCORSI

By: /s/ *James H. Moon*
James H. Moon

*Attorneys for Defendants Petrosian Esthetic Enterprises, LLC and SEV Laser Aesthetics Chicago, LLC*