UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-01030-MWC-AGR Date: June 18, 2026

Title: Nicole Firlej, *et al.* v. Petrosian Esthetic Enterprises, LLC, *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DKT. [28]); DENYING AS MOOT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT**

Before the Court is Defendants Petrosian Esthetic Enterprises, LLC and SEC Laser Aesthetics Chicago, LLC's ("SEV") (collectively, "Defendants") Motion to Dismiss ("motion"). Dkt. # 28 ("*Mot.*"). Attached to their motion, Defendants have filed a Request for Judicial Notice ("RJN"). Dkt. # 28-1 ("*RJN*"). Plaintiff Hania Rouhani ("Plaintiff" or "Rouhani") opposed the motion, Dkt. # 31 ("*Opp'n*"), and Defendants replied, Dkt. # 36 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. After considering the papers, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. Defendants' Request for Judicial Notice is **DENIED AS MOOT**. The Court **GRANTS** Plaintiff leave to file a First Amended Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-01030-MWC-AGR Date: June 18, 2026

Title: Nicole Firlej, *et al.* v. Petrosian Esthetic Enterprises, LLC, *et al.*

I. Background & Procedural History

This case arises after Rouhani[1] utilized Defendant SEV's website ("the Website") to schedule an appointment with SEV's clinic. *See* Dkt. # 1 ("*Compl.*") ¶¶ 21–23. The Class Action Complaint ("CAC") alleges as follows:

SEV is a medical provider that offers aesthetic services. *Id.* ¶ 3. Patients must utilize the Website to schedule and modify medical appointments with SEV's practitioners. *Id.* ¶¶ 4, 62. The Website has installed Google surveillance software ("the Tracking Tools"), including "tracking pixels" ("Pixels")[2] and third-party "cookies"[3] that capture patients' sensitive, personally identifiable information. *Id.* ¶ 9. The Tracking Tools can also capture and share other information "like the specific webpages visited by a website user, items added to an online shopping cart by a website user, information entered into an online form by a website user, and the device characteristics of a website user's phone or computer." *Id.* The Pixels combine the data received from the user's web browser, along with the data acquired from the cookies, and instruct the web browser to transmit the information back to Google. *Id.* ¶ 57. Google admits that it collects information from third-party websites through Tracking Tools, and aggregates user information collected from third-party websites into "advertising profiles," which consist of all of the data it has

[1] On June 11, 2026, the Court stayed this action as to Plaintiff Nicole Firlej. *See* Dkt. # 35. Because Defendants now move to dismiss the Complaint as to only Plaintiff Rouhani, the Court narrows the allegations in the Complaint accordingly.

[2] Pixels are small pieces of code placed into a website or advertisement that track users' purchases, clicks, or pageviews. *See Compl.* ¶ 47. Pixels collect a wide range of information about a user's online behavior, including which webpages users visit, the amount of time spent on specific webpages, a user's purchases, searches, and information provided on an online form. *See id.* ¶ 48.

[3] "Cookies" are small files created and saved by web browsers that "identify the website user as they browse the website or on subsequent visits to the site," and for example, may save the user's settings, login information, or shopping cart contents. *See Compl.* ¶ 53. "The cookie includes a specific line of code that links the web browser to the user's Google account." *Id.* ¶ 54. Google's Pixels allegedly use cookies to "acquire information from the browser without notifying the user," including, for instance, the user's "interactions with the website," details about the user, and information about the user's environment (e.g., type of device used or physical location of device). *See id.* ¶ 55.

collected about a given user. *Id.* ¶¶ 36, 38. This allows Google's clients to "target internet users based on combinations of their location, age, race, interests, hobbies, life events . . ., political affiliation, education level," and more. *Id.* ¶ 38.

In or around January 2026, Rouhani utilized the Website on her personal electronic device to schedule a laser appointment with SEV's clinic. *Id.* ¶ 22. Plaintiff accessed the Website while logged into her Google account on the same device. *See id.* ¶ 25. Without her knowledge or authorization, the Website transmitted her Sensitive Health Information ("SHI") to third parties. *Id.* ¶¶ 23–24; *see also id.* ¶¶ 63, 72. The Website's Tracking Tools were invisible to Plaintiff, and the Website did not show a disclaimer or warning that Plaintiff's SHI would be disclosed to any unauthorized third party without her express consent. *See id.* ¶¶ 72–75. The transmitted information includes the fact that Plaintiff scheduled an appointment with SEV and the reason for her visit. *See id.* ¶ 64. After providing her SHI, she immediately began seeing targeted online advertisements for cosmetic services and products. *Id.* ¶ 26. Defendants allegedly "received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms" in exchange for collecting Plaintiff's SHI. *Id.* ¶ 77.

On February 2, 2026, Plaintiff Rouhani filed the operative Complaint against Defendants, asserting six (6) causes of action: (1) invasion of privacy; (2) negligence; (3) breach of implied contract; (4) unjust enrichment; (5) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; and (6) violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 360, *et seq.* *See id.* at 46–63. Defendants move to dismiss all six claims.

## II. Legal Standard

### A. Rule 12(b)(6)

A defendant may move to dismiss a claim in the plaintiff's complaint if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. As such, the plausibility standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable inferences in favor of the non-moving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Id.* at 773–74 (internal citation and quotation marks omitted) (cleaned up).

III. Discussion

A. Consent

At the outset, Defendants proffer that because the CAC alleges that Plaintiff utilized her Google email account to make an appointment with SEV, this implies that Plaintiff consented to Google's Terms and Conditions (and inclusive Privacy Policy), "which disclose Google's use of its code on third-party websites." *See Mot.* at 13–14. Thus, Defendants maintain that by implication, Plaintiff consented to the transmission of her data. *See id.*; *see also Reply* at 8.

While "[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim," *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (internal quotation marks and citation omitted), it is Defendants' burden to prove consent. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021). "Consent can be explicit or implied, but any consent must be actual," which means the "disclosures must explicitly notify users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (internal quotation marks and citations omitted). Additionally, "consent is strictly construed in scope," and reaches only the "particular conduct, or substantially the same conduct as what was agreed to." *In re Meta Android Priv. Litig.*, --- F. Supp. 3d ---, 2026 WL 1279416, at *5 (N.D. Cal. May 11, 2026) (awaiting publication) (citation omitted). If a plaintiff could have "plausibly understood the disclosures as *not* disclosing that the defendant would engage in particular conduct, their claims cannot be dismissed." *Id.* (emphasis in original) (cleaned up).

Defendants have not met their burden to demonstrate that Plaintiff consented to the transmission of her data in this case. First, Defendants do not provide a copy of either Google's Terms and Conditions or its underlying Privacy Policy; thus, the Court cannot adequately assess whether Plaintiff consented to the conduct at issue. *See id.* Though in a footnote to their Reply brief, Defendants note that Google's Privacy Policy is judicially noticeable, *see Reply* at 8 n.1, Defendants have not formally requested that the Court take judicial notice of Google's Privacy Policy, and doing so in a footnote of a Reply brief is improper. *Cf. United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000). Moreover, Defendants only cite that Google's Privacy Policy "collects information about 'activity on third-party sites and apps that use its services.'" *Id.* (cleaned up) (quoting Google's Privacy Policy). This is insufficient to demonstrate that Plaintiff consented to having *SEV* collect her data on the Website at issue—the "disclosure" does not specify what "activity" is collected, nor which websites or applications collect this information. *See id.* Ultimately, the "mere existence of a privacy policy is generally not dispositive on a motion to dismiss because users might lack actual or constructive notice of the policy." *In re Meta Android*, 2026 WL 1279416, at *5. And "seemingly broad text in a disclosure might not provide effective consent if it would be objectively reasonable for a person to interpret the text more narrowly." *Id.* at *6 (citations omitted); *see also Lakes*, 777 F. Supp. 3d at 1055 ("The disclosures must have only one plausible interpretation for a finding of consent.") (citation omitted).

At bottom, the CAC alleges that Defendants installed Google's Tracking Tools, Pixels, and cookies on *SEV's Website* without Plaintiff's knowledge or consent. *See, e.g.*, *Compl.* ¶¶ 9–11, 23–26, 70. The CAC further alleges that the Website did not show a disclaimer or warning that it would disclose Plaintiff's SHI to any unauthorized third parties without Plaintiff's consent, and the CAC expressly alleges that Plaintiff "could not and did not consent to Defendants' conduct." *See id.* ¶ 73. Finally, the CAC chronicles that although Google "admits that it collects information from third-party websites through the Tracking Tools, it does not provide . . . a publicly available list of every webpage on which its Tracking Tools are installed." *Id.* ¶ 37. Defendants did not satisfy their burden to demonstrate that Plaintiff consented to *SEV* collecting her SHI on its Website. The Court **DENIES** Defendants' motion on this basis.

B. Count VI: CIPA (§ 631(a))

California Penal Code section 631 creates four alternative avenues of liability for any person

> [1] [W]ho, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] [W]ho willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] [W]ho uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
>
> [4] [W]ho aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]

Cal. Penal Code § 631(a); *see also Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 865–66 (N.D. Cal. 2026).

Plaintiff brings one claim under Section 631(a) of CIPA, asserting that, without Plaintiff's consent, knowledge, or authorization, Defendants aided and conspired with

Google and other third parties to track and intercept Plaintiff's internet communications while using the Website via the installation of the Tracking Tools. *See Compl.* at 60–63. Plaintiff's CIPA theory thus rests on the derivative liability found in the fourth subclause of Section 631(a), by way of the second and third clauses. Defendants move to dismiss this claim on two bases.

First, Defendants insist that the CAC does not adequately allege "contents" as required by the second clause of Section 631(a) because "record information" like an "IP address," "browser settings," "routine browsing data" nor a patient's "contact information" qualify as "contents" under CIPA. *See Mot.* at 15–17. The CAC alleges that the "content" of Plaintiff's communications "included Sensitive Health Information," *Compl.* ¶ 202, which in turn includes such information like "the fact that the patient is scheduling an appointment with an aesthetician and the reason for the patient's appointment[.]" *Id.* ¶¶ 5, 23 (same), 64 ("[T]he [SHI] requested and contemporaneously transmitted to Google by the Tracking Tools installed on the Website include the fact that the patient has scheduled an appointment and the reason for the patient's appointment.").

Thus, even if Defendants are correct that basic "record information" does not qualify as "contents," the CAC alleges that the Tracking Tools transmitted more than merely Plaintiff's contact information or browsing settings or data. Plaintiff has therefore plausibly alleged that the Tracking Tools transmitted the "contents" of her communications. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1116 (N.D. Cal. 2025) (concluding that URLs which "reveal that Doe researched anorexia, explored treatment options and locations, and at least clicked through to a self-assessment form" revealed "enough information to be deemed contents of communications" because it "conveys far more than basic identification and address information"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) (plaintiffs adequately alleged contents of a communication where they pleaded "the searches they conducted regarding their personal health conditions, treatment options, and doctors"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (plaintiffs plausibly conveyed "content" to state a CIPA claim where they alleged "that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions," including their PHI).

Second, Defendants contend that the CAC fails to adequately allege that Defendants "read" the communications, nor that they did so while "in transit." *Mot.* at 17–19. Though

Plaintiff adequately defends the "in transit" requirement, *see Opp'n* at 17–18, 22, she has failed to address Defendants' contention that the CAC does not "allege that Google read the contents of any communications." *Mot.* at 19. While some courts conclude "that merely intercepting the communication while it's being made is enough, as long as the interception happens simultaneously or near-simultaneously," this Court agrees that "the better conclusion is that you must do something more than just intercept the communication while it is in transit to be held liable." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1116, 1118; *see also Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Though section 631 does not define 'read' or 'attempt to read,' courts generally conclude that liability under prong two of section 631 requires some effort at understanding the substantive meaning of the message, report, or communication.") (citation omitted). However, because Plaintiff can cure this defect by alleging additional facts to support this claim, amendment is not futile.

Accordingly, the Court **GRANTS** Defendants' motion on this basis and **DISMISSES** Plaintiff's CIPA claim **WITH LEAVE TO AMEND**.

C. Count V: ECPA Claim

To state a claim under the ECPA, Plaintiff must allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024) (citing 18 U.S.C. §§ 2510 *et seq.*). Defendants move to dismiss Plaintiff's ECPA claim for two reasons: first, Defendants assert that SEV consented to Google's alleged involvement, and second, Defendants repeat that the CAC failed to allege the "contents of any communication." *Mot.* at 19–22. Because the Plaintiff has plausibly alleged the "contents" of a communication under CIPA, *see supra*, the Court confines its assessment of Plaintiff's ECPA claim to Defendants' arguments regarding consent. *See Krzyzek*, 817 F. Supp. 3d at 866 n.9 ("Courts have determined that 'the contents of a communication under the ECPA and CIPA § 613(a) are the same.'") (quoting *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021)).

Under the ECPA, "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a . . . communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such

interception unless such communication is intercepted for the purpose of committing any criminal or tortious act" in violation of the law. 18 U.S.C. § 2511(2)(d). Defendants maintain that the CAC "alleges SEV was a party to her interactions with its website and consented to Google's alleged involvement." *Mot.* at 19–20 (citing *Compl.* ¶¶ 24 & 174). Plaintiff's Opposition brief does not dispute that "defendant is a party to the communication," but instead, posits that the crime-tort exception applies because "Defendants intercepted [Plaintiff's] [SHI] with the purpose of disclosing it to unauthorized third parties in violation of HIPAA and the other causes of action asserted in the Complaint." *See Opp'n* at 14–17. The Court agrees with Plaintiff.

"To make use of the criminal/tortious intent exception, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent of* the intentional act of recording or interception itself." *Walgreen*, 733 F. Supp. 3d at 901 (emphasis in original) (citation omitted). Generally, the crime-tort exception applies "only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously, and cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." *Id.* (cleaned up) (citation omitted). Defendants insist that the crime-tort exception cannot apply because the CAC alleges that "SEV's alleged primary motivation for using the Google tools was to improve its marketing," *i.e.*, "to make money." *Mot.* at 22; *Walgreen*, 733 F. Supp. 3d at 901. "But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." *Walgreen*, 733 F. Supp. 3d at 901 (citations omitted). Because the CAC alleges that "Defendants intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act . . . namely, invasion of privacy," *Compl.* ¶ 184, and because the Court concludes, *infra*, that Plaintiff has plausibly stated a claim for invasion of privacy, the CAC therefore sufficiently pleads tortious intent. *See Walgreen*, 733 F. Supp. 3d at 902. Defendant's Motion to Dismiss Plaintiff's ECPA claim is therefore **DENIED**.

D. Plaintiff's Common Law Claims[4]

*i. Count I: Invasion of Privacy*

To state a claim for invasion of privacy, Plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). "Courts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel*, 647 F. Supp. 3d at 799 (collecting cases).

Defendants contend that Plaintiff's claim fails on both prongs. *See Mot.* at 25–27. First, Defendants argue that by voluntarily sharing her information with an entity that shares that information with a third party, Plaintiff fails to allege any intrusion to her privacy. *Id.* at 25. But this is duplicative of Defendants' arguments relating to consent, *supra*. Defendants have not met their burden to establish that Plaintiff knew that Defendants were collecting her SHI and disclosing that data to Google. *See In re Meta Pixel*, 647 F. Supp. 3d at 800; *In re Meta Android*, 2026 WL 1279416, at *6; *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) ("Courts have held that plaintiffs have a reasonable expectation of privacy where data is collected without their consent.").

[4] Defendants move to dismiss all of Plaintiff's common law claims, in part, because they insist that "HIPAA does not protect the type of information at issue in the Complaint," and that instead, "HIPAA permits disclosing most web browsing data, even related to health care" because browsing general health information does not disclose individual health data. *See Mot.* at 23. Defendants are mistaken as to both HIPAA's purview and Plaintiff's CAC.

First, "[a]t least one court has previously found that information which shows patient-status constitutes protected health information." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (citing *Arvidson v. Buchar*, No. ST-16-cv-410, 2018 WL 10613032, at *10 (V.I. Super. Ct. June 6, 2018)). Second, this case is not about the disclosure of "general health information that is accessible to the public at large," *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), but rather, about a Pixel that "captures information [and] connects a particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the ambit of information protected under HIPPA." *In re Meta Pixel*, 647 F. Supp. 3d at 793. Defendants' arguments therefore lack merit.

Second, Defendants posit that even if SEV intruded into Plaintiff's privacy, the intrusion was not "highly offensive" because the type of data at issue in the CAC is not "sufficiently sensitive." *Mot.* at 25–27 ("[T]he fact that Ms. Rouhani received laser hair removal is not sufficiently sensitive . . . even if it technically qualifies as PHI under HIPAA"). Defendants further argue that the circumstances of the intrusion were not highly offensive because "SEV disclosed its use of marketing and analytic tools, and Google disclosed its code's operation on third-party websites." *Mot.* at 26.

"Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 606 (citation omitted). In an analogous case regarding Facebook's use of "plug-ins[] to track user's browsing histories when they visit third-party websites," the Ninth Circuit concluded that the "ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage," but that "Plaintiffs [had] identified sufficient facts to survive a motion to dismiss." *Id.* at 596 (internal footnote omitted), 606.

Here, Plaintiff alleges that without any disclaimer or notice, and without her knowledge or consent, Defendants surreptitiously collected her data through hidden Tracking Tools and Pixels to collect her SHI. *See generally Compl.* The facts here bear striking resemblance to the case before the Ninth Circuit in *In re Facebook*. *See also Brown*, 525 F. Supp. 3d at 1079. The Court has already determined that the data collected likely constitutes protected health information. *See supra* n.4; *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) ("Plaintiffs do sufficiently plead that an alleged disclosure of sensitive health information on Sharp's appointment scheduling page is 'highly offensive.'"); *In re Meta Pixel*, 647 F. Supp. 3d at 801 ("Courts have also found that taking personal contact information without consent could be deemed highly offensive.") (citation omitted). And the Court has repeatedly rejected Defendants' disclosure and consent arguments, *supra*. Finally, the Court cannot conclude that the "claims based on this element" amount to "mere routine commercial behavior." *In re Meta Android*, 2026 WL 1279416, at *6 (citation omitted). Accordingly, the Court concludes that Plaintiff has adequately pleaded an invasion of privacy claim. Defendants' Motion to Dismiss is **DENIED** on this basis.

*ii. Count II: Negligence*

In California, the elements for negligence are "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between he defendants['] conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Walgreen*, 733 F. Supp. 3d at 895 (citation omitted). Defendants move to dismiss Plaintiff's negligence claim, arguing that Plaintiff has not identified a legal duty that Defendants have breached, and that moreover, Plaintiff has not alleged resulting damages. *See Mot.* at 27–29.

***Duty.*** Defendants again repeat that the disclosure of Plaintiff's data "was not subject to HIPAA's protections," and that Plaintiff "consented to Google collecting her data when she created her Google account." *Mot.* at 27. This is duplicative of Defendants' previous arguments that lacked merit, *supra*. Further, the CAC alleges that Defendants "had a duty of care to use reasonable means to secure and safeguard [Plaintiff's data] from unauthorized disclosure to third parties." *Compl.* ¶ 145. In *In re Meta Pixel Tax Filing Cases*, the Northern District of California found that Meta owed the plaintiffs in that case "a duty to exercise reasonable care to protect their confidential *financial* information from unauthorized disclosure to Meta," yet breached that duty via Meta's tracking tools' transmission of that data. 724 F. Supp. 3d 987, 1016 (N.D. Cal. 2024) (emphasis added); *see also In re Meta Android*, 2026 WL 1279416, at *10–*11; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) ("Facebook had a responsibility to handle its users' sensitive information with care.") (citation omitted). Defendants have not come forward with any policy considerations that would "clearly require an exception" to the "statutory presumption of duty in California." *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1016 (internal quotation marks and citations omitted). Plaintiff has therefore plausibly alleged this element.

***Damages*****:** Plaintiff alleges that she has suffered damages "by having [her] highly personal, personally identifiable [SHI] accessed, stored, and disseminated" without her knowledge or consent. *Compl.* ¶ 149. Defendants again refute that "SEV did not disclose sensitive health information," *Mot.* at 27, but the Court has already disposed of this

argument.[5] As Plaintiff has adequately pleaded both duty and damages, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's negligence claim.

*iii. Count III: Breach of Implied Contract*

The CAC alleges that when Plaintiff provided her SHI to Defendants "in exchange for health-related services, [she] entered into an implied contract pursuant to which Defendants agreed to safeguard and not disclose the [SHI] without consent." *Compl.* ¶ 153. The CAC further alleges that Plaintiff "would not have entrusted Defendants with [her] [SHI] in the absence of an implied contract . . . obligating Defendants to not disclose [SHI] without consent, including as expressed through, *inter alia*, Defendants' Privacy Policies." *Id.* ¶ 155. Defendants dispute that the CAC fails to allege the existence of mutual assent or damages. *See Mot.* at 29–30.

"An implied contract requires that both parties agree to its terms and have a 'meeting of the minds,' but the creation of an implied contract can be manifested by conduct rather than words." *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 821 (N.D. Cal. 2023) (citation omitted). Though the CAC implies payment to Defendants for their medical services, *see, e.g.*, *Compl.* ¶¶ 158, 170, 191d, Plaintiff has not "made any allegations regarding consideration received by Defendants for their purported promise to safeguard Plaintiff['s] information" and "[s]everal courts have specifically found that consideration is required for an implied contract claim regarding data security." *Beltran v. Drs. Med. Ctr. of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *12 (E.D. Cal. June 9, 2025). It is insufficient to support a claim for breach of implied contract based solely on the fact that Plaintiff supplied Defendants with user data in exchange for services. *See id.* To the extent that Plaintiff relies on Defendants' Privacy Policy, *see Compl.* ¶ 155, this theory is also misplaced as Plaintiff does "not allege [she] reviewed Defendants' privacy policies prior to using the Website," and moreover, privacy policies "may form the *terms* of an implied contract, but they do not alone serve as an enforceable contract without a separate meeting of the minds between the parties." *Id.* (emphasis in original) (citations omitted). Finally, Plaintiff's theory of damages also fails as Plaintiff has not "persuasively

[5] Defendants further move to dismiss Plaintiff's negligence claim, attacking the damages allegations found in Plaintiff's ECPA claim. *See Mot.* at 27–28; *Compl.* ¶ 191. The Court declines to assess the sufficiency of the CAC's damages contentions for Plaintiff's ECPA claim when evaluating the plausibility of Plaintiff's damages theory for her negligence claim.

alleged that [she] reasonably expected that [she] would be compensated for the value of [her] personal information." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1068 (C.D. Cal. 2024) (cleaned up) (internal quotation marks and citation omitted). Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's breach of implied contract claim **WITH LEAVE TO AMEND**.

*iv. Count IV: Unjust Enrichment*

Finally, the CAC alleges that Plaintiff conferred a monetary benefit on Defendants in exchange for healthcare related services via supplying their SHI to Defendants, which Defendants then utilized for marketing and advertising purposes. *Compl.* ¶¶ 162–63. Defendants move to dismiss this claim, stating first, that California does not recognize a standalone cause of action for unjust enrichment, and second, that Plaintiff has not established cognizable damages under a theory of quasi-contract. *Mot.* at 30–31.

Though California does not recognize a standalone cause of action for unjust enrichment, the Court construes this claim as a quasi-contract claim seeking restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Walgreen*, 733 F. Supp. 3d at 899. Further, the Court agrees with Plaintiff that the damages theory for this claim differs from Plaintiff's breach of implied contract claim. *See, e.g.*, *In re Facebook*, 956 F.3d at 599–600 ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss."); *see also Compl.* ¶ 168–70. Otherwise, the Court is satisfied that Plaintiff has stated a viable quasi-contract claim. *See, e.g.*, *In re Meta Pixel Tax*, 724 F. Supp. 3d at 1008–09; *Tenet Healthcare*, 789 F. Supp. 3d at 846. The Court **DENIES** Defendants' Motion to Dismiss this claim.

E. Defendants' Request for Judicial Notice (Dkt. # 28-1)

Attached to their motion, Defendants have filed a Request for Judicial Notice ("RJN"), asking the Court to judicially notice two exhibits in the record. Dkt. # 28-1. As the Court did not rely on these exhibits in resolving the instant motion, Defendants' RJN is **DENIED AS MOOT**. *See In re Meta Android Priv. Litig.*, --- F. Supp. 3d ---, 2026 WL 1279416, at *1 n.1 (N.D. Cal. May 11, 2026) (awaiting publication); *Disney Enters., Inc. v. Minimax*, No. 2:25-cv-08768-SB-E, 2026 WL 1476670, at *4 n.3 (C.D. Cal. May 22,

2026); *Vidor v. Macomber*, No. CV 25-10535 PA (SSCx), 2026 WL 967418, at *8 n.5 (C.D. Cal. Apr. 2, 2026).

IV. Conclusion

For the foregoing reasons, the Court **ORDERS** as follows:

1. Motion to Dismiss (Dkt. # 27) is **GRANTED IN PART AND DENIED IN PART**. Defendants' Request for Judicial Notice (Dkt. # 28-1) is **DENIED AS MOOT**.

2. The Court **GRANTS** the motion and **DISMISSES** Plaintiff's claims for violations of the California Invasion of Privacy Act ("CIPA") and Breach of Implied Contract. The Court **DENIES** the motion for the remainder of Plaintiff's claims.

3. Within **twenty-one (21) days**, Plaintiff may file a First Amended Complaint. Failure to timely file an amended Complaint indicates that Plaintiff wishes to continue litigation based on the instant Complaint.

4. The June 26, 2026 hearing is **VACATED**.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ