JAMES H. MOON (State Bar No. 268215)
jamesmoon@dwt.com
SANCHO ACCORSI (State Bar No. 329413)
sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendants*
*Petrosian Esthetic Enterprises, LLC and*
*SEV Laser Aesthetics Chicago, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE FIRLEJ and HANIA ROUHANI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PETROSIAN ESTHETIC ENTERPRISES, LLC, and SEV LASER AESTHETICS CHICAGO, LLC,<br><br>Defendants. | Case No. 2:26-cv-01030<br><br>**DEFENDANTS PETROSIAN ESTHETIC ENTERPRISES, LLC AND SEV LASER AESTHETICS CHICAGO, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Assigned to the Hon. Michelle Williams Court, Courtroom 6A<br><br>Date: September 4, 2026<br>Time: 1:30 p.m.<br><br>Compl. Filed: February 2, 2026<br>FAC Filed: July 9, 2026 |

# TABLE OF CONTENTS


| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | THE COURT SHOULD DISMISS MS. ROUHANI'S CLAIMS | | 1 |
| | A. | Ms. Rouhani's CIPA Claim Still Fails. | 1 |
| | | 1. No "Reading." | 1 |
| | | 2. No Reading "While In Transit." | 5 |
| | B. | Ms. Rouhani's Breach of Implied Contract Claim Still Fails. | 7 |
| | | 1. No Consideration. | 7 |
| | | 2. No Mutual Assent. | 9 |
| | | 3. No Damages. | 11 |
| III. | CONCLUSION | | 12 |






DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Animal Legal Def. Fund v. Mendes*,
160 Cal. App. 4th 136 (2008) ........................................ 11

*Archambault v. Riverside Resort & Casino, Inc.*,
2025 WL 2614044 (D. Nev. Sep. 9, 2025) ........................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 4

*Austin-Spearman v. AARP & AARP Servs. Inc.*,
119 F. Supp. 3d 1 (D.D.C. 2015) ........................................ 7

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) ........................................ 7, 10

*Brown v. Metro by T-Mobile*,
768 F. Supp. 3d 1068 (C.D. Cal. 2024) ........................................ 12

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ........................................ 9, 11

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ........................................ 12

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ........................................ 5

*Castillo v. Seagate Tech., LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016) ........................................ 10

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........................................ 3, 4

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........................................ 11

*Ehrenberg v. Walt Disney Co.*,
2022 WL 17080142 (C.D. Cal. Sept. 16, 2022) ........................................ 10





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Gardiner v. Walmart, Inc.*,
2021 WL 4992539 (N.D. Cal. July 28, 2021) .................................................. 11

*Gray v. Luxottica of America, Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .................................................... 5

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .................................................... 4

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
2018 U.S. Dist. LEXIS 217868 (C.D. Cal. Oct. 1, 2018) ................................. 11

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) ............................................................................ 5

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ................................................................ 5

*Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ............................................ 7, 10

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .............................................................. 8

*In re BetterHelp, Inc. Data Disclosure Cases*,
2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) .................................................. 11

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024) .......................................................................... 12

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .............................................................................. 6

*In re LinkedIn User Privacy Litig.*,
932 F. Supp. 2d 1089 (N.D. Cal. 2013) .............................................................. 7

*In re Marriott, Inc. Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ............................................................. 8, 12

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ............................................................ 12

*In re Zoom Video Commc'ns Privacy Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .............................................................. 8



**DAVIS WRIGHT TREMAINE** LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................ 3

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016) ........................................ 8

*Jackson v. Loews Hotels, Inc.*,
2019 WL 6721637 (C.D. Cal. July 24, 2019) ........................................ 11

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
2022 WL 16894503 (C.D. Cal. July 29, 2022) ........................................ 8

*Krzyzek v. OpenX Technologies, Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........................................ 6

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023) ........................................ 10

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) ........................................ 6

*Riganian v. LiveRamp Holdings*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........................................ 6

*Smallman v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) ........................................ 8

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................ 1, 2, 3, 4

*Weddington Prods., Inc. v. Flick*,
60 Cal. App. 4th 793 (1998) ........................................ 10

*Williams v. DDR Media, LLC*,
2024 WL 4859078 (N.D. Cal. Nov. 20, 2024) ........................................ 1

**STATUTES**

Cal. Penal Code
§ 631 ........................................ 1, 3, 4, 5
§ 631(a) ........................................ 3



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Ms. Rouhani's opposition arguments rely almost entirely on allegations copied from—and already found insufficient in—the initial Complaint. The Court correctly concluded these allegations did not state California Invasion of Privacy Act ("CIPA") § 631 or breach of implied contract claims. The handful of times where the Opposition ("Opp."), ECF No. 52, cites an allegation new to the First Amended Complaint ("FAC"), ECF No. 40, those allegations are either conclusory characterizations of facts already alleged in the Complaint, or immaterial details in line with what the Court already rejected. The Court should again dismiss the CIPA § 631 and breach of implied contract claims.

*First*, Ms. Rouhani does not state a claim under CIPA § 631 because she does not allege Google "read" the contents of any communications "in transit." The FAC doubles down on the Complaint's deficient allegations, adding only a handful of conclusory allegations that Google "read" or "analyzed" her communications. The Court should again reject such conclusory allegations.

*Second*, Ms. Rouhani's breach of implied contract claim should be dismissed because the FAC does not allege new facts going to consideration, mutual assent, or contract damages. The Court should disregard her attempts to save this claim by reference to inapposite case law.

## II. THE COURT SHOULD DISMISS MS. ROUHANI'S CLAIMS

### A. Ms. Rouhani's CIPA Claim Still Fails.

#### 1. No "Reading."

The Court previously explained that '"reading' must mean 'something more than just intercept[ing] the communication while it is in transit.'" Mot. at 4, ECF No. 45 (quoting Order at 8, ECF No. 37). Rather, reading is an '"effort at understanding the substantive meaning'" of a communication. *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (quoting *Williams v.*





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*DDR Media, LLC*, 2024 WL 4859078, at *5 (N.D. Cal. Nov. 20, 2024)); *see* Order at 8 (citing *Torres*). The plain text of the statute and case law confirm this interpretation, *see id.* at 4–6, and Ms. Rouhani seems to agree. *See* Opp. at 6 (citing legal standard in Order at 8). But she does not allege sufficient factual matter supporting the conclusion that Google "read" any communications.

Ms. Rouhani does not meaningfully address SEV's argument that conclusory allegations and allegations that Google "compiles" data are insufficient to allege "reading." For starters, Ms. Rouhani does not disagree that the Court should disregard her conclusory allegations as it did in dismissing the initial Complaint. *See* Mot. at 6. Moreover, the FAC's new allegations that Google can "compile" and "link" a user's browsing activity "to the user's identity," FAC ¶¶ 58, 62, are insufficient because "compiling" data is not an effort to understand, or "read," it. *See* Mot. at 6–7. Ms. Rouhani ignores SEV's cited authorities. *See* Mot. at 6. She nonetheless reiterates that Google compiles and "correlate[s]" user data, Opp. at 3, 5–6, and insists that Google "must at least analyze the Tracking Tool transmissions … to ascertain whether they originate from the same device." Opp. at 6. But, while associating data with a user profile could possibly involve reading communications, it is equally likely that this describes the rough sorting that courts find does not equate to "reading." *See* Mot. at 6–7 (citing cases). In any event, in making this argument, Ms. Rouhani relies on allegations that were in the Complaint and were already rejected by the Court. *See* Opp. at 3 (citing FAC ¶¶ 37–39), 5–6 (citing FAC ¶¶ 49, 57–58, 66, 68); FAC, Ex. A (ECF No. 40-1) ¶¶ 37–39, 49, 57–58, 66, 68 (showing no new factual allegations).

Ms. Rouhani's four remaining responses are unavailing.

*First*, she cites allegations in the FAC she says "provide[] a detailed explanation of how Google's Tracking Tools function." Opp. at 2. But these allegations, *see id.* at 2–3, all appeared in the initial Complaint. *See* FAC, Ex. A ¶¶ 53–69 (showing no new factual allegations). They were and remain inadequate.





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Second*, Ms. Rouhani says the "FAC added allegations explaining in detail how Google analyzed—and thus read—Plaintiff's communications." Opp. at 2. She says the FAC alleges that Google "analyze[s] user communications … for ad targeting." *Id.* at 4 (citing FAC ¶¶ 24, 70, 90, 205). And, indeed, the FAC now uses the words "analyze" or "analyzed" three times. FAC ¶¶ 6, 39, 86. But the facts (even if not the conclusions) alleged in the paragraphs to which the Opposition cites were all in the initial Complaint. *See* FAC, Ex. A ¶¶ 24, 70, 90, 205 (no new factual allegations). Indeed, the Complaint's basic premise was that Google uses user data to target advertising. The Court could have found the facts alleged in the Complaint amounted to a plausible allegation that Google read users' communications, but the Court correctly did not make that unsupported leap. Newly characterizing Google's process as "analyzing" is just as unsupported as the Complaint's conclusions that Google "reads" communications. These allegations are not new, and they do not save the CIPA claim.

In any event, "analyze" does not mean "read" under CIPA § 631. CIPA prohibits "attempts to read, or to learn the contents or meaning of any message," Cal. Penal Code § 631(a), and thus, for purposes of CIPA, "reading" is an "effort at understanding the substantive meaning" of a communication. *Torres*, 2025 WL 1135088, at *5–6 (citation and internal quotation marks omitted). Analysis of a communication, however, does not necessarily implicate the contents or substantive meaning of a communication. For example, analyzing a communication to determine "the user's [unique user] ID and the address of the webpage from which the user's HTTP request to view another webpage was sent," would not be reading under CIPA "because these pieces of information are not the 'substance, purport, or meaning' of a communication." *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (citation omitted) (addressing what constitutes a communication's contents). Indeed, analysis or filtering of communications based merely on certain data "may be better analogized to sorting mail than to reading it." *Doe v. Eating*

*Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). Because "analyze" lacks the focus of "read" on understanding a communication's substantive meaning, the terms are not synonymous under CIPA.

*Third*, the Opposition argues the FAC offers circumstantial evidence that Google "read" her communications, but this supposed evidence does not support that assumption. She emphasizes that she '"began seeing targeted online advertisements for cosmetic services and products.'" Opp. at 4 (quoting FAC ¶ 27). But she already alleged this in the Complaint. *See* FAC, Ex. A ¶ 27 (same allegation in Complaint). And it is equally likely that Google (assuming it was Google who served those unidentified cosmetics ads) served the ads based on a rough sorting of Ms. Rouhani's visiting a cosmetic-related website as it is likely that Google read her communications with SEV. That is not enough to state a claim because "facts that are merely consistent with a defendant's liability … stop[] short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Ms. Rouhani also says Google admits that it uses third-party browsing data to target ads. Opp. at 4 (citing FAC ¶¶ 37, 42). But, again, these allegations were already in the Complaint. *See* FAC, Ex. A ¶¶ 37, 42 (no changes from Complaint). Plus, these Google statements address data collection at a very high level and say nothing about reading communications specifically. *See id.* ¶¶ 37, 42. They do not make it plausible that Google read Ms. Rouhani's communications with sevlaser.com.

*Finally*, Ms. Rouhani attacks SEV's reliance on *Eating Recovery*, *Torres*, and *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024), because those cases were decided on summary judgment. Opp. at 8. But she misses the point: SEV cites those decisions for their articulation of what "reading" means under § 631, *see* Mot at 4–5, and these legal statements are equally applicable at the pleading stage. *Cf.* Order at 7. This Court has already correctly concluded that Ms. Rouhani must plausibly allege in-transit reading to pass the pleadings stage, *see id.*



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

at 8, and the smattering of cases Ms. Rouhani cites in arguing this is necessarily a fact question are non-binding. *See* Opp. at 10, 13; *Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001) (only appellate decisions are binding). In any event, those cases are unpersuasive for the additional reason that they conflated "tracking" or "intercept[ing]" with "reading," *see Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1032 (C.D. Cal. 2025); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024), or comingled the type of information transmitted and intercepted with "reading," *see Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *6–7 (C.D. Cal. Dec. 16, 2024), and therefore did not consider whether the complaint alleged efforts to understand the communications' substance.

Because the FAC alleges no new facts as to how Google took efforts to understand the meaning of any communications, Ms. Rouhani's CIPA claim fails.

**2. No Reading "While In Transit."**

Not only does the FAC not allege Google "read" any communications, it also fails to allege Google did any reading while the communications were "in transit." *See* Mot. at 7–8. This matters because CIPA § 631 does not criminalize reading communications once they have been recorded, *see id.*, a point with which Ms. Rouhani apparently agrees. *See* Opp. at 5.

SEV argued that the FAC alleges that any reading of communications must have occurred after the communications were stored on Google's servers because it alleges Google compiles user data from multiple websites "*across the internet*" and then uses that compilation to target advertisements. Mot. at 7–8 (quoting FAC ¶ 62). Ms. Rouhani responds that compiling the data is "distinct" from "the initial reading of a user's communication," Opp. at 7, but she still identifies no allegations that anything other than intercepting or sorting occurs while the communications are in transit. Instead, she responds that "the Court already found" that she adequately alleged that "her communications with Defendants were intercepted while they were 'in transit.'" Opp. at 2. But this again misses the point that "reading" means



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

something more than "intercepting." That Google "intercepted" the communications in transit does not mean it "read" them in transit. Order at 8.

Ms. Rouhani also argues that the "network traffic figures included in the FAC" show that Google's tools "simultaneously … request identifying information" and "combine" it with the browsing data. Opp. at 5–6 (citing FAC ¶¶ 49, 57–58, 66, 68). But, again, all these allegations were in the Complaint. *See* FAC, Ex. A ¶¶ 49, 57–58, 66, 68 (no new factual allegations). And as a matter of logic it is simply not true that "Google's correlation of data to individual users requires the company to read the Tracking Tool transmissions and draw inferences from their contents in real time." Opp. at 6. Those facts merely allege that Google sorts record information, like the fact that Ms. Rouhani went to a cosmetics-related website, based on other record information, such as whatever user ID it associates with her pseudonymous profile.

None of Ms. Rouhani's cited cases require the Court reach a different result. Most are non-binding orders, decided on different facts, and which do not sufficiently appreciate the distinction that this Court correctly recognized between intercepting and reading. *See* Opp. at 6 (citing cases).[1] The one Ninth Circuit case cited by Ms. Rouhani, *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), addressed only an exception to liability under ECPA—"not … whether the Plaintiffs adequately pleaded the other requisite elements of the statutes," which were not presented on appeal. *See id.* at 607–08.

---

[1] In *Riganian v. LiveRamp Holdings, Inc.*, the plaintiff alleged reading in transit by alleging that the interceptor "connect[ed] all these identifying points of data … in real time." 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025). Here, however, Ms. Rouhani alleges nothing more than simultaneous or real time "receiv[ing]," "request[ing]," "duplication, forwarding, and interception," FAC ¶¶ 57, 189, 209; *see id.* ¶¶ 56, 65, 68 (allegations that communications were "relayed" or "transmitted" contemporaneously), none of which implicate efforts to understand the substantive meaning of a communication. Regardless, *Riganian*, like *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994 (N.D. Cal. June 23, 2025), and *Krzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026), are not controlling and are based on different facts.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

Because Ms. Rouhani has not alleged that Google "read" any of her communications nor that it did so in transit, the Court should dismiss her claim.

### B. Ms. Rouhani's Breach of Implied Contract Claim Still Fails.

#### 1. No Consideration.

The Court previously dismissed Ms. Rouhani's breach of implied contract claim because she failed to allege consideration for any promise not to disclose user data. *See* Mot. at 8 (citing Order at 13). The FAC does not cure the defect because alleging that Ms. Rouhani paid for her laser hair removal services does not mean she paid for an implied data security contract. *See id.* at 8–9.

Ms. Rouhani fails to distinguish SEV's authorities on this point. She argues that *In re LinkedIn User Privacy Litigation*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013), *Austin-Spearman v. AARP & AARP Services Inc.*, 119 F. Supp. 3d 1, 12 (D.D.C. 2015), and *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019), are unpersuasive because the privacy policies applied to free, or both free and paid, services. Opp. at 12–13. But so too does Ms. Firlej's implied data privacy contract apply to both free and paid use of SEV's website. The FAC alleges that the Google Code transmits protected information when users "browse Defendants' services," when they "browse appointment options," and when they "browse appointment times." FAC ¶¶ 65–66 & Figs. 1–3. SEV does not charge for any of those activities, but under the FAC's allegations, they would trigger the implied data privacy contract. *LinkedIn*, *Austin-Spearman*, and *Huynh* are directly on point. Ms. Rouhani's other arguments are unpersuasive.

*First*, she says it is "wild" to conclude that her contract with SEV might not have "include[d] an agreement to safeguard medical information." Opp. at 12. But that is exactly what the Court (and many other courts) concluded in dismissing Ms. Rouhani's breach of implied contract claim. Order at 13 (citing *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, at *12 (E.D. Cal. June 9, 2025)). Ms. Rouhani's cited out of circuit case does not save her argument because it did not

analyze consideration, and Ms. Rouhani's quoted language comes from an analysis of Article III standing, not contract formation. *See In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 466, 482–86 (D. Md. 2020).

*Next*, Ms. Rouhani argues that she "sufficiently alleges that she paid—through money for services and through the value of the Sensitive Health Information she provided to Defendants—for an agreement not to disclose her Sensitive Health Information." Opp. at 11. But Ms. Rouhani's allegations that her provision of health information supports an implied data privacy contract are not new, *see* FAC, Ex. A ¶¶ 156–57, and the Court already found them insufficient. Order at 13. Likewise, though Ms. Rouhani now alleges a dollar amount she paid to SEV for her laser hair removal services, FAC ¶ 23, the initial Complaint already alleged that she paid SEV for services. *See* Compl. (ECF No. 1) ¶¶ 158 (alleging she "would have paid substantially less" for services), 170 (requesting refund of "amounts that Plaintiffs … overpaid"), 191(d) (alleging SEV failed to provide "full value of the services for which [Ms. Rouhani] paid"). The Court did not credit these allegations previously and it should not do so now simply because Ms. Rouhani specifies a dollar amount.

Ms. Rouhani's cited cases do not require a different result. Most were cited in her initial opposition brief, *see* ECF No. 33 at 20, and remain factually distinguishable because they addressed data breaches after data had been collected and the product or services had been paid for, not alleged simultaneous disclosure of web browsing data. *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1068 (C.D. Ill. 2016); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1138 (C.D. Cal. 2021); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1185 (D. Nev. 2022). Another data breach case, *Kirsten v. California Pizza Kitchen, Inc.*, is further distinguishable because the plaintiff there provided data as part of her employment with the defendant. 2022 WL 16894503, at *1 (C.D. Cal.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

July 29, 2022). Another case did not address consideration at all. *See In re Zoom Video Commc'ns Priv. Litig.*, 525 F. Supp. 3d 1017, 1040–43 (N.D. Cal. 2021). And the remaining case is non-binding and concluded that a general payment for services can provide consideration for a separate implied data privacy contract, *see C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *4 (N.D. Cal. Jan. 19, 2024), a contention that this Court already rejected. Order at 13.

Because Ms. Rouhani has not alleged any consideration for her implied data privacy contract, the Court should dismiss this claim again.

**2. No Mutual Assent.**

The Court also dismissed the implied contract claim because Ms. Rouhani did not allege mutual assent—she did not allege that she read SEV's Privacy Policy before she used sevlaser.com. *See* Mot. at 9–10 (citing Order at 13). The FAC still does not allege Ms. Rouhani read the Privacy Policy. *See id.* In any event, the Privacy Policy expressly discloses that SEV may "use or share [customer's] health information … [for] [m]arketing purposes," so it cannot support a contract theory based on a promise "not to disclose" user information. *See id.* at 10.

Ms. Rouhani's points in opposition do not move the ball.

*First*, Ms. Rouhani argues that she "alleges that by paying for services and providing her Sensitive Health Information to SEV, an implied contract between Plaintiff and SEV was formed whereby SEV agreed that it 'would not share' Plaintiff's information." Opp. at 9 (citing and quoting FAC ¶¶ 105, 156–57). But she made materially identical allegations in the original Complaint, *see* Compl. ¶¶ 102, 153–54, which the Court found insufficient to allege an implied contract. Her addition of the words "paid" and "money," *see* FAC, Ex. A ¶¶ 156–57, do not require a different result, given that she repeatedly alleged payment to SEV in the original Complaint. *See* Compl. ¶¶ 158, 170, 191(d).

*Next*, Ms. Rouhani argues that she "alleges that she would not have entrusted [SEV] with her Sensitive Health Information in the absence of an implied agreement





DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

requiring Defendants to protect such information from unauthorized disclosure." Opp. at 9. She, however, made the same allegation in the original Complaint, *see* Compl. ¶ 155, and the Court should again decline to credit it. Regardless, Ms. Rouhani's subjective expectations are irrelevant. *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998). She must allege facts from which the Court can reasonably infer that she and SEV impliedly agreed SEV would not share her data (despite its Privacy Policy stating the opposite).

*Finally*, Ms. Rouhani argues that the terms of an implied contract are a question of fact and that that the Court should not accept SEV's gloss on the contract's terms. Opp. at 11. But courts routinely dismiss implied contract claims on the pleadings. *See, e.g.*, Order at 13; *Beltran*, 2025 WL 1635467, at *12; *Huynh*, 2019 WL 11502875, at *10–11. And SEV argues that Ms. Rouhani does not allege any implied agreement at all, not that it failed to fulfill its obligations under any agreed to term. The cases Ms. Rouhani's cites for this proposition are distinguishable. In one, the implied contract arose out of an employment relationship where the employer requested certain personally identifying information for tax purposes and as a condition of employment. *See Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *29–30 (N.D. Cal. Sep. 14, 2016). And in the other, the implied contract was a special type of implied contract created by California state common law to address compensation for creative works, and the defendant was advancing a legal theory that was found to be contrary to well established California law. *Ehrenberg v. Walt Disney Co.*, 2022 WL 17080142, at *5 (C.D. Cal. Sept. 16, 2022).

Ms. Rouhani's other authorities do not move the needle. They again either arose from disclosure through a data breach caused by inadequate cybersecurity, not disclosure pursuant to a disclosed privacy policy, *see Castillo*, 2016 U.S. Dist. LEXIS 187428, at *4–5 (claims arose from a data breach); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *1 (C.D. Cal. May 8, 2023) (same);



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

*Archambault v. Riverside Resort & Casino, Inc.*, 2025 WL 2614044, at *1 (D. Nev. Sep. 9, 2025) (same); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 U.S. Dist. LEXIS 217868, at *2–4 (C.D. Cal. Oct. 1, 2018) (same), offer no substantive analysis of the implied contract claim, *see In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024), or are non-binding on the Court. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024); *C.M.*, 2024 WL 217841, at *4.

Ms. Rouhani's failure to allege mutual assent to any terms at all provides an independent basis for the Court to dismiss her implied contract claim.

**3. No Damages.**

Finally, the implied contract claim fails because Ms. Rouhani does not allege cognizable contract damages. *See* Mot. at 10–12.

***Benefit of the Bargain.*** SEV explained that Ms. Rouhani does not allege benefit of the bargain damages because she does not allege she bargained for any specific constraints on SEV's data sharing practices. Mot. at 11. To the contrary, the SEV Privacy Policy openly discloses that it may share user web browsing data. *See id.* Ms. Rouhani does not dispute either of these points.

Instead, she says the parties' bargain included an "implied promise" not to share personal information. Opp. at 13. But an '"implied promise'" cannot support benefit of the bargain damages. *See Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021) (citation omitted); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *1–2 (C.D. Cal. July 24, 2019). And benefit of the bargain damages cannot be premised on assumptions; the benefit must have been expressed as part of the parties' negotiations. *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 146–47 (2008). Ms. Rouhani's allegation that she "would have paid less to SEV" "[h]ad [she] known" about SEV's data sharing practices, FAC ¶ 86, however, establishes that any data sharing practices were not understood by the parties to be part of their transaction for laser hair removal services.



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

Her non-binding cases do not save her damages theory from the FAC's allegations. Both *In re Marriott* and *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018), arose out of data breaches which, as discussed, present factually distinct circumstances from the FAC's allegations. *In re Marriott*, 440 F. Supp. 3d at 455; *In re Yahoo!*, 313 F. Supp. 3d at 1121–22. Moreover, the *In re Yahoo!* plaintiff specifically alleged that he purchased Yahoo!'s product based on affirmative representations that the product was "secure." 313 F. Supp. 3d at 1130. And in *Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016), the plaintiff alleged disclosure *in breach* of a privacy policy, not disclosure *pursuant to* a data sharing policy. *See id.* at 908, 910–11. In any event, the *Carlsen* court affirmed dismissal of the breach of contract claim. *Id.* at 912. Ms. Rouhani has not alleged a benefit of the bargain theory of damages.

***Overpayment.*** SEV also explained that the FAC does not allege "overpayment," or "price premium" damages because it does not allege that SEV represented anything about its data sharing practices. Mot. at 11–12. Ms. Rouhani directs her argument exclusively toward her benefit of the bargain theory, thus waiving any argument that she alleges damages under an overpayment theory. *See Brown v. Metro by T-Mobile*, 768 F. Supp. 3d 1068, 1096 n.14 (C.D. Cal. 2024) (failure to address an argument constitutes waiver). Nonetheless, in doing so, she uses the term "overpayment." Opp. at 13. For the avoidance of doubt, her arguments do not save any overpayment theory because the Opposition still does not point to any representation SEV made regarding data sharing. *See* Opp. at 13–14.

The implied contract claim should be dismissed for lack of damages.

## III. CONCLUSION

SEV respectfully requests that the Court dismiss Ms. Rouhani's CIPA and breach of implied contract claims. Because the Court previously gave Ms. Rouhani leave to amend and she could not fix the identified deficiencies, dismissal should be with prejudice. *See In re Cloudera, Inc.*, 121 F.4th 1180, 1190–91 (9th Cir. 2024).



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

DATED: August 21, 2026

DAVIS WRIGHT TREMAINE LLP
JAMES H. MOON
SANCHO ACCORSI

By: /s/ *James H. Moon*
James H. Moon

*Attorneys for Defendants Petrosian Esthetic Enterprises, LLC and SEV Laser Aesthetics Chicago, LLC*



DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899